# EXHIBIT B



## Civil Remedy Notice of Insurer Violations

| Filing Number: | 423689 |
| --- | --- |
| Filing Accepted: | 2/20/2019 |

**Warning! Information submitted as part of this civil remedy notice is a public record. Data entered into this form will be displayed on the DFS website for public review. Please DO NOT enter Social Security Numbers, personal medical information, personal financial information or any other information you do not want available for public review.**

☑ The submitter hereby states that this notice is given in order to perfect the rights of the person(s) damaged to pursue civil remedies authorized by Section 624.155, Florida Statutes.

### Complainant

| Name: | JOEL AND EDITH NEWMAN |
| --- | --- |
| Street Address: | 12000 NORTH DALE MABRY HIGHWAY, SUITE 270 |
| City, State Zip: | TAMPA, FL  33618 |
| Email Address: | |
| Complainant Type: | Insured |

### Insured

| Name: | JOEL AND EDITH NEWMAN |
| --- | --- |
| Policy #: | |
| Claim #: | 00575816 |

### Attorney

| Name: | RYAN L GONTRUM |
| --- | --- |
| Street Address: | 12000 NORTH DALE MABRY HIGHWAY, SUITE 270 |
| City, State Zip: | TAMPA, FLORIDA  33618 |
| Email Address: | KALEY@MCDONALDBARNHILL.COM |

### Notice Against

| Insurer Type: | Authorized Insurer |
| --- | --- |
| Name: | AIG PROPERTY CASUALTY COMPANY |
| Street Address: | |
| City, State Zip: | , |

Please identify the person or persons representing the insurer who are most responsible for/knowledgeable of the facts giving rise to the allegations in this notice.

**DJ ESTEP**

| Type of Insurance: | Residential Property & Casualty |
| --- | --- |

DFS-10-363
Rev. 11/2007



# Civil Remedy Notice of Insurer Violations

Filing Number:  **423689**

## Reason for Notice

Reasons for Notice:

- **Claim Denial**
- **Claim Delay**
- **Unsatisfactory Settlement Offer**
- **Unfair Trade Practice**

**PURSUANT TO SECTION 624.155, F.S.**  please indicate all statutory provisions alleged to have been violated.

| Statute | Description |
|---|---|
| 624.155(1)(b)(1) | Not attempting in good faith to settle claims when, under all the circumstances, it could and should have done so, had it acted fairly and honestly toward its insured and with due regard for her or his interests. |
| 626.9541(1)(i)(3)(a) | Failing to adopt and implement standards for the proper investigation of claims. |
| 626.9541(1)(i)(3)(b) | Misrepresenting pertinent facts or insurance policy provisions relating to coverages at issue. |
| 626.9541(1)(i)(3)(c) | Failing to acknowledge and act promptly upon communications with respect to claims. |
| 626.9541(1)(i)(3)(d) | Denying claims without conducting reasonable investigations based upon available information. |
| 626.9541(1)(i)(3)(e) | Failing to affirm or deny full or partial coverage of claims, and, as to partial coverage, the dollar amount or extent of coverage, or failing to provide a written statement that the claim is being investigated, upon the written request of the insured within 30 days after proof-of-loss statements have been completed. |
| 626.9541(1)(i)(3)(f) | Failing to promptly provide a reasonable explanation in writing to the insured of the basis in the insurance policy, in relation to the facts or applicable law, for denial of a claim or for the offer of a compromise settlement. |
| 626.9541(1)(i)(3)(g) | Failing to promptly notify the insured of any additional information necessary for the processing of a claim. |
| 626.9541(1)(i)(3)(h) | Failing to clearly explain the nature of the requested information and the reasons why such information is necessary. |
| 626.9541(1)(i)(3)(i) | Unfair claim settlement practices |

Reference to specific policy language that is relevant to the violation, if any. If the person bringing the civil action is a third party claimant, she or he shall not be required to reference the specific policy language if the authorized insurer has not provided a copy of the policy to the third party claimant pursuant to written request.

