**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**CASE NO. 1:22-cv-20979-JB**

MICHAEL NEWMAN, as Personal Representative
of the ESTATE OF JOEL NEWMAN, and
EDITH NEWMAN,

    *Plaintiffs*,

v.

AMERICAN HOME ASSURANCE
COMPANY, INC.,

    *Defendant*.

_____/

**PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

    Plaintiffs Michael Newman, as Personal Representative of the Estate of Joel Newman, and Edith Newman, pursuant to Federal Rule of Civil Procedure 56, respectfully move for entry of an order granting partial summary judgment in their favor on the issues of entitlement to statutory interest pursuant to Fla. Stat. § 627.70131(5)(a) (later re-numbered as § 627.70131(7)(a)), and on certain affirmative defenses raised in American Home's Answer and Amended Affirmative Defenses filed on June 26, 2023 [ECF No. 122].

**INTRODUCTION**

    This is a statutory bad faith case arising from American Home's misconduct in handling the Newmans' Hurricane Irma insurance claim, and its general business practice of engaging in similar misconduct with respect to other Florida homeowners' claims. *See* Am. Compl. ¶ 1, ECF No. 42. The Newmans are seeking compensatory and punitive damages as provided in Florida's civil remedy statute, Fla. Stat. § 624.155, which authorizes the recovery of any damages that were a "reasonably foreseeable" result of American Home's claim-handling failures. The Newmans also seek an award of statutory interest pursuant to the prompt pay statute, Fla. Stat. § 627.70131, based on American Home's undisputed failure to pay the Newmans' claim (including the payments made pursuant to the three appraisal awards) within the mandatory statutory deadlines.

Because the material facts triggering statutory interest under section 627.70131 are clear and undisputed, the Court should enter partial summary judgment in the Newmans' favor finding that section 627.70131 applies to this case, and that the Newmans are entitled to recover interest on all three appraisal award payments made by American Home, accruing from the date American Home first received notice of the claim on October 12, 2017.

The Court should also enter partial summary judgment in the Newmans' favor on American Home's Second, Fourth, Seventh, Eighth, Tenth, and Eleventh Affirmative Defenses. The bulk of these defenses are misguided efforts to relitigate the appraisal awards in violation of Florida law (particularly the award for the Rebuilding to Code or "L&O" aspect of the Newmans' claim), and contractual defenses to payments that American Home has already made, and which do not apply in the statutory bad faith context. Moreover, because it is undisputed that American Home agreed to participate in the L&O appraisal, never objected to doing so at any time, and ultimately paid the resulting award, any defenses that American Home might have had related to the L&O award were clearly waived.

For these reasons as elaborated below, partial summary judgment should be granted in the Newmans' favor.

## ARGUMENT AND MEMORANDUM OF LAW

Summary judgment is appropriate when there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Ward v. Cnty. of Orange*, 217 F.3d 1350, 1353 (11th Cir. 2000). "Partial summary judgment is a disposition of less than the whole action and serves as a useful tool to streamline litigation by establishing certain issues before trial where there is no genuine issue of material fact." *SEC v. BankAtlantic Bancorp, Inc.*, 661 F. App'x 629, 630 (11th Cir. 2016); *see also* Fed. R. Civ. P. 56(a) ("A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought.").

**I.  The Newmans are entitled to statutory interest as a matter of law pursuant to Fla. Stat. § 627.70131 because American Home failed to pay the Newmans' claim within the mandatory statutory time periods.**

Among other damages in this case, the Newmans seek unpaid statutory interest pursuant to section 627.70131(5)(a), Florida Statutes. *See* Plaintiffs' Statement of Material Facts ("SOF") ¶ 7; Am. Compl. ¶¶ 62, 80, Prayer for Relief (All Counts), ECF No. 42. Because the facts triggering the Newmans' entitlement to statutory interest are clear and undisputed, and because the amount

of interest—similar to pre-judgment interest—is an issue of mathematical computation that can be determined as a matter of law, partial summary judgment should be granted in the Newmans' favor on their entitlement to this element of damages. *See SEB S.A. v. Sunbeam Corp.*, 476 F.3d 1317, 1320 (11th Cir. 2007) ("The computation of prejudgment interest is a mathematical computation and a purely ministerial duty. No finding of fact is needed, and no discretion is permitted.") (citation and quotations omitted) (quoting *Argonaut Ins. Co. v. May Plumbing Co.*, 474 So. 2d 212, 215 (Fla. 1985)).

> Section 627.70131 provides:
>
> (5)(a) Within 90 days after an insurer receives notice of an initial, reopened, or supplemental property insurance claim from a policyholder, the insurer shall pay or deny such claim or a portion of the claim unless the failure to pay is caused by factors beyond the control of the insurer which reasonably prevent such payment. Any payment of an initial or supplemental claim or portion of such claim made 90 days after the insurer receives notice of the claim, or made more than 15 days after there are no longer factors beyond the control of the insurer which reasonably prevented such payment, whichever is later, bears interest at the rate set forth in s. 55.03. Interest begins to accrue from the date the insurer receives notice of the claim. The provisions of this subsection may not be waived, voided, or nullified by the terms of the insurance policy. If there is a right to prejudgment interest, the insured shall select whether to receive prejudgment interest or interest under this subsection. Interest is payable when the claim or portion of the claim is paid. Failure to comply with this subsection constitutes a violation of this code. However, failure to comply with this subsection does not form the sole basis for a private cause of action.

