UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division
Case No. 22-cv-20979-JB

MICHAEL NEWMAN, as Personal
Representative of the ESTATE OF JOEL
NEWMAN, and EDITH NEWMAN,

      Plaintiffs,

v.

AMERICAN HOME ASSURANCE
COMPANY, INC.,

      Defendant.

_____/

**DEFENDANT AMERICAN HOME ASSURANCE COMPANY, INC.'S
MOTION TO BIFURCATE TRIAL**

Defendant, American Home Assurance Company, Inc. ("American Home"), requests the Court to bifurcate the trial into a compensatory damages phase and a punitive damages phase, limiting the first phase to evidence and argument solely regarding bad faith liability and compensatory damages (if any), and, if the jury concludes that American Home acted in bad faith, a second phase to consider entitlement and amount of punitive damages. In support, American Home states as follows.

**INTRODUCTION**

American Home paid Plaintiffs over $15 million following the issuance of three appraisal awards for Plaintiffs' property damage claim after Hurricane Irma, but Plaintiffs allege that American Home acted in bad faith in handling their claim and demand additional compensation. And on top of compensatory damages, Plaintiffs also seek punitive damages, alleging not only that American Home acted in bad faith in handling their claim, but that American Home engaged in bad faith conduct as a "general business practice" by failing to conduct proper or thorough

1

investigations of its insureds' claims, providing "lowball" estimates, and "failing to timely and fully evaluate, quantify, and pay the actual amounts of its insureds' covered losses."   Am. Complaint, ¶ 124.

To pursue entitlement to punitive damages, Plaintiffs must first establish that American Home acted in bad faith in handling their claim and must then prove that American Home engaged in such bad faith conduct as a general business practice in handling other insureds' claims.   But whether American Home acted in bad faith in its treatment of Plaintiffs and whether American Home engaged in such conduct as a general business practice are discrete and severable issues.   In fact, the evidence Plaintiffs intend to use to establish a "general business practice" – civil remedy notices in other claims, other lawsuits against American Home or expert testimony regarding methods of rewarding employee performance – is irrelevant to American Home's liability for compensatory damages should a jury decide that American Home acted in bad faith toward Plaintiffs.

To avoid unfair prejudice to American Home and streamline the presentation of evidence, the Court should bifurcate the proceedings and require Plaintiffs to first prove liability for bad faith toward Plaintiffs before allowing Plaintiffs to introduce any evidence relevant solely to general business practices.   Allowing evidence of American Home's so-called general business practices will confuse, distract, and inflame the jury by painting American Home in a negative light, which will unfairly prejudice American Home and taint the outcome of trial.   Bifurcating the proceedings to eliminate any purported general business practice evidence during the initial liability and compensatory phase will reduce the risk of such unfair prejudice and may also shorten trial. Therefore, the Court should bifurcate these proceedings such that Plaintiffs must prove American

Home's liability for bad faith as a prerequisite to introducing any evidence relevant solely to punitive damages.

## ARGUMENT

### I.   THE COURT SHOULD BIFURCATE THE PROCEEDINGS INTO SEPARATE PHASES FOR COMPENSATORY AND PUNITIVE DAMAGES

#### a.   The Court is vested with broad discretion to bifurcate the liability and punitive damages phases of trial

Federal Rule of Civil Procedure 42(b) provides that "[f]or convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, or third-party claims." The Court is vested with "broad discretion . . . in this area," *Medtronic Xomed, Inc. v. Gyrus ENT LLC*, 440 F. Supp. 2d 1333, 1335 (M.D. Fla. 2006), and the "standard . . . is not high," *Harrington v. Cleburne Cty. Bd. Of Educ.*, 251 F.3d 935, 938 (11th Cir. 2001).

#### b.   Bifurcation is warranted to avoid unfair prejudice to American Home, to expedite the proceedings, and for the convenience of the parties and the Court

Plaintiffs' compensatory damages claim rests upon their allegation that American Home acted in bad faith in handling Plaintiffs' property insurance claim. Specifically, Plaintiffs allege that "American Home failed to timely pay [their] claim when, under all the circumstances, it could and should have done so had it acted fairly and honestly and with due regard for their interests, in violation of Fla. Stat. § 624.155(1)(b)1." Am. Comp. ¶ 194. They assert that American Home "made material misrepresentations to [Plaintiffs]" in investigating and adjusting their claim and allege that American Home's representatives "acted in the best interest of American Home, fail[ed] to promptly and reasonably investigate the claim, offer[ed] lowball estimates, and reject[ed] reasonable offers to settle the claim." Am. Comp. ¶ 165-96, 203.

