UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 1:22-cv-20979-JB

MICHAEL NEWMAN, as Personal Representative
of the ESTATE OF JOEL NEWMAN, and
EDITH NEWMAN,

    *Plaintiffs*,

v.

AMERICAN HOME ASSURANCE
COMPANY, INC.,

    *Defendant*.

_____/

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT'S
MOTION TO BIFURCATE TRIAL**

Plaintiffs Michael Newman, as Personal Representative of the Estate of Joel Newman, and Edith Newman, respectfully submit this response to Defendant American Home Assurance Co.'s ("AIG") Motion to Bifurcate Trial [DE 220].

**INTRODUCTION**

The Court should deny AIG's request to split the trial into three separate phases. "The party seeking separate trials bears the burden of proving that bifurcation is necessary." *EEOC v. Pitre, Inc.*, 908 F. Supp. 2d 1165, 1171 (D.N.M. 2012) (citing Charles Alan Wright et al., 9A Federal Practice & Procedure § 2388 (3d ed.)). AIG does not meet that burden here.

After conferring with AIG, the Newmans previously agreed to a proposal for bifurcation in line with *W.R. Grace & Co. v. Waters*, 638 So. 2d 502 (Fla. 1994), such that the jury would first decide AIG's liability for compensatory and punitive damages, then in a separate phase, determine the amount of punitive damages owed. AIG, however, seeks "trifurcation" of trial in a manner that

would go well beyond what any other judge in this district has ordered. Under AIG's proposal, the Newmans would be barred from introducing any evidence of general business practices governing the handling of insurance claims, including but not limited to evidence of AIG's (mis)handling of other insureds' claims. This is necessary, according to AIG, to prevent the Newmans from painting AIG "in a negative light," inflaming the jury, and because the evidence of AIG's business practices allegedly does not relate to the Newmans' claim. Mot. at 2.[1]

AIG's novel proposal should be rejected. First, although "the *W.R. Grace* procedure is not binding on a federal court, it has been applied to punitive damages claims under Florida law in appropriate cases." *B-K Cypress Log Homes Inc. v. Auto-Owners Ins. Co.*, No. 09-CV-211, 2012 U.S. Dist. LEXIS 200754, *5 (N.D. Fla. May 10, 2012). This is exactly such a case, and as far as the Newmans can tell, no judge in the Southern District of Florida has structured a bad faith trial in the manner AIG suggests. Second, evidence of AIG's general business practices is relevant to (at minimum) Count III of the Amended Complaint, and constitutes evidence of AIG's routine practices under Federal Rule of Evidence 406. Third, splitting up the trial in the manner suggested by AIG lacks support under Florida law, would go beyond the procedure outlined in *W.R. Grace*, and would likely hinder rather than foster judicial efficiency.

In sum, AIG has failed to meet its burden, and the Court should deny its motion. At most, the Court should order *W.R. Grace* bifurcation.

---

[1] AIG cites no authority for the curious proposition that insureds in lawsuits against their carriers paint them "in a negative light" or otherwise inflame jurors by discussing the carriers' handling of other insureds' claims. Though it says a lot about how AIG perceives its conduct in those other claims.

## ARGUMENT AND MEMORANDUM OF LAW

"Federal Rule of Civil Procedure 42(b) allows for discretionary bifurcation 'in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy.'" *Id*. at *4. "The piecemeal trial of separate issues in a single lawsuit or the repetitive trial of the same issue in severed claims is not to be the usual course. Thus, Rule 42(b) should be resorted to only as the result of the exercise of informed discretion when the district judge believes that separation will achieve the purposes of the separate trial rule." 9A Wright & Miller, *supra*, § 2388. It is well-established that "[t]he party seeking separate trials, however, has the burden of proving that separation of the cases is necessary." *Id*.