**\*\*\*ADDITIONAL STATUTORY PROVISIONS ALLEGED TO HAVE BEEN VIOLATED ARE AS FOLLOWS:\*\*\***

**§624.155(1)(B)(1) Any person may bring a civil action against an insurer when such person is damaged: By the commission of any of the following acts by the insurer:**
**1. Not attempting in good faith to settle claims when, under all the circumstances, it could and should have done so, had it acted fairly and honestly towards its insured and with due regard for his interests;**
**2. Making claims payments to insures or beneficiaries not accompanied by a statement setting forth the coverage under which payments are being made; or**
**3. Except as to liability coverages, failing to promptly settle claims, when the obligation to settle a claim has become reasonably clear, under one portion of the insurance policy coverage in order to influence settlements under other portions of the insurance policy coverage.**
**§624.155 (5) No punitive damages shall be awarded under this section unless the acts giving rise to the violation occur with such frequency as to indicate a general business practice and these acts are:**
**(a) Willful, wanton, and malicious;**
**(b) In reckless disregard for the rights of any insured; or**
**(c) In reckless disregard for the rights of a beneficiary under a life insurance contract;**
**(8) The damages recoverable pursuant to this section shall include those damages which are a reasonably foreseeable result of a specified violation of this section by the authorized insurer and may include an award or judgment in an amount that exceeds the policy limits.**

**§626.9541(i)  Unfair Claim Settlement Practices**
**2. A material misrepresentation made to an insured or any other person having an interest in the proceeds payable under such contract or policy, for the purpose and with the intent of effecting settlement of such claims, loss, or damage under such contract or policy on less favorable terms than those provided in, and contemplated by, such contract or policy; or**
**3. Committing or performing with such frequency as to indicate a general business practice any of the following:**
**§626.9541(1)(i)3a  Failing to adopt and implement standards for the proper investigation of claims;**
**§626.9541(1)(i)3b  Misrepresenting pertinent facts or policy provisions relating to coverages at issue;**
**§626.9541(1)(i)3c Failing to acknowledge and act promptly upon communications with respect to claims**
**§626.9541(1)(i)3d  Denying claims without conducting reasonable investigations based upon available information;**
**§626.9541(1)(i)3e  Failing to affirm or deny full or partial coverage of claims, and as to partial coverage, the dollar amount or extent of coverage, or failing to provide a written statement that the claim is being investigated, upon the written request of the insured within (30) days after the Proof of Loss Statement has been completed;**
**§626.9541(1)(i)3f  Failing to promptly provide a reasonable explanation in writing to the insured of the basis of the insurance policy, in relation to the facts or applicable law, for denial of a claim, or for offer of a compromise settlement;**
 **§626.9541(1)(i)3g  Failing to promptly notify the insured of any additional information necessary for the processing of a claim; or §626.9541(1)(i)3h Failing to clearly explain the nature of the requested information and the reasons why such information is necessary.**
**§626.9541(1)(i)3j  Failure to maintain complaint-handling procedures. Failure of any person to maintain a complete record of all the complaints received since the date of the last examination. For purposes of this paragraph, "complaint" means any written communication primarily expressing a grievance.**


**\*\*\*SPECIFIC POLICY LANGUAGE THAT IS RELEVANT TO THE VIOLATION IS AS FOLLOWS:\*\*\***
**GeoVera Specialty Insurance Company (GeoVera) failed to adequately adjust and pay the claim covered under the subject insurance policy. Specifically, but not limited to, GeoVera failed to properly apply the Loss Settlement and Loss Payment provisions of the policy. In addition to the policy sections specifically cited herein, any endorsements or changes to said sections are relevant to the Insured's claim for civil remedy. There may be additional policy language relevant to this violation that may be discovered.**

To enable the insurer to investigate and resolve your claim, describe the facts and circumstances giving rise to the insurer's violation as you understand them at this time.

**Joel and Edith Newman's claim results from wind and water damage caused by Hurricane Irma on or about September 10, 2017. Mr. and Mrs. Newman's large, high end beach home took the brunt of wind from the storm, which ravaged the roof of the property, allowing water to run through the house and cause widespread interior damage. The claim was reported to AIG Property Casualty Company (AIG), and it sent out Mr. DJ Estep from Haag Construction Consulting to estimate the damage. Mr. Estep severely underestimated the cost required to replace the roof of such size, his estimate providing less than $30,000. The other areas of the home that were damaged were similarly under-scoped by Mr. Estep, and his estimate lacks many of the fine interior finishes, along with completely unrealistic pricing for a post-hurricane situation in Florida. All told, Mr. Estep's estimate totaled $498,571.91, and Mr. and Mrs. Newman were issued a "partial" payment of $202,575.91, which did not arrive until March 20, 2018, over 6 months after the loss.**