Fla. Stat. § 627.70131(5)(a) (2011).[1]

In analyzing section 627.70131, although the statute does not authorize a private cause of action where the "sole basis" for the action is an insurer's failure to pay by the statutory deadlines, courts agree that an insured can seek recovery when "there is a viable independent cause of action." *State Farm Fla. Ins. Co. v. Silber*, 72 So. 3d 286, 289-90 (Fla. 4th DCA 2011) ("[T]he last sentence of the statute closes the door on any insured unless there is a viable independent cause of action."). And several courts in this district have recognized that a bad faith claim is an appropriate vehicle

---

[1] This is the version of the statute in effect at the time American Home issued payments pursuant to the first and second appraisal awards on April 18, 2020 and October 20, 2020, respectively. The statute was amended effective January 1, 2022, which occurred before American Home issued its final payment on February 1, 2022, but section 627.70131(5)(a) was simply moved to subsection (7)(a), and was not materially changed. More recently, the statute was amended on March 1, 2023, but that occurred after American Home issued its final payment on the Newman claim and after this action was filed, making the 2023 amendments inapplicable here.

for enforcing section 627.70131. *See Berkower v. USAA Cas. Ins. Co.*, No. 15-23947-CIV, 2016 U.S. Dist. LEXIS 118223, at *10-11 (S.D. Fla. Sep. 1, 2016) (Goodman, Mag. J.) ("[T]he statute applies when a claimant raises a bad faith claim against an insurer."); *Riley v. Heritage Prop. & Cas. Ins. Co.*, No. 22-22893-Civ-Scola, 2023 U.S. Dist. LEXIS 67840, at *9 (S.D. Fla. Apr. 18, 2023) (Scola, J.) ("[T]he Court agrees with other courts in this district that have concluded that, even without a private cause of action, section 5(a) can serve to bind the insurer to its provisions in response to a . . . bad faith claim.") (citation and quotation omitted); *Buckley Towers Condo., Inc. v. QBE Ins. Corp.*, 2008 U.S. Dist. LEXIS 56195, 2008 WL 2490450, at *32 (S.D. Fla. June 18, 2008) (Torres, Mag. J.), *report and recommendation adopted*, No. 07-22988-CIV, 2008 WL 2856457 (S.D. Fla. July 24, 2008) (Moreno, J.) (dismissing standalone claim for violation of section 627.70131 but observing that the statute was "clearly intend[ed] to bind the insurer to its provisions in response to a Department of Insurance review or a bad faith claim").

Thus, the statute applies here because the Newmans are not asserting any claims that rely solely on a violation of section 627.70131(5)(a). The Newmans are asserting independent statutory claims based on (among other things) American Home's failure to pay the Newmans' claim in good faith when, under all the circumstances, it could and should have done so had it acted fairly and honestly and with due regard for their interests, Fla. Stat. § 624.155(1)(b)(1), as well as American Home's failure to adopt and implement standards for the proper investigation of claims, Flat. Stat. § 626.9541(1)(i)(3).

The undisputed facts establish that, in handling the Newmans' claim, American Home made several payments more than "90 days after the insurer receive[d] notice of the claim," or—at worst—"more than 15 days after there [were] no longer factors beyond the control of the insurer which reasonably prevented such payment," even assuming such factors existed here. Fla. Stat. § 627.70131(5)(a) (2011). First, it is undisputed that American Home received notice of the claim no later than October 12, 2017. SOF ¶¶ 8-9. It is also undisputed that, eventually, American Home issued payments to the Newmans on the following dates and in the following amounts:

| Date | Amount | Number of Days |
|---|---|---|
| March 20, 2018 | $202,575.91 | 160 days after notice |
| April 4, 2019 | $482,702.99 | 540 days after notice |
| April 17, 2020 | $8,645,403.77 | 919 days after notice, and 40 days after issuance of the first |

|  |  | appraisal award dated March 4, 2020 |
|---|---|---|
| October 15, 2020 | $1,527,321.70 paid to the Newmans, and $307,067.45 paid to the Newmans and Stellar Public Adjusting | 1,100 days after notice, and 30 days after issuance of the second appraisal award dated September 15, 2020 |
| February 1, 2022 | $4,617,532.40 | 1,574 days after notice, and 41 days after issuance of the final appraisal award dated December 22, 2021 |

*See* SOF ¶ 10.

American Home may argue that factors beyond its control should operate to extend the 90-day deadline. But that simply does not matter at all. The statute clearly specifies that if a payment is "made more than 15 days after there are no longer factors beyond the control of the insurer which reasonably prevented such payment," the insurer still owes "interest at the rate set forth in s. 55.03" accruing from the date of first notice. None of the appraisal awards were paid within 15 days after they were issued. And even if they were made in compliance with *contractual* deadlines under the Policy, the statute preempts that argument because it provides that section 627.70131 "may not be waived, voided, or nullified by the terms of the insurance policy."

Because American Home failed to make the above payments to the Newmans within 90 days after receiving notice of the claim or 15 days after any potential factors beyond American Home's control no longer existed, the Newmans are entitled to statutory interest on each appraisal award payment, which may be calculated as a matter of law at the statutory rate accruing from October 12, 2017 through the date that each appraisal award payment was made. *See* Fla. Stat. § 627.70131(5)(a) ("Any payment of an initial or supplemental claim or portion of such claim made 90 days after the insurer receives notice of the claim, or made more than 15 days after there are no longer factors beyond the control of the insurer which reasonably prevented such payment, whichever is later, bears interest at the rate set forth in s. 55.03. Interest begins to accrue from the date the insurer receives notice of the claim.").

As calculated by the Newmans, at the statutory rate of 6.83% per annum effective as of January 1, 2020, the accrued interest would total $1,482,347 on the $8,645,403.77 payment made on April 17, 2020 pursuant to the first appraisal award; $316,848 on the $1,538,393.15 payment that was made on October 15, 2020 pursuant to the second appraisal award; and $1,355,433.58 on

the $4,617,532.40 payment that was made on February 1, 2022 pursuant to the third appraisal award, which totals **$3,154,628.58**. SOF ¶ 11.