In contrast, Plaintiffs' punitive damages claim is based, in meaningful part, on evidence regarding claims *other than* their own claim. Plaintiffs would thus offer this evidence to establish that American Home engaged in purported bad acts "with such frequency as to indicate a general business practice." *See* Fla. Stat. § 624.155(8). American Home anticipates that, to support their claim for punitive damages, Plaintiffs will attempt to admit – for example -- Civil Remedy Notices ("CRNs") from other cases, claims notes, and testimony from the lawyers who filed the CRNs. This evidence is inflammatory and has no probative value relative to Plaintiffs' bad faith claim against American Home based upon the handling of their own claim. On the contrary, such evidence will confuse and inflame the jury and deprive American Home of a fair trial.[1]

One potential solution is to bifurcate this trial and require Plaintiffs to first prove their bad faith case against American Home and, only if they meet their threshold burden, to then continue to a second phase of trial to consider whether to award any punitive damages. This way, if the jury returns a verdict finding no liability against American Home for bad faith, the case will end. Alternatively, if the jury decides that American Home acted in bad faith and that such conduct caused Plaintiffs compensable damages, the case can proceed to phase two, where the same impaneled jury will consider whether punitive damages are warranted and an appropriate sum.

In determining whether to bifurcate, courts generally evaluate "whether separate trials will be conducive to expedition of the litigation and to efficient judicial administration, whether separate trials will avoid prejudice, and whether the issues sought to be tried separately are significantly different." *Long v. Phillips & Brooks/Gladwin, Inc.*, No. 1:02-cv-1235-CC, 2006 WL 8431255, at *2 (N.D. Ga. Sept. 15, 2006). But "[o]nly one of these criteria need to be met to

---

[1] American Home has separately filed a Motion in Limine seeking to preclude such evidence as irrelevant and unfairly prejudicial.

justify bifurcation," *Saxion v. Titan-C-Manufacturing, Inc.*, 86 F.3d 553, 556 (6th Cir. 1996), and "the predominant consideration is a fair and impartial trial 'through a balance of benefits and prejudice,'" *Gilbert v. State Farm Mut. Auto. Ins. Co.*, 311 F.R.D. 685, 686 (M.D. Fla. 2015); *see also Tom v. S.B. Inc.*, No. 10-1257 LH/WPL, 2013 WL 12096532, at *1-2 (D.N.M. March 6, 2013) (bifurcating compensatory and punitive damages phases and finding that, although there was "substantial evidence in support of [the] punitive damages claims" which would "also be relevant and admissible" for the liability phase, "bifurcation would serve the important purpose of avoiding prejudice by minimizing the risk that the jury will conflate the legal elements of compensatory and punitive damages").

In *Scheufler v. Gen. Host Corp.*, 895 F.Supp. 1411 (D. Kansas 1995), for example, an action for damages resulting from salt pollution of an aquifer, the court held that bifurcating the compensatory and punitive damages phases would "be conducive to judicial economy and efficiency," and "prevent possible prejudice to defendant." *Id.* at 1413-14. Significantly, it found that "some evidence which is irrelevant to the determination of actual damages is highly relevant to the issue of punitive damages," and that precluding the introduction of punitive damages evidence until "after a determination of actual damages w[ould] eliminate any possibility that the jury could consider the evidence for an improper purpose." *Id.* at 1414. The *Scheufler* Court also noted that bifurcation would serve the interests of judicial economy: the "jury would not need to consider [issues related to punitive damages] if no actual damages were awarded, which would save trial time and the expense of putting on the additional evidence." *Id.* And "[i]f a second phase" as to punitive damages "bec[a]me[] necessary, no duplication of evidence would be required because the same jury would hear both phases of trial." *Id.*

Similarly, in *Long*, 2006 WL 8431255,[2] the court separated the trial of liability from the determination of compensatory damages.  It found that, first, the threshold issues relating to liability were "narrow," "differ[ed] greatly from the issue of compensatory damages," could "likely be resolved in an expeditious manner," and, if resolved in favor of the defendant, "could render the trial of other issues in the case unnecessary."  *Id.*  Second, the court found, while the plaintiffs had asserted there were "some witnesses whose testimony [could] be relevant" to multiple phases, the court was "not persuaded that there w[ould] be a significant amount of overlap," and judicial efficiency was still "best served by separating the trial" of the issues.  *Id.*  Third, the court observed that the damages evidence was "likely to be complex, requiring expert testimony on a number of issues," so separating the compensatory and punitive damage claims would "simplify the case for the jurors and . . . likely reduce the potential for confusion."  *Id.*  And fourth, it held that separating the phases would "greatly reduce any potential" that evidence relating to the latter phase would "prejudice the jury's determination of liability."  *Id.*