### I.    The Court should follow *W.R. Grace.*

The procedure outlined by the Florida Supreme Court in *W.R. Grace* is as straightforward as it is sensible:

> We hold that henceforth trial courts, when presented with a timely motion, should bifurcate the determination of the amount of punitive damages from the remaining issues at trial. <u>At the first stage of a trial in which punitive damages are an issue, the jury should hear evidence regarding</u> liability for actual damages, the amount of actual damages, and <u>liability for punitive damages</u>, and should make determinations on those issues. <u>If, at the first stage, the jury determines that punitive damages are warranted, the same jury should then hear evidence relevant to the amount of punitive damages and should determine the amount</u> for which the defendant is liable.

638 So. 2d at 506 (emphasis added).

District courts in the Eleventh Circuit routinely adopt this procedure. *See, e.g.*, *Felix v. Key Largo Mgmt. Corp.*, No. 19-10067-CIV, 2022 U.S. Dist. LEXIS 237856, at *3 (S.D. Fla. July 21, 2022); *Puldon v. Am. Med. Sys., Inc.*, No. 0:20-cv-60411, 2021 U.S. Dist. LEXIS 262741, at *4 (S.D. Fla. Feb. 18, 2021); *Goodnight v. Bos. Sci. Corp.*, 548 F. Supp. 3d 1325, 1331 (S.D. Fla. 2020) (referencing a motion to bifurcate that was previously granted); *Zarfaty v. Garden Fresh Rest. Corp.*, No. 15-cv-60268, 2019 U.S. Dist. LEXIS 188627, at *5 (S.D. Fla. Oct. 31, 2019);

*Salinero v. Johnson & Johnson*, No. 1:18-cv-23643-UU, 2019 U.S. Dist. LEXIS 196600, at *2 (S.D. Fla. Oct. 24, 2019); *Horrillo v. Cook Inc.*, No. 08-60931-CIV-MATTHEWMAN, 2014 U.S. Dist. LEXIS 60472, at *2 (S.D. Fla. Apr. 29, 2014); *In re Engle*, No. 3:09-cv-10000-J-WGY-JBT, 2013 U.S. Dist. LEXIS 154456, at *11 (M.D. Fla. Oct. 28, 2013) (rejecting "novel tripartite trial structure" in favor of *W.R. Grace* bifurcation); *Soliday v. 7-Eleven, Inc.*, No. 2:09-cv-807-FtM-29SPC, 2011 U.S. Dist. LEXIS 63288, at *5 (M.D. Fla. June 13, 2011) ("While this procedure is not binding upon a federal trial court, it makes a great deal of sense.").

In fact, all cases in Florida involving punitive damages and allegations of insurer bad faith either reject bifurcation outright, or simply follow *W.R. Grace*. *See, e.g.*, *B-K Cypress Log Homes Inc.*, 2012 U.S. Dist. LEXIS 200754, *5 (explaining that while *W.R. Grace* bifurcation has been applied to punitive damages claims in federal court, bifurcation was not necessary); *Am. Chambers Life Ins. Co. v. Hall*, Case No. 96-0244, 1997 Fla. App. LEXIS 6142, at *7 (Fla. 4th DCA June 4, 1997) (noting that "in the instant case, the trial was bifurcated under the procedure of *W.R. Grace*," where "the first stage of the trial, liability, the amount of compensatory damages, and liability for punitive damages were tried"). The only district court in the Southern District of Florida (known to the Newmans) to have explicitly declined to follow *W.R. Grace* did not involve allegations of insurer bad faith, and did so in favor of instead having a single, unified trial. *See Lopez v. Zoll Servs.*, No. 21-22433-CIV-MARTINEZ-BECERRA, 2022 U.S. Dist. LEXIS 189514, at *6 (S.D. Fla. Oct. 17, 2022) (Martinez, J.) (declining to follow *W.R. Grace* where the plaintiff would not "gain an unfair advantage by having the jury decide these issues together").

For its part, AIG does not cite a single case in Florida where a district court structured a trial into three phases: (1) compensatory damages entitlement and amount; (2) punitive damages

entitlement; and (3) punitive damages amount. To the Newmans' knowledge, no such case exists. The Court should decline AIG's invitation to be the first court to adopt this approach.