**Having suffered such a substantial loss, Mr. and Mrs. Newman hired Stellar Public Adjusting Services (Stellar) to represent their interests and set about obtaining contractor estimates for all aspects of the damage to the home. Multiple roofing companies provided reports that the roof must be replaced pursuant to Florida Code requirements, and bids for the replacement ranged from a modest $198,865 for a less desirable roof tile to $746,350 for true two-piece barrel tile, which was the same type already on the home. Other contractor bids for the home include; a windows and doors bid for $478,615, a milling (woodwork) bid for $1,158,622.20, stonework bids for $122,898.06, $46,394.70, and $34,240 a cabinet bid for $215,476.37, a storm shutters bid for $198,306.60, and non-overlapping painting bids for $139,200 and $104,500. In addition to these bids, there have been numerous other bids and expenses already incurred. Stellar compiled these bids and estimated the total damage at $7,369,419.14. Furthermore, Allied Construction was brought in to evaluate the damage, and reported that the vast majority of the damage was indicative of a wind loss. All the estimates, bids, and expenses were sent to AIG for review and adjustment, but no additional payment has been made. It has now been well over a year since the loss, and Mr. and Mrs. Newman have been required to bear the burden of the most immediate expenses himself.**

**AIG has continually dragged its feet on dealing with this claim, and as of October 2, 2018, the claim was reassigned to a completely new examiner. There is no evidence that AIG is taking any additional steps to indemnify Mr. and Mrs. Newman for the loss, and such a delay is unacceptable. Mr. and Mrs. Newman have been shortchanged by millions of dollars, and AIG is in no rush to make such a payment.**

**Adjusting insurance claims engages the public trust. AIG has breached this duty in the adjustment of this loss as discussed above. AIG has failed to create and implement adequate guidelines for proper investigation of claims handling and for training and supervision of employees and representatives which have resulted in some of the statutory violations set forth above. AIG charged Mr. and Mrs. Newman a substantial premium for these coverages but has refused to tender proper payment when under all circumstances it could have and should have done so had it acted fairly and honestly. Additionally, it appears this is done company-wide. There may be further wrongful conduct which has not been made known to the Insured. Certain conduct or actions cannot be verified without a review of AIG's claims file and claim guidelines.**

**Therefore, to cure the defects outlined in this Civil Remedy Notice, AIG must:**
**1. Immediately tender all insurance monies due to the Insured for the loss as submitted;**

**2. Act fairly and honestly towards the Insured and with due regard for her interests in attempting to settle the claim;**

**3. Pay statutory interest on the amount of unpaid contractual damages from the date the claim was reported;**

**4. Cease and desist all present and future bad faith actions with regard to the Insureds' claim;**

**Failure to cure all defects during the 60-day safe harbor period may result in additional extra-contractual damages.**

| Comments | | |
|---|---|---|
| **User Id** | **Date Added** | **Comment** |
| steebagy@thetmlaw.com | 04-17-2019 | April 17, 2019 |
| | | Electronic Filing |
| | | Florida Department of Financial Services |
| | | Consumer Assistance/Civil Remedy Section |
| | | Larson Building |
| | | 200 E. Gaines Street |

DFS-10-363
Rev. 11/2007

Tallahassee, FL 32399-0322

Insureds:  Joel and Edith Newman
Policy No.:  PCG 0002409017
Claim No.:  575816
Date of Loss:  09/10/17
CRN Filing No.:  423689

Dear Sir or Madam:

Please be advised that this law firm represents AIG Property Casualty Company (hereinafter "AIGPCC") and American Home Assurance Company (hereinafter "AHAC") with respect to the above-referenced matter.  This is AIGPCC's and AHAC's response to the Civil Remedy Notice of Insurer Violations (hereinafter "Civil Remedy Notice") filed on or about February 20, 2019, in relation to Claim Number 575816 (hereinafter "Claim") under the policy issued by AHAC to Joel and Edith Newman (hereinafter "Insureds"), bearing Policy Number PCG 0002409017 (hereinafter "Policy").