Based on the undisputed facts, the Newmans are entitled to recover statutory interest in this action as calculated by the Court as a matter of law, and partial summary judgment should be entered accordingly.

**II. American Home's Second Affirmative Defense (Failure to Mitigate) fails as a matter of law because "failure to mitigate" is a defense to a breach of contract claim, and does not apply to bar or limit recovery in the statutory bad faith context.**

American Home's Second Affirmative Defense—titled "Failure to Mitigate"—asserts that the Newmans' claims "are barred in whole or in part and any damages claimed by Plaintiffs should be limited because Plaintiffs failed to mitigate their claimed damages." Defendant's Ans. & Am. Affirmative Defenses at 23, ECF No. 122. This defense fails as a matter of law because "failure to mitigate" is not a legally cognizable defense to a statutory bad faith action under Florida's civil remedy statute, which authorizes the recovery of any damages that were a "reasonably foreseeable result" of American Home's claim-handling violations. *See* Fla. Stat. § 624.155(8) (now codified at Fla. Stat. § 624.155(11)).

Instead, courts have recognized that "failure to mitigate is a defense relating to a breach of contract action." *Weisler v. Safeco Ins. Co. of Ill.*, No. 14-CV-81107-RYSKAMP/HOPKINS, 2015 U.S. Dist. LEXIS 180478, at *8 (S.D. Fla. Apr. 8, 2015) (striking failure to mitigate defense where the action was predicated on the negligence of an underinsured motorist, so the complaint was "not a claim for breach of contract"); *see also Townhouses of Highland Beach Condo. Ass'n v. QBE Ins. Corp.*, 504 F. Supp. 2d 1307, 1310 (S.D. Fla. 2007) (explaining that "an action for bad faith is extra contractual in nature and relates to the duties of an insurer as defined by statute, not the express terms of the contract"); *United Guar. Residential Ins. Co. of Iowa v. Alliance Mortg. Co.*, 644 F. Supp. 339, 341 (M.D. Fla. 1986) ("[T]he overall purpose of [the statute] was to impose civil liability on insurers who act inequitably vis-a-vis their insureds, not simply to restate or clarify the common law.").

*MI Windows & Doors, LLC v. Liberty Mutual Fire Insurance Co.*, No. 8:14-cv-3139-T-23MAP, 2018 U.S. Dist. LEXIS 83918, at *14 (M.D. Fla. May 18, 2018), is instructive. Chief Judge Merryday specifically rejected the insurer's attempt to assert a failure to mitigate defense in a statutory and common law bad faith case. Like American Home argues here, Liberty Mutual claimed that the defense was appropriate because both "Alabama and Florida courts deem the

insured's conduct relevant to whether the insurer acted in bad faith." *Id.* at *15. In granting partial summary judgment in favor of the insured, Judge Merryday rejected that argument, emphasizing Liberty Mutual's failure to identify "any precedent that establishes failure to mitigate as a defense to a Florida bad faith claim." *Id.* at *15.

The same is true here. The Newmans' Rule 12(f) motion to strike previously explained that several courts (as cited above) have recognized that failure to mitigate is not a legally cognizable defense in bad faith cases under Florida law. *See* ECF No. 129 at 4-5. Like the shortcomings in *MI Windows*, American Home cited no authority to the contrary. *See* Reply in Support of Motion to Strike at 2, ECF No. 136. Moreover, in this case, American Home's Rule 30(b)(6) witness acknowledged that this defense is based on an insured's purported *contractual* obligation to "protect the property from further damage." SOF ¶ 12. American Home's contractual "failure to mitigate defense" is misplaced, and cannot bar or limit the Newmans' statutory bad faith claims as a matter of Florida law.[2]

American Home's failure to mitigate defense is also inconsistent with the focus of bad faith actions in Florida. In *Harvey*, the Florida Supreme Court made clear that, in bad faith suits, "the focus . . . is not on the actions of the [insured or the claimant]," but on "the *insurer* in fulfilling its obligations to the insured." *Harvey v. GEICO Gen. Ins. Co.*, 259 So. 3d 1, 7 (Fla. 2018) (emphasis added); *see also Moore v. GEICO Gen. Ins. Co.*, 633 F. App'x 924, 931 (11th Cir. 2016) (observing that the district court "contravene[d] the law of bad faith in Florida" where its analysis focused primarily on the policyholder, "faulting [the policyholder's] conduct and [] motives"). This case is about whether *American Home* failed to handle and pay the Newmans' Hurricane Irma claim consistent with section 624.155(1)(b)(1) and the incorporated provisions of the Unfair Insurance Trade Practices Act, Fla. Stat. § 626.9541(1)(i).[3] A failure to mitigate defense—which focuses on

---

[2] As discussed in the Newmans' reply in support of their Rule 12(f) motion, this same issue was briefed extensively by counsel for the parties in this case during the case styled *Sebo v. American Home Assurance Co.*, Case No. 07-0054-CA, where American Home ultimately did not argue its "failure to mitigate" defense at the summary judgment stage, and the court granted the insured's motion for summary judgment on this defense. *See* ECF No. 136 at 3, Exs. B & C.

[3] "These provisions each describe different types of bad faith conduct for which an insurer could be held liable." *Wopshall v. Travelers Home & Marine Ins. Co.*, 2021 U.S. Dist. LEXIS 61113, at *29-30 (S.D. Fla. Mar. 26, 2021). This includes, for example, failing to attempt in good faith to pay the claim when, under all the circumstances, the insurer could and should have done so had it acted fairly and honestly and with due regard for the insured's interests, as contemplated by §

the Newmans' efforts to avoid or minimize the adverse results of American Home's misconduct—would turn this case on its head, improperly shifting the jury's focus to the insured rather than the insurer.