Other courts have bifurcated trials after applying a similar analysis.  *See, e.g.*, *RightCHOICE Managed Care, Inc. v. Hospital Partners, Inc.*, No. 5:18-cv-06037-DGK, 2021 WL 4236611, at *1 (W.D. Miss. Sept. 16, 2021) (ordering bifurcation into a (1) liability/compensatory damages phase and (2) punitive damages phase to "ensur[e] that Plaintiffs can present all their evidence relevant to punitive damages without substantially risking unfair prejudice to the [defendants] or wasting time during trial"); *Miller v. New Jersey Transit Authority Rail Operations,* 160 F.R.D. 37, 41 (D. New Jersey 1995) (referring to this as trifurcating proceedings

---

[2] The *Long* Court trifurcated the proceedings into phases for liability, compensatory, and punitive damages, but noted that Georgia law "require[d] that the issue of punitive damages be tried separately in the last phase of the trial," so "the issue in dispute [wa]s only whether the trial should be trifurcated instead of bifurcated."  *Id.* at *1 n.1.

to allow jury to evaluate the "complicated liability stage" of trial without diverting the jury by presenting the severity of plaintiff's injuries that could cloud "even a conscientious juror's judgment"); *Kushner v. Hendon Constr., Inc.* 81 F.R.D. 93 (M.D. Pa. 1979) (concluding that bifurcation was appropriate because it shortened trial and allowed the jury to consider liability without regard for the seriousness of a plaintiff's injury); *Beuchamp v. Russell,* 547 F.Supp 1191 (N.D. Ga. 1982) (bifurcating issues of liability and damages to avoid potential prejudice to defendant that might result if the extent to which plaintiff suffered injury was presented during the liability phase); *Arthur Young & Comp. v. United States District Court*, 549 F.2d 686, 696 (9th Cir. 1977) (bifurcating securities fraud class action by ordering separate juries to decide the issues of liability and damages "is well within the scope of a trial court's discretion under Fed. R. Civ. P. 42(b)"); *Vaughan v. Harrah's Las Vegas, Inc.,* 238 P.3d 863, *3 (Nev. 2008) (affirming "trifurcation" into liability, compensatory damages, and punitive damages phases because the decision "was conducive to expedition and economy" by "sav[ing] weeks of . . . testimony," "avoided prejudicing the respondents" because evidence of the plaintiff's injury "could readily distract the jury from the issue of liability and unreasonably impassion them," and the injuries were not "inextricably interrelated" with liability).

These cases are instructive and support bifurcating the case to eliminate the risk that punitive damages evidence impacts the issue of whether American Home is liable for bad faith relative to the handling of Plaintiffs' individual claim. Additionally, this case fits perfectly within the paradigm of bifurcation because the other claims evidence has no relevance to Plaintiffs' individual claim and relates solely to their punitive damages claim. Bifurcation of the punitive damages claim would limit the presentation of that evidence to the punitive damages phase, reducing jury confusion and prejudice to American Home. *See Hanie v. Barnett,* 213 Ga. App.

158 (Ct. App. Ga. 1994) (in medical malpractice case involving evidence of the defendant's "past conduct" and prior "similar" acts of malpractice, affirming trial court's order severing negligence and punitive damages phases and finding there was a "great possibility that evidence concerning the other issues might taint the trial of the professional negligence case").

Bifurcation will also enhance judicial efficiency and streamline the trial because, if the jury determines that American Home did not act in bad faith in its handling of Plaintiffs' claim (and that American Home is thus not liable for compensatory damages), this will obviate the need for evidence regarding general business practices. *Gilbert*, 311 F.R.D. at 687 ("[S]evering the issues of liability and damages 'furthers convenience' because it is more efficient than permitting the parties to spend additional time presenting evidence on Plaintiff's damages in the event Plaintiff is barred from recovery."). Thus, if the issues are bifurcated, the first (liability and compensatory damages) phase will be shorter than if both parties presented evidence related to both issues: the jury will hear testimony relating to the handling of Plaintiffs' claim and industry standards and customs, but not evidence relating to American Home's handling of other claims or American Home's net worth. If the jury returns a verdict for American Home after the first phase, there will be no need for a second phase. If, on the other hand, the jury returns a verdict for Plaintiffs and the case proceeds to the second phase, the same jury will have already heard the evidence regarding industry standards and practices, and the only additional evidence to be presented will be that related to American Home's conduct regarding claims *other than* Plaintiffs'. Bifurcation will not duplicate the presentation of evidence that was relevant to both phases, so this approach will not lengthen the trial. *See Scheufler*, *supra* ("no duplication of evidence w[ill] be required"); *See also Tom*, 2013 WL 12096532, at *1-2 (ordering bifurcation to avoid prejudice to the defendant even when there was "substantial" overlapping evidence relevant to both claims).