Importantly, even if *W.R. Grace* bifurcation is granted, AIG should be admonished not to mention the bifurcated nature of the trial to the jury, besides merely quoting the jury instructions. *Salinero*, 2019 U.S. Dist. LEXIS 196600, at *2 ("Ethicon may not make reference to the bifurcated proceedings other than to quote the language in the Florida Standard Jury Instructions on Punitive Damages — Bifurcated Procedure, Instruction 503.1."). This protective measure ensures that AIG cannot suggest to the jury that finding a lack of liability for AIG will shorten the length of their jury duty. Similarly, to the extent AIG argues that *W.R. Grace* bifurcation would result in the presentation of evidence that is only relevant for a specific purpose at the first phase of trial, "[a]ny potential confusion by the jury as to the evidence that may be considered in determining an award of each type of damages will be addressed with appropriate jury instructions." *B-K Cypress Log Homes Inc.*, 2012 U.S. Dist. LEXIS 200754, at *7.

## II.     Evidence of AIG's general business practices overlaps with the evidence relevant to the Newmans' own claim.

AIG's principal argument is that evidence of its general business practices, including but not limited to any evidence regarding other insureds' homeowners claims in Florida, "ha[ve] no relevance to Plaintiffs' individual claim and relate[] solely to their punitive damages claim," such that it will confuse and unfairly inflame the jury if presented when the Newmans put on their bad faith case. Mot. at 7.

But AIG's argument entirely relies on one count in the Newmans' three-count complaint. In Count I, the Newmans allege that AIG violated section 624.155(1)(b)(1) because AIG failed to timely pay their claim when, under all the circumstances, it could and should have done so had it acted fairly and honestly and with due regard for the Newmans' interests. AIG narrowly focuses

on that claim to argue that evidence of AIG's general business practices has no relevance to that count. Mot. at 3. AIG's failure to discuss or even mention any of the other counts in the Amended Complaint speaks volumes. But that failure is no accidental omission. AIG presumably hopes to divert the Court's focus from Count III of the Amended Complaint, where the Newmans further allege that AIG engaged in unfair claims handling by, among other things, "fail[ing] to implement standards for the proper investigation of claims" in violation of Fla. Stat. § 624.155(1)(a) and the incorporated sections of the Unfair Insurance Trade Practices Act, Fla. Stat. § 626.9541(1)(i). Am. Compl. (ECF No. 42) ¶¶ 210-220.

Evidence of AIG's mishandling of other insureds' claims in Florida is probative of whether AIG failed to adopt and implement standards for the proper investigation of claims, as is evidence of AIG's financial goals, metrics, and practices for investigating and paying claims more generally. For example, AIG's practice of understaffing its claims department and overworking supervisors such as Kathy Spinella is not only a general business practice supporting the Newmans' punitive damages claim; it also contributed to AIG's failure to properly handle the Newmans' own claim.

Evidence of AIG's business practices also constitute circumstantial evidence of AIG's routine practices which, in turn, leads to the conclusion that AIG more likely than not acted in accordance with those practices when handling the Newman claim. Rule 406 states "[e]vidence of a person's habit or an organization's routine practice may be admitted to prove that on a particular occasion the person or organization acted in accordance with the habit or routine practice." As discussed more fully in the Newmans' response to AIG's motion for summary judgment, the jury will hear evidence of how AIG artificially narrows the scopes of its investigations to lowball their insureds and pass the costs of conducting a full and fair investigation to AIG's customers. The jury will also hear testimony from AIG employees and outside adjusters showing that the Newmans'

claim was handled consistent with AIG's and the Private Client Group's business practices for handling similar claims.

In short, there is a clear and substantial factual overlap between the business practices and routine practices the Newmans will prove in this case, and how those practices were implemented and brought to bear in the Newmans' claim. The Court should therefore deny AIG's attempt to sever the Newmans' general business practice claim from their claim for compensatory damages. Plainly, bifurcation is improper where the issues to be severed will be based on substantially the same facts or witnesses anyway, "or if any saving in time and expense is wholly speculative," as the intention of Rule 42 is to further "the parties' convenience, [] avoid[] delay and prejudice, and [] promot[e] the ends of justice." 9A Wright & Miller, *supra*, § 2388.