With respect to AIGPCC, AIGPCC denies each and every allegation contained within the Civil Remedy Notice, including but not limited to those related to Sections 624.155(1)(b)(1), 626.9541(1)(i)(3)(a), 626.9541(1)(i)(3)(b), 626.9541(1)(i)(3)(c), 626.9541(1)(i)(3)(d), 626.9541(1)(i)(3)(e), 626.9541(1)(i)(3)(f), 626.9541(1)(i)(3)(g), 626.9541(1)(i)(3)(h), and 626.9541(1)(i)(3)(i). Moreover, AIGPCC did not issue the subject policy of insurance under which this Claim arises.  Thus, the Civil Remedy Notice fails to comport with the spirit of the Civil Remedy Notice process as it asserts only conclusory allegations without any specific facts that demonstrate the absence of factors beyond the control of AIGPCC. The Civil Remedy Notice fails to comply with the pleading requirements of Section 624.155, Florida Statutes.  The alleged violations in the Civil Remedy Notice is inaccurate, unfounded and expressly denied by AIGPCC.  AIGPCC has not engaged in the conduct alleged nor have the Insureds come forth with any sufficient evidence to justify their allegations.  In light of the foregoing, AIGPCC has not acted in bad faith in handling the Insureds' Claim and has acted in accordance with and pursuant to Florida law.

With respect to AHAC, the Civil Remedy Notice fails to comply with the pleading requirements of Section 624.155, Florida Statutes. The Civil Remedy Notice is further improper and insufficient as it was directed to AIGPCC and was never properly served upon AHAC.  The Civil Remedy Notice is legally insufficient and fails to comply with Florida law since it deprives AHAC of true notice. As such, AHAC hereby reserves its rights and defenses with regard to AHAC's lack of proper service and sufficient notice of the Civil Remedy Notice as required by Florida law.

Without waiver of AHAC's lack of notice, AHAC denies each and every allegation contained within the Civil Remedy Notice, including but not limited to those related to Sections 624.155(1)(b)(1), 626.9541(1)(i)(3)(a), 626.9541(1)(i)(3)(b), 626.9541(1)(i)(3)(c), 626.9541(1)(i)(3)(d), 626.9541(1)(i)(3)(e), 626.9541(1)(i)(3)(f), 626.9541(1)(i)(3)(g), 626.9541(1)(i)(3)(h), and 626.9541(1)(i)(3)(i). Moreover, AHAC handled this Claim pursuant to appropriate standards governing the investigation of claims, did not and has not misrepresented pertinent facts or insurance policy provisions relating to coverages at issue, and has complied with and continues to comply with all other requirements pursuant to Section 626.9541, Florida Statutes and Section 624.155, Florida Statutes.

By way of background, on or about October 12, 2017, it was reported that the subject insured property, located at 355 South Ocean Boulevard, Golden Beach, Florida 33160 (hereinafter "Insured Property"), sustained damage due to Hurricane Irma on or about September 10, 2017.  This Claim involves a substantial amount of claimed damages, exceeding $7,000,000.00, as set forth in the Insureds' Civil Remedy Notice.  After receiving notice of the loss, AHAC began its investigation of the subject claim and assigned it Claim Number 575816.  AHAC retained Haag Construction Consulting, Daniels Brothers, Inc., LTL Builders, Inc., Knopf and Associates, and HEI Systems to aid in its investigation.

AHAC ultimately determined there was coverage for the Insureds' Claim.  Thus, after application of the applicable $295,996.00 deductible, AHAC tendered payments to the Insureds collectively totaling $685,278.90.  The Insureds' allegations that these payments were delayed is patently false as AHAC, its investigators

and/or its adjusters repeatedly requested documents supporting the Insureds' claimed damages and could not issue undisputed payments until receipt of same. After multiple requests for said documents, and several months of waiting, AHAC finally received the requested documentation and was able to issue the undisputed payment. More specifically, Haag Construction Consulting inspected the Insured Property on or about October 26, 2017, prepared an estimate on or about December 5, 2017, totaling a net claim of $202,575.91 after application of the applicable deductible, and AHAC provided Haag Construction Consulting's estimate to the Insureds' public adjuster, Stellar Public Adjusting Services, on or about January 23, 2018. During this time, AHAC, its investigators and/or its adjusters repeatedly requested supporting documents. On March 6, 2018, the Insureds executed a "partial" Sworn Statement in Proof of Loss totaling a net claim of $202,575.91 pursuant to Haag Construction Consulting's estimate. Upon receipt of same, on or about March 19, 2018, AHAC issued a payment to the Insureds totaling $202,575.91 pursuant to Haag Construction Consulting's estimate.

Following AHAC's payment, AHAC continued to investigate the Claim and the Insureds' claimed damages. Daniels Brothers, Inc. performed a site visit at the Insured Property with Stellar Public Adjusting Services to determine the extent of claimed damage and, in light of the extensive amount of claimed damages, began to schedule a re-inspection with Stellar Public Adjusting Services, Frank L. Steele & Company (the Insureds' general contractor), LTL Builders, Inc., Knopf and Associates, and HEI Systems. Due to scheduling conflicts, the re-inspection did not occur until January 30, 2019. Thereafter, Daniels Brothers, Inc. prepared an estimate totaling $981,274.90 RCV. Taking into account the $202,575.91 prior payment and $295,996.00 deductible, AHAC tendered a supplemental payment to the Insureds in the amount of $482,702.99 on or about April 4, 2019.