Moreover, the case law discussing failure to mitigate defenses makes clear that this defense arises only "*after* a contract has been breached, not before." *Century 21 Real Estate LLC v. Perfect Gul Props.*, No. 6:08-cv-1980, 2010 U.S. Dist. LEXIS 13438, at *17 (M.D. Fla. Feb. 17, 2010) (emphasis in original) (citing *Black's Law Dictionary* 1093 (9th ed. 2009)); *Total Containment Solutions, Inc. v. Glacier Energy Servs.*, No. 2:15-cv-63, 2015 U.S. Dist. LEXIS 113097, at *6-7 (M.D. Fla. Aug. 25, 2015) (recognizing that a "mitigation defense relates to the time after an alleged breach took place"). Here, however, American Home affirmatively alleges that there was *no* "breach of the insurance policy between American Home and Plaintiffs" prior to the filing of this action. Ans. & Am. Affirmative Defenses at 27 ¶ 18. This further warrants summary judgment in the Newmans' favor on American Home's contract-based failure to mitigate defense.

**III.** **American Home's Fourth Affirmative Defense (Estoppel) raises a contractual defense based on the Newmans' alleged failure to comply with post-loss duties in the Policy, and does not bar the Newmans' bad faith claims as a matter of law, nor does it give rise to "estoppel."**

Summary judgment should also be granted in the Newmans' favor on American Home's Fourth Affirmative Defense, which asserts that the Newmans' statutory bad faith claims in this case are barred by the doctrine of "estoppel" because the Newmans purportedly "failed and delayed providing information to American Home, resulting in prejudice to American Home." Ans. & Am. Affirmative Defenses at 23 ¶ 4.

This defense is misplaced and fails as a matter of Florida law. As pled, this defense raises a *contractual* defense to payment of a claim based on a failure to comply with the Policy's post-loss conditions. Specifically, Part IV.B. of the Policy, titled "Your Duties After a Loss," requires the insured to provide the insurer with "records and documents we request." *See* Policy at 12, Part IV.B.6., ECF No. 42-1 at 20. And the defense simply tracks the language that Florida courts use in analyzing defenses based on alleged non-compliance with these conditions—*i.e.*, whether the insurer suffered "prejudice" due to the insured's alleged failure to provide information requested by the insurer. *See generally Am. Integrity Ins. Co. v. Estrada*, 276 So. 3d 905 (Fla. 3d DCA 2019)

---

624.155(1)(b)(1), and failing to adopt and implement standards for the proper investigation of claims, as required by § 626.9541(1)(i)(3)(a). *See id.*

("[T]he insurer must be prejudiced by the insured's non-compliance with a post-loss obligation in order for the insured to forfeit coverage."); *see also State Farm Mut. Auto. Ins. Co. v. Curran*, 135 So. 3d 1071, 1076 (Fla. 2014). Thus, even if American Home could establish a failure to comply with this policy condition and even if American Home was "prejudiced" as alleged in its Fourth Affirmative Defense, that would (at most) give rise to a potential defense to payment of *contractual* benefits under the Policy, which have already been paid, and which are not at issue in this case. *See* SOF ¶ 10. It would not somehow absolve American Home of liability for bad faith, and does not prevent the Newmans from recovering any damages that were a "reasonably foreseeable" result of American Home's violations. *See* Fla. Stat. § 624.155(8).

Finally, merely labeling this as an "estoppel" defense or making passing reference to the "totality of the circumstances" does not change this result, because courts "look beyond a title or label to determine what [] the substance of a pleading" actually is. *See Elec. Mach. Enters. v. Hunt Constr. Grp., Inc. (In re Elec. Mach. Enters.)*, 416 B.R. 801, 870-71 (Bankr. M.D. Fla. 2009); *Adams v. Jumpstart Wireless Corp.*, 294 F.R.D. 668, 671 (S.D. Fla. 2013) (treating the defendant's allegation as a denial of an element of the plaintiff's claims despite the defendant labeling it as an affirmative defense). Nor would a purported failure to provide (or delay in providing) information to American Home give rise to "estoppel" anyway, which is an equitable defense that applies when a party makes a representation of material fact that is contrary to a later asserted representation, and the party claiming estoppel relied on that representation and detrimentally changed positions as a result of that reliance. *See generally Mandarin Paint & Flooring v. Potura Coatings, Inc.*, 744 So. 2d 482 (Fla. 1st DCA 1999). By its own terms, American Home's Fourth Affirmative Defense is not based on any facts or allegations that would satisfy any of these elements. *See* Ans. & Am. Affirmative Defenses at 23 ¶ 4.

Because American Home's Fourth Affirmative Defense is based on a potential contractual defense to payment that is inapplicable to the Newmans' statutory bad faith claims, this defense fails as a matter of law, and partial summary judgment should be granted in the Newmans' favor.

**IV.  American Home's Seventh Affirmative Defense should be rejected as a matter of law because it improperly seeks to relitigate amounts awarded and paid pursuant to the appraisal process, and because L&O issues were not actually litigated during the first appraisal in any event.**

American Home's Seventh Affirmative Defense claims that the Newmans "were barred, in whole or in part, by the Policy and by the doctrine of collateral estoppel, from seeking Law and

Ordinance damages and expenses in the subsequent Law and Ordinance appraisal." ECF No. 122 at 24 ¶ 7. This is so, according to American Home, because "Law and Ordinance damages and expenses were requested in the first appraisal." *Id.*

Summary judgment should be granted in the Newmans' favor on this defense because it improperly seeks to relitigate amounts awarded and paid following the appraisal process, and because the undisputed facts show that L&O issues were not actually litigated and decided during the first appraisal.