Finally, bifurcation will reduce the risk of juror confusion.  Allowing the jurors to hear evidence and argument relating to American Home's general business practice is likely to not only inflame the jury but to confuse them regarding the governing legal standard and the evidence that is appropriately considered in connection with Plaintiffs' claims.  Bifurcating the trial will prevent this confusion. *See Tom*, 2013 WL 12096532 (finding that bifurcation "would serve the important purpose of avoiding prejudice by minimizing the risk that the jury will conflate the legal elements of compensatory and punitive damages claims").

In sum, Plaintiffs should not be permitted to unfairly bolster their compensatory damage case against American Home through inflammatory evidence and accusations regarding American Home's purported conduct in other cases.  The Court should sever the determination of liability for and amount of compensatory damages (if any) from the determination of liability for and amount of punitive damages (if any).

## II.   AT A MINIMUM, THE COURT SHOULD BIFURCATE LIABILITY FOR PUNITIVE DAMAGES FROM THE AMOUNT OF PUNITIVE DAMAGES

If the Court declines to bifurcate this case into a first phase on liability and compensatory damages and a second phase on punitive damages liability and amount, the Court should bifurcate entitlement to punitive damages from the amount.  In *W.R. Grace & Co. v. Waters*, 638 So.2d 502, 506 (Fla. 1994), the Florida Supreme Court held that, "trial courts, when presented with a timely motion, should bifurcate the determination of the amount of punitive damages from the remaining issues at trial."  In the first stage, "the jury should hear evidence regarding liability for actual damages, the amount of actual damages, and liability for punitive damages, and should make determinations on those issues." *Id.*  Only if the jury "determines that punitive damages are warranted," should the trial court proceed to the second phase, where "the same jury should then hear evidence relevant to the amount of punitive damages and should determine the amount for

which the defendant is liable." *Id.*; *see Blanco v. Capform, Inc.*, No. 11-23508, 2013 WL 118171, at *4 (S.D. Fla. Jan. 9, 2013) (granting bifurcation and finding that the introduction of evidence regarding the defendant's net worth "may render some jurors more inclined to find [the defendant] liable because, in their perception, [the defendant] could afford to compensate the [p]laintiff").

While the *W.R. Grace* procedure "is not binding upon a federal trial court," federal district courts, including this one, have determined that "it makes a great deal of sense" and applied it. *See Soliday v. 7-Eleven, Inc.*, No. 2:09-CV-807-FTM-29, 2011 WL 2413656, at *1 (M.D. Fla. June 13, 2011) (concluding that bifurcation as set forth in *W.R. Grace* "makes a great deal of sense"); *Horrillo v. Cook Inc.*, No. 08-60931-CIV, 2014 WL 2712341, at *1 (S.D. Fla. Apr. 29, 2014) ("The issue of punitive damages shall be presented to the jury in the manner set forth in [*W.R. Grace*]. Both compensatory and punitive damages liability, as well as the amount of compensatory damages, if any, should be determined in the first phase of the trial. In the event liability for punitive damages is found in the first phase of the trial, the jury should then determine the amount of punitive damages to be awarded, if any, in the second phase of the trial. The same jury should hear both phases of the trial").

Plaintiffs do not oppose bifurcation of the trial in this manner. Thus, if the Court declines to bifurcate the trial by requiring Plaintiffs to prove their case for bad faith and compensatory damages before introducing any evidence relating solely to American Home's general business practices, it should, at a minimum, bifurcate the trial and preclude evidence of American Home's net worth or other evidence relevant to the *amount* of punitive damages unless the jury finds that American Home is liable for such damages.

## **CONCLUSION**

For these reasons, American Home respectfully requests the Court to bifurcate these proceedings as described herein.

Respectfully submitted,

*/s/ Jack R. Reiter*
Jack R. Reiter, Esq.
Florida Bar Number 0028304
jack.reiter@gray-robinson.com
Sydney Feldman, Esq.
Fla. Bar Number 1017798
sydney.feldman@gray-robinson.com
GrayRobinson, P.A.
333 Southeast Second Avenue, Suite 3200
Miami, Florida 33131
Telephone: (305) 416-6880
Facsimile: (305) 416-6887

Angel A. Cortiñas, FBN 797529
Jonathan H Kaskel, FBN 52718
DENTONS US LLP
1 Alhambra Plaza, Penthouse
Coral Gables, Florida 33134
Telephone: 305-537-0009
angel.cortinas@dentons.com
jonathan.kaskel@dentons.com

Laura Besvinick, FBN 391158
Julie Nevins, FBN 182206
Clyde & Co US LLP
1221 Brickell Avenue, Suite 1600
Miami, Florida 33131
Telephone: 305-446-2646
laura.besvinick@clydeco.us
julie.nevins@clydeco.us

*Counsel for Defendant American Home*
*Assurance Company*

11