### III. Limiting any bifurcation to *W.R. Grace* would secure the Newmans' right to a just, speedy, and inexpensive determination of this case.

The Federal Rules of Civil Procedure "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1. Here, AIG's novel "trifurcation" structure is contrary to *W.R. Grace* and is neither the most just, speedy, or inexpensive manner of bifurcating this case. Rule 1 thus instructs following *W.R. Grace* instead.

AIG mainly relies on three cases to argue the efficiency and justice of its proposal—none of which concern insurance law or bad faith—and only one of which is from the Eleventh Circuit. In the first, *Scheufler*, "the issues for determination of punitive damages" were "distinct from the issues involved in the actual damages determination" since the determination of punitive damages liability required "presentation of a great deal of historical information concerning the operations of [a particular salt] plant" (in addition to unique considerations about extensive past litigation).

*Scheufler v. Gen. Host Corp.*, 895 F. Supp. 1411, 1414 (D. Kan. 1995). These considerations are simply not in play here.

As for *Long*, the court's analysis there rested on the fact that it was a personal injury case where the determination of <u>compensatory</u> damages was an entirely distinct task from determining whether the defendant owed and breached its duty of care. *See Long v. Phillips & Brooks/Gladwin*, No. 1:02-CV-1235-CC, 2006 U.S. Dist. LEXIS 110315, at *5 (N.D. Ga. Sep. 15, 2006). In *Long*, a bifurcated trial separated out determination of the extent of a personal injury from determination of the cause of that injury—something which wouldn't be achieved here because, in any case, the jury will consider compensatory damages in the first trial.

Finally, *Tom* ruled in favor of bifurcation because the court agreed with the defendant's "position that the jury here may be diverted from the task of determining liability for compensatory damages by argument and evidence related strictly to punitive damages." *Tom v. S.B. Inc.*, 2013 U.S. Dist. LEXIS 192696, at *4 (D.N.M. Mar. 6, 2013). As detailed above, the Newmans' evidence regarding punitive damages cannot be so cleanly separated from the rest of their case.

Given the timing of AIG's motion, AIG's request would likely cause the Newmans to incur substantial additional costs and time to prepare this case for trial. While deposition designations have not yet been exchanged, the Newmans have already spent considerable time reviewing and designating portions of numerous depositions and exhibits in preparation for trial. If AIG's motion were granted, the Newmans would have to spend further considerable resources to comb through the evidence again and separate out punitive damages evidence from the rest of the evidence.

A *W.R. Grace* bifurcation, on the other hand, will not require this inefficient result, as the second phase would likely involve a small amount of evidence concerning AIG's net worth, along with the argument of counsel. *See United States v. Ahuja*, No. 3:14-CV-1558 (JCH), 2017 U.S.

Dist. LEXIS 68649, at *37 (D. Conn. May 5, 2017) ("The burden is on the defendant to produce evidence of an inability to pay.").

## CONCLUSION

For the foregoing reasons, the Newmans respectfully request that the Court enter an order denying AIG's Motion to Bifurcate Trial.

Dated: December 8, 2023

Respectfully Submitted,

**REED SMITH LLP**
200 S. Biscayne Blvd., Suite 2600
Miami, FL 33131
Telephone: (786) 747-0222
Facsimile: (786) 747-0299

*/s/ Garrett S. Nemeroff*
**R. Hugh Lumpkin**
Florida Bar No. 308196
hlumpkin@reedsmith.com
**Matthew B. Weaver**
Florida Bar No. 42858
mweaver@reedsmith.com
**Christopher T. Kuleba**
Florida Bar No. 105302
ckuleba@reedsmith.com
**Garrett S. Nemeroff**
Florida Bar No. 111675
gnemeroff@reedsmith.com

## CERTIFICATE OF SERVICE

I hereby certify that on December 8, 2023, I electronically filed the foregoing with the Clerk of Court using CM/ECF. I also certify that the foregoing is being served this day on all counsel of record via transmission of Notice of Electronic Filing generated by CM/ECF.

*/s/ Garrett S. Nemeroff*
**Garrett S. Nemeroff**