Contrary to the allegations in the Civil Remedy Notice, as set forth above, AHAC has indeed made multiple payments to the Insureds in relation their Claim. In conclusion, as set forth herein, the Civil Remedy Notice fails to comply with the pleading requirements of Section 624.155, Florida Statutes. The alleged violation in the Civil Remedy Notice is inaccurate, unfounded and expressly denied by AHAC. AHAC has not engaged in the conduct alleged nor have the Insureds come forth with any sufficient evidence to justify their allegation. In light of the foregoing, AHAC has not acted in bad faith in handling the Insureds' Claim and has acted in accordance with the governing policy and pursuant to Florida law.

We trust that this correspondence addresses any concerns or questions that you may have regarding the Civil Remedy Notice filed. Please feel free to contact us if you have any remaining questions, comments or require any additional information.

Very truly yours,

The Teebagy & Mederiors Law Group, PLLC
Steven C. Teebagy
Crystalin C. Medeiros
For the Firm

cc:
Ryan L. Gontrum, Esq. (via Email)

steebagy@thetmlaw.com                04-17-2019                April 17, 2019

Electronic Filing
Florida Department of Financial Services
Consumer Assistance/Civil Remedy Section
Larson Building
200 E. Gaines Street
Tallahassee, FL 32399-0322

Insureds: Joel and Edith Newman
Policy No.: PCG 0002409017
Claim No.: 575816
Date of Loss: 09/10/17
CRN Filing No.: 423689

Dear Sir or Madam:

DFS-10-363
Rev. 11/2007

Please be advised that this law firm represents AIG Property Casualty Company (hereinafter "AIGPCC") and American Home Assurance Company (hereinafter "AHAC") with respect to the above-referenced matter. This is AIGPCC's and AHAC's response to the Civil Remedy Notice of Insurer Violations (hereinafter "Civil Remedy Notice") filed on or about February 20, 2019, in relation to Claim Number 575816 (hereinafter "Claim") under the policy issued by AHAC to Joel and Edith Newman (hereinafter "Insureds"), bearing Policy Number PCG 0002409017 (hereinafter "Policy").

With respect to AIGPCC, AIGPCC denies each and every allegation contained within the Civil Remedy Notice, including but not limited to those related to Sections 624.155(1)(b)(1), 626.9541(1)(i)(3)(a), 626.9541(1)(i)(3)(b), 626.9541(1)(i)(3)(c), 626.9541(1)(i)(3)(d), 626.9541(1)(i)(3)(e), 626.9541(1)(i)(3)(f), 626.9541(1)(i)(3)(g), 626.9541(1)(i)(3)(h), and 626.9541(1)(i)(3)(i). Moreover, AIGPCC did not issue the subject policy of insurance under which this Claim arises. Thus, the Civil Remedy Notice fails to comport with the spirit of the Civil Remedy Notice process as it asserts only conclusory allegations without any specific facts that demonstrate the absence of factors beyond the control of AIGPCC. The Civil Remedy Notice fails to comply with the pleading requirements of Section 624.155, Florida Statutes. The alleged violations in the Civil Remedy Notice is inaccurate, unfounded and expressly denied by AIGPCC. AIGPCC has not engaged in the conduct alleged nor have the Insureds come forth with any sufficient evidence to justify their allegations. In light of the foregoing, AIGPCC has not acted in bad faith in handling the Insureds' Claim and has acted in accordance with and pursuant to Florida law.

With respect to AHAC, the Civil Remedy Notice fails to comply with the pleading requirements of Section 624.155, Florida Statutes. The Civil Remedy Notice is further improper and insufficient as it was directed to AIGPCC and was never properly served upon AHAC. The Civil Remedy Notice is legally insufficient and fails to comply with Florida law since it deprives AHAC of true notice. As such, AHAC hereby reserves its rights and defenses with regard to AHAC's lack of proper service and sufficient notice of the Civil Remedy Notice as required by Florida law.