As a threshold matter, this defense improperly asks the Court (or the jury) to delve into the appraisal panel's decision-making process, and ultimately reject the L&O award on the basis that it was precluded by the first award. This is completely improper under Florida law, and the Court made this clear to American Home early in the case. *See* Aug. 9, 2022 Hr'g Tr. at 12, ECF No. 48 (The Court: "clearly you can't relitigate the number that was awarded in the appraisals. . . ."); *see also Johnson v. Nationwide Mut. Ins. Co.*, 828 So. 2d 1021, 1025 (Fla. 2002) ("[T]he dollar value agreed upon under the appraisal process *will be binding* upon both parties.") (emphasis added); *Biscayne Beach Club Condo. Ass'n, Inc. v. Westchester Surplus Lines Ins. Co.*, No. 18-CIV-23105-COOKE, 2022 U.S. Dist. LEXIS 238523, at *29 (S.D. Fla. Mar. 1, 2022) ("[T]o the extent Defendant's argument attempts to challenge the amount of the Appraisal Awards it fails because such attacks are improper.").

Courts are particularly reluctant to delve into an appraisal panel's decision-making process, review factual findings that were or were not made, or substitute their judgment for that of the appraisal panel. *See Mont Claire at Pelican Marsh Condo. Ass'n v. Empire Indem. Ins. Co.*, No. 2:19-cv-601-SPC-MRM, 2021 U.S. Dist. LEXIS 142298, at *17 (M.D. Fla. May 24, 2021) ("Because the appraisal panel determined the amount attributable to the Ordinance and Law coverage, the Court cannot substitute its judgment for that of the panel."); *First Protective Ins. Co. v. Hess*, 81 So. 3d 482, 485 (Fla. 1st DCA 2011) ("After the parties have gone through the appraisal process, the trial court may not considered evidence beyond the face of the appraisal award."); *see also Pac. Ins. Co., Ltd. v. New Park Towers Condo. Ass'n*, No. 07-60512-CIV, 2008 U.S. Dist. LEXIS 4091, at *9-11 (S.D. Fla. Jan. 18, 2008) (noting that, under Florida law, the "only defenses that remain for the insurer to assert [following an appraisal award] are lack of coverage for the entire claim, or violation of one of the standard policy conditions") (quoting *Three Palms Pointe, Inc. v. State Farm Fire & Cas. Co.*, 362 F.3d 1317, 1318 (11th Cir. 2004)).

Regardless, this defense also fails on the merits. Collateral estoppel is a judicial doctrine that prevents the same parties from relitigating the same issues that have already been decided. *See Dep't of Health & Rehabilitative Servs. v. B.J.M.*, 656 So. 2d 906, 910 (Fla. 1995). "The essential elements of the doctrine are that the parties and issues be identical and that the particular matter be fully litigated and determined in a contest which results in a final decision of a court of competent jurisdiction." *Id.* Courts have emphasized that collateral estoppel bars relitigation of "issues *actually litigated* in a prior proceeding." *Id.* (emphasis in original).

American Home cannot satisfy these basic elements. First, collateral estoppel is a judicial doctrine that applies to final decisions by a court of competent jurisdiction, not to appraisal awards issued pursuant to an insurance policy. *See id.* The Newmans agree that the parties are precluded from relitigating the determinations made in appraisal as to causation of damage and the amount of the Newmans' loss. But that preclusive effect stems from the appraisal clause in the Policy and the Florida Supreme Court's opinions in *Johnson*, 828 So. 2d at 1025 and *State Farm Fire & Casualty Co. v. Licea*, 685 So. 2d 1285 (Fla. 1996), not from the judicial doctrine of collateral estoppel. *See* Policy, Part IV.M.b., ECF No. 42-1 at 21 ("A decision agreed to by any two [of the three-member appraisal panel] will set the amount of loss."); *Johnson*, 828 So. 2d at 1025. Similarly, any issues concerning L&O requirements or expenses were not decided pursuant to a "final decision of a court of competent jurisdiction." *See Cincinnati Ins. Co. v. Cannon Ranch Partners, Inc.*, 162 So. 3d 140, 143 (Fla. 2d DCA 2014) (noting that appraisal is "a function of the insurance policy and not of the judicial system").

Even assuming the doctrine of collateral estoppel could be applied to the first appraisal award, American Home also cannot show that the doctrine has actually been satisfied, or that the Newmans were precluded from obtaining an appraisal award as to the L&O aspect of their claim. In particular, American Home cannot show that the *issue* of L&O expenses—which refers to the "extra expenses to obey any law or ordinance that regulates the repair, rebuilding or demolition of damaged property caused by a covered loss," SOF ¶ 3—was *actually litigated and decided* in the first appraisal. To the contrary, the undisputed facts, including the deposition testimony of the Newmans' appraiser, make clear that L&O issues were *not* decided during the first appraisal. SOF ¶ 13. The umpire during the first appraisal, Jon Doan, also emailed the panel explaining that it was his understanding that L&O (along with various other items, such as Additional Living Expenses), was not being addressed during that appraisal. SOF ¶ 14. And the L&O appraisal involved a new

appraisal panel—including a new umpire (Brian Haden), and a new appraiser hired by American Home (Mike Rimoldi of J.S. Held). SOF ¶ 15.

Finally, the only evidence that American Home's Rule 30(b)(6) witness, Andrew Pacholec, could identify in support of this defense was that the first appraisal award said "as incurred per the policy and Florida law" next to the line item for ordinance and law. *See* SOF ¶ 16. But that helps the Newmans, not American Home, because, if anything, it shows that L&O expenses were *not* appraised during the first appraisal (which is consistent with the evidence as a whole). In short, there are no genuine issues of material fact as to whether L&O expenses were actually litigated and decided during the first appraisal, warranting summary judgment in the Newmans' favor on American Home's Seventh Affirmative Defense.