Without waiver of AHAC's lack of notice, AHAC denies each and every allegation contained within the Civil Remedy Notice, including but not limited to those related to Sections 624.155(1)(b)(1), 626.9541(1)(i)(3)(a), 626.9541(1)(i)(3)(b), 626.9541(1)(i)(3)(c), 626.9541(1)(i)(3)(d), 626.9541(1)(i)(3)(e), 626.9541(1)(i)(3)(f), 626.9541(1)(i)(3)(g), 626.9541(1)(i)(3)(h), and 626.9541(1)(i)(3)(i). Moreover, AHAC handled this Claim pursuant to appropriate standards governing the investigation of claims, did not and has not misrepresented pertinent facts or insurance policy provisions relating to coverages at issue, and has complied with and continues to comply with all other requirements pursuant to Section 626.9541, Florida Statutes and Section 624.155, Florida Statutes.

By way of background, on or about October 12, 2017, it was reported that the subject insured property, located at 355 South Ocean Boulevard, Golden Beach, Florida 33160 (hereinafter "Insured Property"), sustained damage due to Hurricane Irma on or about September 10, 2017. This Claim involves a substantial amount of claimed damages, exceeding $7,000,000.00, as set forth in the Insureds' Civil Remedy Notice. After receiving notice of the loss, AHAC began its investigation of the subject claim and assigned it Claim Number 575816. AHAC retained Haag Construction Consulting, Daniels Brothers, Inc., LTL Builders, Inc., Knopf and Associates, and HEI Systems to aid in its investigation.

AHAC ultimately determined there was coverage for the Insureds' Claim. Thus, after application of the applicable $295,996.00 deductible, AHAC tendered payments to the Insureds collectively totaling $685,278.90. The Insureds' allegations that these payments were delayed is patently false as AHAC, its investigators and/or its adjusters repeatedly requested documents supporting the Insureds' claimed damages and could not issue undisputed payments until receipt of same. After multiple requests for said documents, and several months of waiting, AHAC finally received the requested documentation and was able to issue the undisputed payment. More specifically, Haag Construction Consulting inspected the Insured Property on or about October 26, 2017, prepared an estimate on or about December 5, 2017, totaling a net claim of $202,575.91 after application of the applicable deductible, and AHAC provided Haag Construction Consulting's estimate to the

Insureds' public adjuster, Stellar Public Adjusting Services, on or about January 23, 2018. During this time, AHAC, its investigators and/or its adjusters repeatedly requested supporting documents. On March 6, 2018, the Insureds executed a "partial" Sworn Statement in Proof of Loss totaling a net claim of $202,575.91 pursuant to Haag Construction Consulting's estimate. Upon receipt of same, on or about March 19, 2018, AHAC issued a payment to the Insureds totaling $202,575.91 pursuant to Haag Construction Consulting's estimate.

Following AHAC's payment, AHAC continued to investigate the Claim and the Insureds' claimed damages. Daniels Brothers, Inc. performed a site visit at the Insured Property with Stellar Public Adjusting Services to determine the extent of claimed damage and, in light of the extensive amount of claimed damages, began to schedule a re-inspection with Stellar Public Adjusting Services, Frank L. Steele & Company (the Insureds' general contractor), LTL Builders, Inc., Knopf and Associates, and HEI Systems. Due to scheduling conflicts, the re-inspection did not occur until January 30, 2019. Thereafter, Daniels Brothers, Inc. prepared an estimate totaling $981,274.90 RCV. Taking into account the $202,575.91 prior payment and $295,996.00 deductible, AHAC tendered a supplemental payment to the Insureds in the amount of $482,702.99 on or about April 4, 2019.

Contrary to the allegations in the Civil Remedy Notice, as set forth above, AHAC has indeed made multiple payments to the Insureds in relation their Claim. In conclusion, as set forth herein, the Civil Remedy Notice fails to comply with the pleading requirements of Section 624.155, Florida Statutes. The alleged violation in the Civil Remedy Notice is inaccurate, unfounded and expressly denied by AHAC. AHAC has not engaged in the conduct alleged nor have the Insureds come forth with any sufficient evidence to justify their allegation. In light of the foregoing, AHAC has not acted in bad faith in handling the Insureds' Claim and has acted in accordance with the governing policy and pursuant to Florida law.

We trust that this correspondence addresses any concerns or questions that you may have regarding the Civil Remedy Notice filed. Please feel free to contact us if you have any remaining questions, comments or require any additional information.

Very truly yours,

The Teebagy & Mederiors Law Group, PLLC
Steven C. Teebagy
Crystalin C. Medeiros
For the Firm

cc:
Ryan L. Gontrum, Esq. (via Email)