**V.     American Home's Eighth Affirmative Defense (Unclean Hands) is factually and legally meritless.**

In its Eighth Affirmative Defense, American Home asserts that the Newmans' claims "are barred in whole or in part by the doctrine of unclean hands." *See* Ans. & Am. Affirmative Defenses at 24 ¶ 8. "Unclean hands is an equitable defense akin to fraud; its purpose is to discourage unlawful activity." *MTGLQ Inv'rs, L.P. v. Moore*, 293 So. 3d 610, 616 (Fla. 1st DCA 2020) (internal quotation marks omitted). "The words 'sneaky' and 'deceitful' have been equated with unclean hands." *Id.* (citing *Hensel v. Aurilio*, 417 So. 2d 1035, 1038 (Fla. 4th DCA 1982)). In other words, it is "an extreme sanction which ought to be invoked under only the most provocative or contumacious circumstances." *Id.* (internal quotation marks and citation omitted). And it "applies only to claims for equitable relief or in opposition to equitable defenses." *Scott v. Paychex Ins. Agency, Inc.*, No. 22-62052-CIV-Altonaga/Strauss, 2023 U.S. Dist. LEXIS 138141, at *27 (S.D. Fla. Aug. 8, 2023).

This defense is completely meritless both legally and factually. First, the Newmans' claims in this case seek money damages pursuant to Florida's civil remedy statute—they do not seek equitable relief, so the equitable defense of "unclean hands" is inapplicable as a matter of law. Second, American Home cannot remotely establish the type of extreme misconduct necessary to invoke an unclean hands defense. American Home's two Rule 30(b)(6) witnesses, including Mr. Flaherty, who provided financial oversight of the claim and later handled the Newmans' claim personally, could not identify *any* facts supporting this defense. *See* SOF ¶¶ 17-18. There are no genuine issues for trial on this defense, and the Newmans are entitled to judgment as a matter of law disposing of American Home's Eighth Affirmative Defense.

**VI.    American Home's Tenth Affirmative Defense improperly seeks to relitigate—indeed, *recoup*—the amounts awarded and paid pursuant to the L&O appraisal award, which has no basis in the Policy or Florida law, and was waived in any event.**

American Home's Tenth Affirmative Defense, titled "Recoupment / Overpayment," asserts that American Home is entitled to "recoup and offset the payments for the award from the third appraisal (December 22, 2021) against any sums that the Newmans may recover in this action." Ans. & Am. Affirmative Defenses at 25 ¶ 10. In support, American Home contends that the Newmans' claims for L&O coverage and damages "were or could have been fully and finally determined by the first appraisal on March 4, 2020." *Id.* According to American Home, this means the Newmans "had no entitlement to subsequent appraisal on these claims, yet recovered payment of additional monies in connection therewith, beyond what American Home was contractually obligated to pay, thereby creating an unjustified and impermissible overpayment and windfall" in their favor. *Id.*

The Newmans are entitled to judgment as a matter of law on this defense too. Again, as this Court previously made clear, American Home cannot seek to relitigate—much less seek to *recoup*—the amounts awarded and paid as a result of the appraisal process. Those numbers are binding on American Home as a matter of law. *See Johnson*, 828 So. 2d at 1025. This is particularly true where, as here, American Home did not raise any defenses or challenges to any aspect of the appraisal awards, and instead paid the awards, including the L&O award. *See* SOF ¶¶ 19-20.

In response to the Newmans' Rule 12(f) motion to strike, American Home argued that this defense is just about whether the subsequent appraisal was "authorized by the Policy." *See* ECF No. 132 at 8. But American Home has never identified anything in the Policy remotely suggesting that a loss cannot be appraised in multiple phases or awards. The only policy provision cited by American Home—the appraisal clause, *see* Policy, Part IV.M.b.—says nothing about subsequent appraisals or multiple awards arising from the same claim or loss. So even if there were any merit to American Home's distinction between improperly relitigating amounts awarded in appraisal and arguing that the award was not "authorized by the Policy," this defense would still fail as a matter of law.

And, to be clear, nothing in the Policy or Florida law provides American Home with a right of recoupment for payments made to its insured—much less payments made pursuant to a binding appraisal award. *See Nat'l Union Fire Ins. Co. v. Brown*, 787 F. Supp. 1424, 1427 (S.D. Fla. 1991) ("[T]he interpretation of the contract is a matter of law for the court to determine, and is therefore

appropriate for summary judgment."). As the drafter of the Policy, if American Home wanted to limit the number of appraisals or include a right to recoup payments made pursuant to a purportedly unauthorized appraisal award (or for any other reason), it could have easily inserted language to achieve that result. *See Auto-Owners Ins. Co. v. Anderson*, 756 So. 2d 29, 34 (Fla. 2000) ("Clearly, if Auto-Owners had intended to treat two separately covered vehicles as a singled covered automobile when operated in tandem, it could have drafted the policy to achieve that result."); *see also James River Ins. Co. v. Ground Down Eng'g, Inc.*, 540 F.3d 1270, 1274 (11th Cir. 2008) ("[C]ourts may not rewrite contracts, add meaning that is not present, or otherwise reach results contrary to the intentions of the parties."). As the Eleventh Circuit recently pointed out, "there is nothing 'unjust' about requiring the insurers to fulfill their contractual obligations and imposing such a requirement would not confer a 'windfall' on the insureds." *See Cont'l Cas. Co. v. Winder Labs.*, 73 F.4th 934, 947 (11th Cir. 2023). Because American Home's recoupment theory would require the Court to add terms to the Policy that American Home chose not to include itself, this defense should be rejected as a matter of law.[4]

Finally, even if American Home could identify any legal authority for the proposition that the Newmans were "not entitled" to a subsequent L&O appraisal, and even if there were any legal basis for American Home to recoup or offset amounts awarded in appraisal in this bad faith case, the undisputed facts show that American Home clearly waived any right to do so.

Waiver is the "intentional relinquishment of a known right," *Progressive Express Ins. Co. v. Camillo*, 80 So. 3d 394, 400 (Fla. 4th DCA 2012), which may be decided as a matter of law when the material facts are admitted, *see Tollius v. Dutch Inns of Am.*, 244 So. 2d 467, 472 (Fla. 3d DCA 1970), or when a reasonable person could draw only one conclusion based on the facts surrounding a claimed waiver, *see Pajcic v. Am. Gen. Life Ins. Co.*, 419 F. Supp. 2d 1380, 1382 (M.D. Fla. 2006). In the appraisal context, courts have not hesitated to find a waiver when parties attempt to raise belated challenges to the payment of an award (much less to seek recoupment of

---

[4] American Home has previously cited *Anoushfar v. Lexington Insurance Co.*, No. 21-11244, 2021 U.S. App. LEXIS 31164, at *1 (11th Cir. Oct. 18, 2021), and *Noa v. Florida Insurance Guaranty Association*, 215 So. 3d 141, 142 (Fla. 3d DCA 2017), to suggest that subsequent appraisal awards are somehow prohibited under Florida law. But in both cases, the insured sought a re-appraisal of amounts previously awarded, and in both cases, the insurer objected and refused to go forward with the subsequent appraisal, and refused to pay the additional amounts sought by the insured. *Noa*, 215 So. 3d at 143; *Anoushfar*, 2021 U.S. App. LEXIS 31164, at *5. It is undisputed that none of these facts are present here. *See* SOF ¶¶ 15, 19-21.

an award they already paid), and the party knew about the purported basis for that challenge and yet waited to until the appraisal process concluded to raise the issue. *See, e.g.*, *Biscayne Beach Club Condo. Ass'n*, 2022 U.S. Dist. LEXIS 238523, at *29 ("[E]ven if the Defendant provided an evidentiary basis for vacatur based upon [the appraiser's] purported bias of financial interest [sic] in the Appraisal Awards – which it did not – Defendant waived those grounds for vacatur.") (citing *Merrill Lynch, Pierce, Fenner & Smith v. Smolchek*, 2021 U.S. Dist. LEXIS 134089, at *8-9 (S.D. Fla. Sept. 17, 2012)).

Here, the undisputed facts show that American Home affirmatively agreed to a "subsequent appraisal on these claims," including by appointing its own appraiser, participating in the appraisal process knowing that there had already been a previous appraisal award, and ultimately paying the resulting award without raising any objections that the subsequent L&O appraisal was somehow not authorized. *See* SOF ¶¶ 10, 15, 19-20. The fact that American Home paid the resulting L&O award—which is the "functional equivalent of a confession of judgment or a verdict in favor of the insured" under Florida law, *Wollard v. Lloyd's & Cos. of Lloyd's*, 439 So. 2d 217, 218 (Fla. 1983)—is alone enough to find that American Home waived any right to limit the appraisal process to the first appraisal or to recoup any payments made pursuant to the L&O award. And if American Home disagreed with the award, disputed coverage for the expenses that were awarded, or believed that the award was unauthorized or invalid under the Policy, it could (and would) have attempted to raise a defense consistent with *Licea*, 685 So. 2d at 1287, and could (if it had any merit) have attempted to bring a timely motion to modify or vacate the award.[5] But American Home didn't do any of those things, and instead paid the L&O award subject only to the applicable policy limit for Rebuilding to Code coverage. SOF ¶¶ 19-21.

Based on this record, no reasonable jury could conclude that the Newmans were not entitled to an appraisal on the L&O expenses, or (at minimum) that American Home did not waive any objections that might have existed (if they had any merit) concerning a subsequent appraisal for

---

[5] Despite the differences between arbitration and appraisal proceedings, some district courts have applied the Florida Arbitration Code to motions concerning appraisal awards as well. *See, e.g.*, *Marlowe v. Ironshore Specialty Ins. Co.*, No. 18-cv-245-FtM, 2020 U.S. Dist. LEXIS 26198, at *4 (M.D. Fla. Jan. 28, 2020) ("Florida's Arbitration Code also controls the modification of an appraisal award . . . ."). And courts have recognized that, absent a timely-filed motion to modify or vacate an award, "the parties must abide by it." *See Nestor v. Ward*, 163 So. 3d 582, 585-86 (Fla. 3d DCA 2015); Fla. Stat. §§ 682.10(2), 682.13(2) (setting deadlines to seek to correct or modify awards).

L&O expenses. Thus, summary judgment should be granted in the Newmans' favor on American Home's Tenth Affirmative Defense.

**VII.    American Home's Eleventh Affirmative Defense improperly seeks to relitigate the amounts awarded and paid pursuant to the L&O appraisal award, and any possible right to withhold payment until L&O expenses are "incurred" was clearly waived.**

In another misguided effort to claw back amounts paid to the Newmans pursuant to the L&O appraisal award, American Home claims that "[n]o Law and Ordinance damages and expenses were due and owing from American Home to Plaintiffs as of the date of the Law and Ordinance appraisal award on December 22, 2021 because Law and Ordinance upgrades had not been (and, to date, still have not been) required by any building official or otherwise." Ans. & Am. Affirmative Defenses at 25 ¶ 11. In other words, American Home claims that it never really owed the L&O expenses that it paid to the Newmans in February 2022, because "the first appraisal award on March 4, 2020 noted that Law and Ordinance coverage would be 'as incurred,' and no such Law and Ordinance damages and expenses have been incurred, nor are they planned." *Id*.

This defense fails as a matter of law for several independent reasons. First, the notion that L&O expenses are not owed unless and until they are "incurred" is a coverage argument that should have been raised (if it had any merit) as a defense to payment of amounts awarded by the appraisal panel. *See Licea*, 685 So. 2d at 1287; *New Park Towers Condo. Ass'n*, 2008 U.S. Dist. LEXIS 4091, at *9-11 (noting that, under Florida law, the "only defenses that remain for the insurer to assert [following an appraisal award] are lack of coverage for the entire claim, or violation of one of the standard policy conditions") (citing *Three Palms Pointe, Inc.*, 362 F.3d at 1318). There is no basis to contest coverage for these amounts in a statutory bad faith suit seeking *extracontractual* damages authorized under § 624.155, much less question whether the L&O amounts awarded by the panel are in fact required to obey building codes. That determination is binding on American Home as a matter of law, and American Home cannot relitigate the amounts awarded (and paid, albeit late) pursuant to the appraisal awards in this case. *See Noa*, 215 So. 3d at 143 (holding that applicable building code requirements are determined by the appraisal panel).

This defense also fails as a matter of law under the plain terms of the Policy, which the Court can interpret as a matter of law on summary judgment. Nothing in the Rebuilding to Code coverage requires the Newmans to "incur" the code-related expenses in order to trigger coverage— the word "incur" simply does not appear anywhere in the policy language. *See* Policy at 6, Part II.C.9., ECF No. 42-1 at 14. If American Home wished to impose an "incurred" requirement for

Rebuilding to Code coverage, it could (and would) have included that word in the Rebuilding to Code coverage. *See Anderson*, 756 So. 2d at 34.[6]

This is further confirmed when reading the Policy as a whole, because American Home uses the word "incurred" in numerous other policy provisions (an electronic search of the Policy yields 16 hits for the word "incur" or "incurred"). *See* SOF ¶¶ 22-23. This plethora of "incurred" requirements appearing in other policy provisions shows that American Home did not intend to impose such a requirement when it came to Rebuilding to Code coverage. *See Kel Homes, LLC v. Burris*, 933 So. 2d 699, 703 (Fla. 2d DCA 2006) ("[T]he use of different language in different contractual provisions strongly implies that a different meaning was intended."); *U.S. Fire Ins. Co. v. J.S.U.B., Inc.*, 979 So. 2d 871, 877 (Fla. 2007) (courts should "read each policy as a whole, endeavoring to give every provision its full meaning and operative effect").

Again, even if American Home had any right to withhold payment until the Newmans incurred the L&O expenses awarded in appraisal, American Home clearly waived that right: the undisputed facts show that American Home paid the L&O award knowing and accepting that such expenses had not yet been incurred. *Camillo*, 80 So. 3d at 400; *Pajcic*, 419 F. Supp. 2d at 1382. American Home's counsel, Steve Teebagy, acknowledged in writing that American Home was making the L&O award payment *despite* "significant issues with the award itself and the lack of proof that the building code expenses were incurred . . . ." SOF ¶ 25. As explained by American Home's 30(b)(6) witness, American Home decided to pay the L&O award "[w]hether or not it was fully due, fully compensable pursuant to the terms of the policy or pursuant to whether or not the appraisal was right," because American Home "knew the payment was due at a certain amount of time." SOF ¶ 26. These undisputed facts show that American Home intentionally relinquished any right to insist upon an "incurred" requirement, much less one that doesn't appear in the Policy in the first place. No reasonable jury could conclude otherwise.

---

[6] It is irrelevant that the first appraisal award included "as incurred" language next to the L&O line item when that language does not appear in the Policy itself. "In interpreting insurance contracts, the Florida Supreme Court has made clear that 'the language of the policy is the most important factor.'" *James River Ins. Co.*, 540 F.3d at 1274 (quoting *Taurus Holdings, Inc. v. United States Fid. & Guar. Co.*, 913 So. 2d 528, 537 (Fla. 2005). A court "must interpret the policy in accordance with the plain meaning so as to give effect to the policy *as written*." *Wash. Nat'l Ins. Corp. v. Ruderman*, 117 So. 3d 943, 948 (Fla. 2013) (emphasis added). American Home does not dispute that the umpire in this case did not have the power or authority to change any policy provisions or "rewrite the policy." *See* SOF ¶ 24.

Thus, summary judgment is also warranted as to American Home's Eleventh Affirmative Defense.

## CONCLUSION

For the foregoing reasons, the Newmans respectfully request that the Court enter partial summary judgment in their favor finding that Fla. Stat. § 627.70131(5)(a) (later re-numbered as Fla. Stat. § 627.70131(7)(a)) applies to this case, that the Newmans are entitled to recover statutory interest as a matter of law, and granting summary judgment in the Newmans' favor on American Home's Second, Fourth, Seventh, Eighth, Tenth, and Eleventh Affirmative Defenses.

Dated: October 27, 2023

Respectfully Submitted,

**REED SMITH LLP**
200 S. Biscayne Blvd., Suite 2600
Miami, FL 33131
Telephone: (786) 747-0222
Facsimile: (786) 747-0299

*/s/ Garrett S. Nemeroff*
**R. Hugh Lumpkin**
Florida Bar No. 308196
hlumpkin@reedsmith.com
**Matthew B. Weaver**
Florida Bar No. 42858
mweaver@reedsmith.com
**Christopher T. Kuleba**
Florida Bar No. 105302
ckuleba@reedsmith.com
**Garrett S. Nemeroff**
Florida Bar No. 111675
gnemeroff@reedsmith.com

## CERTIFICATE OF SERVICE

I hereby certify that on October 27, 2023, I electronically filed the foregoing document with the Clerk of Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record *via* Notice of Electronic Filing generated by CM/ECF.

*/s/ Garrett S. Nemeroff*
**Garrett S. Nemeroff**