## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

CASE No.: 22-cv-20979-JB

MICHAEL NEWMAN,
as Personal Representative of the
ESTATE OF JOEL NEWMAN,
and EDITH NEWMAN,

      Plaintiffs,

v.

AMERICAN HOME ASSURANCE
COMPANY, INC.,

      Defendant.

_____/

### ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT

**THIS CAUSE** came before the Court on Plaintiffs' Motion for Partial Summary Judgment ("Plaintiffs' Motion"), ECF No. [170], and Defendant's Motion for Summary Judgment ("Defendant's Motion"), ECF No. [172]. Each party filed their respective Responses in Opposition and Replies, along with Statements of Material Facts, Opposing Statements of Material Facts, and Reply Statements of Material Facts. ECF Nos. [169], [173], [175], [209], [210], [211], [212], [233], [234], [235], [236]. Further, the Court heard oral argument on the Motions. ECF No. [269]. Upon due consideration of the Motions, the arguments of the Parties, the relevant legal authorities, and for the reasons explained below, Plaintiffs' Motion for Partial Summary Judgment is **GRANTED IN PART AND DENIED IN PART**, and Defendant's Motion for Summary Judgment is **GRANTED IN PART AND DENIED IN PART**.

## I.    BACKGROUND

Defendant American Home Assurance Company, Inc. ("American Home") issued a homeowner's policy to Joel and Edith Newman (the "Newmans"), which insured their home during the period of September 22, 2016 to September 22, 2017 (the "Policy").  ECF No. [169] at ¶ 1.  The Policy was marketed to high-net worth individuals by AIG's Private Client Group[1] and differs from standard form homeowners policies used by other insurers.  *Id*. at ¶ 4-5.  Two provisions regarding the scope of the Policy's coverage are relevant here.

First, the Policy provides coverage for "Additional Living Expenses" ("ALE") which "consist of Extra Living Expenses, loss of fair rental value, and forced evacuation expenses . . ."  ECF No. [173] at ¶ 3.   With respect to "Extra Living Expenses," the Policy states that "[i]f a covered loss makes your residence uninhabitable, we cover any reasonable increase in living expenses incurred by you to maintain your household's usual standard of living."[2]  *Id*.  With respect to "Fair Rental Value," the Policy states that "[i]f you are not able to rent out your residence, or part of your residence, that you usually rent to others, because of a loss that is covered by this policy, we will pay the fair rental value for the reasonable amount of

---

[1] American Home is an underwriting company of AIG.  ECF No. [173] at ¶ 2.

[2] The Newmans secured alternative living arrangements by entering into a lease for an apartment in February 2019 at a monthly rental rate of $40,000.00.  *Id*. at ¶ 25. Ultimately, the Newmans purchased that apartment in May 2021 for $10,500,000.00. *Id*. at ¶ 26.

time necessary to restore your residence, or that part of your residence, to a habitable condition." *Id*.

Second, the Policy provides coverage for "Rebuilding to Code", which states that "[w]e will pay the extra expenses to obey any law or ordinance that regulates repair, rebuilding or demolition of damaged property caused by a covered loss . . . ." ("L&O") *Id*. The limit for L&O coverage "[i]f the loss is to a house" is "up to 30% of the amount of coverage shown on the Declarations Page for that house." *Id*.

On or about October 12, 2017, American Home received notice of Plaintiffs' claim arising from Hurricane Irma (the "Claim"). ECF No. [169] at ¶¶ 8-9. The Newmans and American Home each retained professionals to investigate the damage to the Newman's home and exchanged competing estimates to repair the damage. Those initial estimates were millions of dollars apart. In particular, in May 2018, the Newmans estimated the cost to repair their home to be $1,977,875.22, which later increased to approximately $2.4 million. ECF No. [173] at ¶ 7(o). By September 2018, the estimate again increased when the Newmans submitted a partial estimate to American Home of $7,369,419.00. *Id*. at [173] at ¶ 7(p). For its part, American Home estimated the repair costs for the home to be $498,571.91, later increasing their estimate to $981,274.00. ECF No. [42] at ¶ 36; [173] at ¶ 7(s).

Having been unable to agree on the amount of loss, American Home demanded an appraisal of the loss pursuant to the terms of the Policy.[3] Specifically, the Policy

---

[3] Prior to appraisal, American Home made two payments to the Newmans for the Claim: one payment of $202,575.91 in March 2018 and another payment of $482,702.99 in April 2019. ECF No. [173] at ¶¶ 7(j), 7(t).

provides in pertinent part that "[i]f you and we fail to agree on the amount of loss, either may . . . [d]emand an appraisal of the loss.  In this event, each party will choose a competent appraiser . . . [and] [t]he two appraisers will choose an umpire."  ECF No. [173] at ¶ 5.  The Policy further provides that if the parties' chosen appraisers fail to agree on the amount of the loss, "they will submit their differences to the umpire [and] [a] decision agreed to by an two will set the amount of the loss."  ECF No. [42-1] at § IV, M.

### A.    The Appraisals

On March 4, 2020, the appraisal panel issued an award to the Newmans totaling $9,179,272.15 (the "Dwelling Award"), which American Home paid.  *Id*. at ¶¶ 14-15.   With respect to appraisal of ALE and contents of the home, the Dwelling Award stated, "YET TO BE APPRAISED."  *Id*. at ¶ 14.  With respect to L&O benefits, the Dwelling Award stated, "AS INCURRED PER THE POLICY AND FLORIDA LAW."  *Id*.  On September 15, 2020, the appraisal panel awarded the Newmans $1,400,000.00 in ALE benefits (the "ALE Award"), which American Home paid.  *Id*. at ¶¶ 18-19.

After the Dwelling Award was issued, the Newmans notified American Home that "[b]ecause the now-confirmed cost to repair the Newmans' home exceeds 50% of the structure's appraised value of $13,000,000.00, the Newmans will be required to ensure that all aspects of their now 25-year old home are up to the current state and local building codes and ordinances under the '50% rule'," and they have "encountered several issues which will trigger law and ordinance coverage."  *Id*. at ¶ 17.  The

4

Newmans invoked the Policy's appraisal provision to determine the L&O portion of their loss (the "L&O Appraisal"). *Id*. at ¶ 20.

American Home agreed to participate in the L&O Appraisal, which involved a new appraisal panel, including a new umpire and a new appraiser hired by American Home. ECF No. [169] at ¶¶ 15, 20. On December 22, 2021, the appraisal panel awarded the Newmans $5,827,300.84 for L&O benefits (the "L&O Award"). ECF No. [173-13] at 2. The Declaration of Appraisal accompanying the L&O Award states that "[t]his appraisal was for the <u>potential</u> Ordinance or Law related values." *Id*. Further, the umpire's email transmitting the L&O Award states that "[a]s we all agreed, this appraisal is unusual since [L&O] has not been ordered by the jurisdiction and [L&O] costs have [not] been incurred." ECF No. [173] at ¶ 22.

American Home paid the Newmans $4,617,632.40 of the L&O Award based on the applicable policy limits. *Id*. at ¶ 23. When making this payment, American Home took the position that that there were "significant issues" with the L&O Award and noted that there was a "lack of proof that the building code expenses were incurred especially since the award uses the term 'Potential' to describe the ordinance or law values." *Id*.; ECF No. [211] at 8 n.6. The corporate representative of American Home explained its decision to pay the L&O Award this way: "[w]hether or not it was fully due, fully compensable pursuant to the terms of the policy or pursuant to whether or not the appraisal was right, [AIG Claims] knew the payment was due at a certain amount of time. And so rather than, you know, argue or do whatever, [AIG Claims]

made a decision and out of an abundance of caution to simply pay it right now in an effort to resolve the matter."  ECF No. [212] at ¶ 26.

### B.   This Action

On March 31, 2022, Plaintiffs filed a Complaint against American Home for damages based upon its alleged bad-faith handling and adjustment of the Claim. ECF No. [1].  Plaintiffs later filed an Amended Complaint, which is the operative pleading.  ECF No. [42].  The Amended Complaint asserts three causes of action.

Count I alleges a violation of Fla. Stat. § 624.155(1)(b)1 for American Home's alleged failure to act in good faith to settle the Claim, including its alleged failure to "promptly and reasonably investigate the Claim, offering to pay lowball estimates, and rejecting reasonable offers to settle the [C]laim." *Id*. at 36.  Count II alleges a violation of Fla. Stat. §§ 624.155(1)(a) and 626.9541(1)(i) for American Home's alleged unfair claim settlement practices, specifically that American Home allegedly made material misrepresentations to the Newmans while investigating and adjusting the Claim.  *Id*. at 36-38.  Count III also raises a violation of Fla. Stat. §§ 624.155(1)(a) and 626.9541(1)(i) for American Home's unfair claim settlement practices based upon allegations that American Home "failed to conduct a timely and reasonable investigation of the Newman's claim, including as to the cause and amount of loss, failed to implement standards for the proper investigation of claims, failed to act promptly in response to communications relating to the claim, and failed to provide timely and reasonable explanations concerning the nature and necessity of its requests for information."  *Id*. at 38-40.

Plaintiffs seek punitive damages, as well as the following compensatory damages that Plaintiffs allege are "a foreseeable result of the claims handling practices": (a) the difference between the L&O Award and the Policy's coverage limit for that award, (b) the ALE that the Newmans incurred less the amount that American Home already paid, (c) the amount of ALE that American Home should have paid had Plaintiffs located a comparable alternative dwelling, (d) the reasonable rental value of the Newman's home either as an alternative to ALE or in addition "as may be permitted under applicable law," (e) expenses incurred and to be incurred to maintain the Newman's home since notice of the loss, (f) the costs of the three appraisals, (g) the costs of experts and consultants that the Newmans hired, (h) unpaid mold related damage caused by American Home's delay, (i) attorneys' fees and costs, and (j) pre-judgment and post-judgment interest. *Id*. at ¶ 121. American Home filed an Answer and Affirmative Defenses. ECF No. [122]. As explained below, American Home's Second, Fourth, Seventh, Eighth, Tenth, and Eleventh affirmative defenses are at issue in Plaintiffs' Motion. *Id*. at pp. 23-25, ¶¶ 2, 4, 7, 8, 10, 11.

### C.    The Instant Motions

Plaintiffs' Motion seeks partial summary judgment in their favor, arguing that Florida's statutory interest provision, Fla. Stat. § 627.70131, applies to this case and that Plaintiffs are entitled to recover statutory interest on the three appraisal award payments that American Home made, accruing from the date that American Home first received notice of the Claim on October 12, 2017, which Plaintiffs assert totals

$3,154,628.58.  ECF No. [170].   Plaintiffs also seek partial summary judgment in their favor on some of American Home's affirmative defenses as set forth above.  *Id*.

Defendant's Motion seeks summary judgment on the Amended Complaint in its entirety.  ECF No. [172].  American Home argues that it is entitled to judgment as a matter of law for four reasons.  First, American Home argues that Plaintiffs have not satisfied a condition precedent to bring this suit because appraisal does not constitute a determination of liability as required to assert a cause of action for bad faith.  *Id*. at 3-8.  Second, American Home argues that Plaintiffs' claim for additional ALE damages should be dismissed.  American Home asserts that Plaintiffs are bound by the ALE Award, and cannot recover ALE damages that were never incurred because such damages lack a causal connection to the insurer's alleged bad faith, are barred by the Policy, are contrary to Florida law, and are unsupported by the record.  *Id*. at 8-14.  Third, American Home argues that Plaintiffs' claim for additional L&O damages should be dismissed because the Newmans did not incur any L&O expenses and, as such, American Home could not have caused such damages.  *Id*. at 14-16.  American Home also asserts that any L&O expenses were "baked into" the Dwelling Award, which binds Plaintiff.  *Id*. at 16-18.  Finally, American Home argues that Plaintiffs' claim for punitive damages should be dismissed.  American Home asserts that the evidence is insufficient to allow a fact-finder to reasonably conclude by clear and convincing evidence that the acts of which Plaintiffs complain occurred with such frequency as to indicate a general business practice, or that American Home's alleged actions were willful, wanton, or malicious.  *Id*. at 18-26.

## II.   ANALYSIS

Summary judgment is appropriate where there is "no genuine issue as to any material fact [such] that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56). A genuine issue of material fact exists when "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "For factual issues to be considered genuine, they must have a real basis in the record." *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1303 (11th Cir. 2009) (citation omitted). Speculation cannot create a genuine issue of material fact sufficient to defeat a well-supported motion for summary judgment. *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005).

The moving party has the initial burden of showing the absence of a genuine issue as to any material fact. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). In assessing whether the moving party has met this burden, a court must view the movant's evidence and all factual inferences arising from it in the light most favorable to the non-moving party. *Denney v. City of Albany*, 247 F.3d 1172, 1181 (11th Cir. 2001). Once the moving party satisfies its initial burden, the burden shifts to the non-moving party to present evidence showing a genuine issue of material fact that precludes summary judgment. *Bailey v. Allgas, Inc.*, 284 F.3d 1237, 1243 (11th Cir. 2002); *see also* Fed. R. Civ. P. 56(e). "If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment." *Miranda v. B & B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1534 (11th

Cir. 1992). But if the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial, and summary judgment is proper. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### A. Plaintiffs Are Not Entitled To Summary Judgment On Statutory Interest Because There Are Genuine Issues Of Material Fact.

Plaintiffs argue that they are entitled, under Florida Statutes § 627.70131, to recover statutory interest on the Appraisal Awards accruing from October 12, 2017, the date that American Home first received notice of the Claim. ECF No. [170] at 2-6. Specifically, Plaintiffs rely on section 627.70131(5)(a), which provides that:

> Within 90 days after an insurer receives notice of an initial, reopened, or supplemental property insurance claim from a policyholder, the insurer shall pay or deny such claim or a portion of the claim *unless the failure to pay is caused by factors beyond the control of the insurer which reasonably prevent such payment.* Any payment of an initial or supplemental claim or portion of such claim made 90 days after the insurer receives notice of the claim, or made more than 15 days *after there are no longer factors beyond the control of the insurer which reasonably prevented such payment,* whichever is later, bears interest at the rate set forth in s. 55.03. Interest begins to accrue from the date the insurer receives notice of the claim. The provisions of this subsection may not be waived, voided, or nullified by the terms of the insurance policy. *If there is a right to prejudgment interest, the insured shall select whether to receive prejudgment interest or interest under this subsection.* Interest is payable when the claim or portion of the claim is paid. Failure to comply with this subsection constitutes a violation of this code. However, failure to comply with this *subsection does not form the sole basis for a private cause of action.*

FLA. STAT. § 627.70131(5)(a) (2011) (emphasis supplied).[4]  Plaintiffs argue that section 627.70131 applies in bad faith actions, and the undisputed facts here establish that American Home failed to pay the Newmans within the deadlines set forth in the statute.  ECF No. [170] at 3-4.  Plaintiffs further argue that because there were no factors beyond the control of American Home which prevented prompt payment, they are entitled to summary judgment as to these damages.  *Id.* at 5.

American Home contends that Plaintiffs are not entitled to statutory interest for several reasons.  The Court will address each in turn.

First, American Home characterizes Plaintiffs' request for statutory interest as an "unpled claim."  ECF No. [211] at 3-4.  Specifically, American Home argues that the Amended Complaint does not "allege any of the elements of a claim under section 627.70131," which bars recovery because Plaintiffs cannot obtain a judgment "on this non-existent claim."  *Id.*  The Court disagrees.  Plaintiffs rely on section 627.70131 as a form of damages, not an independent cause of action.  ECF No. [169-1] at 14.  Indeed, courts consistently refuse to permit a party to plead a violation of section 627.70131 as a stand-alone claim.  *See e.g., QBE Ins. Corp. v. Dome Condo. Assoc., Inc.*, 577 F. Supp. 2d 1256, 1262 (S.D. Fla. 2008) (granting motion to dismiss counterclaim because "[b]ased on the plain language of the statute, [defendant] was precluded from bringing a separate cause of action based solely on section 627.70131 . . .");  *Riley v. Heritage Prop. & Cas. Ins. Co.*, No. 22-22893-Civ, 2023 WL 2988847, at

---

[4] This subsection was later moved to (7)(a) and subsequently amended in 2023.  The Parties agree that the language of subsection (5)(a) as quoted above is the version that applies here.

*3 (S.D. Fla. April 18, 2023) (granting motion to dismiss and concluding that "Plaintiffs' claim is barred because their cause of action is based *solely* on [insurer's] failure to comply with section (5)(a)'s interest-payment requirement."); *Buckley Towers Condo., Inc. v. QBE Ins. Corp.*, No. 07-22988-Civ, 2008 WL 2490450, at * 11 (S.D. Fla. June 18, 2008) ("When the legislature said that a failure to comply with the statute could not be a sole basis for a private cause of action, it was not intending for plaintiffs . . . to file such claims only as tag-along claims."); *The Jacqueline Norris Huggett v. Ironshore Specialty Ins. Co.*, No. 18-21467-Civ, 2018 WL 8359643, at *5 (S.D. Fla. July 18, 2018) ("[F]ailing to satisfy th[e] requirement [under (5)(a)] does not give rise to an independent claim under Florida law."). Nonetheless, courts recognize that "even without a private cause of action, section (5)(a) can serve 'to bind the insurer to its provisions in response to a . . . bad faith claim'." *Riley*, 2023 WL 298847 at *3 (quoting *Buckley Towers Condo.*, 2008 WL 2490450 at * 11)); *see also Berkower v. USAA Cas. Ins. Co.*, No. 15-23947-Civ, 2016 WL 4574919, at *4 (S.D. Fla. Sept. 1, 2016) (noting that section 627.70131 "applies when a claimant raises a bad faith claim against an insurer."). Thus, the fact that Plaintiffs did not plead a section 627.70131 claim in the Amended Complaint does not prevent them from recovering statutory interest in this bad faith action.

Second, American Home argues that the allegations of the Amended Complaint are not sufficient to provide notice that Plaintiffs intend to seek recovery of statutory interest. ECF No. [211] at 3-5. American Home focuses on the failure of the Amended Complaint to specifically reference section 627.70131, and its explicit

request for prejudgment interest which, pursuant to the terms of section 627.70131, cannot be recovered along with statutory interest. *Id*. It is true that the Amended Complaint makes no mention of section 627.70131. However, while "it is preferable to plead the specific statute" when a party intends to rely on that statute, "it is not necessary to do so if the facts pleaded are sufficient to bring the case within it since the court takes judicial notice of all public statutes." *Barnett Bank of Jacksonville, N.A. v. Jacksonville Nat. Bank*, 457 So. 2d 535, 539-40 (Fla. 1st DCA 1984) (citations omitted); *see also City of Lakeland v. Select Tenures, Inc.*, 129 Fla. 338, 344 (Fla. 1937) ("It is well settled in this jurisdiction that where a public statute is applicable to a case it is sufficient that the pleading of the party who seeks to rely upon the statute should allege sufficient facts to bring the case within it and it is not necessary to designate or refer to the statute. It is not necessary to plead the statute if the facts pleaded are sufficient to bring the case within it.").

Here, the Amended Complaint alleges sufficient facts to trigger section 627.70131. The Amended Complaint sets forth the dates that American Home received notice of the Claim and made payment, which are outside the window permitted under section 627.70131. The Amended Complaint further alleges that the failure to tender timely payment was part and parcel of American Home's bad faith handling of the Claim. The factual allegations that Plaintiffs plead to support their assertion of bad faith are based upon alleged actions and decisions of American Home, rather than factors beyond American Home's control.

To be sure, the better practice might have been to explicitly mention section 627.70131(5)(a).  However, the Court is satisfied that the Amended Complaint alleges sufficient facts to bring this case within section 627.70131, such that Plaintiffs can elect to recover statutory interest even though the Amended Complaint does not specifically reference the statute.[5]  *C.f.*, *Apostolic Pentecostal Church of Panama City, Inc.*, No. 5:21-cv-32, 2021 WL 4144775, at *7 (N.D. Fla. April 9, 2021) ("Defendant cites no pleading rule requiring Plaintiff to allege with particularity the extra-contractual damages allowed under Florida's bad-faith statute.").

At oral argument, American Home posited that Plaintiffs cannot recover statutory interest because they affirmatively elected prejudgment interest by including a request for prejudgment interest in the Amended Complaint.  Section 627.70131(5)(a) requires an insured to "select whether to receive prejudgment interest or interest under this subsection."  FLA. STAT. § 627.70131(5)(a).  A paragraph of the Amended Complaint titled "The Compensatory Damages" states in pertinent part that "[a]s a foreseeable result of American Home's acts and failures to act which violate the civil remedies statutes, the Newmans have been damaged, including the following . . . (j) Pre-judgment and post-judgment interest on each of the foregoing as allowed by law."  ECF No. [42] at ¶ 121 (j).

It is well-established that a plaintiff may plead in the alternative.  *See Allstate Ins. Co. v. James*, 779 F. 2d 1536, 1540 (11th Cir. 1986) ("A party may plead

---

[5] The Court notes that during discovery, Plaintiffs both identified section 627.70131 and referenced the language of the statute when discussing their damages.  ECF No. [169-1] at 14.

alternative and inconsistent facts and remedies against several parties without being barred by the election of remedies doctrine."); *Alvarez v. Puleo*, 561 So. 2d 437, 437 (Fla. 2d DCA 1990) ("A party may plead and litigate inconsistent remedies."). Thus, the fact that the Amended Complaint requests prejudgment interest does not foreclose Plaintiffs' ability to also request statutory interest given that, as mentioned, the Amended Complaint pleads sufficient facts to give rise to this relief. ECF No. [42] at ¶ 121. To be sure, it appears that Plaintiffs cannot *recover* both prejudgment and statutory interest if they prevail at trial. But as a matter of pleading, they did not have to elect between those remedies.

Fourth, American Home argues that section 627.70131 is unconstitutional as applied because it impairs American Home's right to contract and violates due process by imposing a disproportionate and unreasonable penalty. ECF No. [211] at 7-8. Specifically, American Home contends that the statute unfairly restricts its right to contract because it paid the Appraisal Awards within the period allowed under the Policy, although outside the period allowed under section 627.70131(5)(a).

As an initial matter, American Home does not identify what constitutional provision(s) its argument is based upon. In any event, the Court does not agree that section 627.70131 unreasonably interferes with American Home's right to contract. "[I]t is generally accepted that the statute in effect at the time an insurance contract is executed governs substantive issues arising in connection with that contract." *Hassen v. State Farm Mut. Auto. Ins. Co.*, 674 So. 2d 106, 108 (Fla. 1996). The relevant language of section 627.70131(5)(a) was enacted in 2007 and, thus, was in

effect at the time of the Policy.  Further, Florida Statutes § 627.418(1) provides that "[a]ny insurance policy . . . which contains any condition or provision not in compliance with the requirements of th[e] [insurance] code . . . shall be construed and applied in accordance with such conditions and provisions as would have applied had such policy . . . been in full compliance with this code." Fla. Stat. § 627.418(1).  Given this requirement, any provisions of the Policy that purportedly conflict with Florida's insurance code must be construed as if they do not.  As such, section 627.70131(5)(a) does not impair American Home's right to contract because under Florida law, the terms of the Policy are effectively synonymous with the language of the statute.

Similarly, the Court cannot conclude that section 627.70131(5)(a) violates American Home's due process rights.  Relying on the Supreme Court's decision in *St. Louis, I.M. & S. Ry. Co. v. Williams*, 251 U.S. 63 (1919), American Home argues that "[t]he magnitude of th[e] [statutory interest] award—and the length of time for which Plaintiffs claim they are entitled to interest—is objectively unreasonable."  ECF No. [211] at 8.  The *Williams* court explained that the Due Process Clause "places a limitation upon the power of states to prescribe penalties for violations of their laws . . . but always with the express or tacit qualification that the states still possess a wide latitude of discretion in the matter." *Williams*, 251 U.S. at 66.  The *Williams* court further explained that a penalty violates the Due Process Clause when it "is so severe and oppressive as to be wholly disproportionate to the offense and obviously unreasonable." *Id*. at 66-67.  American Home has not demonstrated that an award of statutory interest meets this standard.

With respect to the magnitude of statutory interest requested, the Appraisal Awards total more $15 million, while Plaintiffs request statutory interest of approximately $3.1 million.   Putting aside whether Plaintiffs have correctly calculated statutory interest, American Home does not explain how the amount of statutory interest is, on its face, wholly disproportionate.   *C.f.*, *Williams v. First Advantage LNS Screening Solutions, Inc.*, 947 F. 3d 735, 754 (11th Cir. 2020) (concluding that punitive damage award thirteen times higher than compensatory damage award violated due process, and explaining that "shorthand guidance extrapolated from the Supreme Court's decisions . . . indicate[s] that a ratio greater than 4:1 between punitive and compensatory damages will likely be close to the line of constitutional impropriety.").   Even if the amount of statutory interest were not proportional, *Williams* recognizes that where, as here, the statute serves a public purpose, there is no requirement that the penalty "be confined or proportioned to [the party's] loss or damages" because "the Legislature may adjust its amount to the public wrong rather than the private injury . . . ." *Williams*, 251 U.S. at 66.

American Home also argues that application of statutory interest constitutes an unreasonable penalty because it paid the Appraisal Awards "40, 30, and 41 days, respectively, after each appraisal award issued," which "were supposedly 25, 15, and 26 *days* too late," is also unpersuasive.  ECF No. [211] at 6, 7.  These time periods do not demonstrate that an award of statutory interest is "objectively unreasonable" given that an insurer's earlier payment of an appraisal award cannot cure a bad faith claim.  *See Zaleski v. State Farm Fla. Ins. Co.*, 315 So. 3d 7, 13 (Fla. 4th DCA 2021)

17

(where insurer paid appraisal award six days after it was entered, holding that insurer's "invocation of the appraisal process and payment of the appraisal award after the [CRN's sixty-day] cure period expired did not cure, as a matter of law, the alleged bad faith claim."). It is also notable that American Home cites no legal authority, and the Court is aware of none, that calls into question the constitutionality of section 627.70131(5)(a), which has been in effect for nearly two decades. For the reasons noted above, the Court concludes that section 627.70131(5)(a) is not unconstitutional as applied in this bad faith case.

Finally, American Home argues that there are genuine issues of fact which preclude summary judgment on this issue. ECF No. [211] at 5-7. It contends that whether there were factors beyond its control which reasonably prevented payment and, if so, whether and when there were no longer such factors, are factual issues that are in dispute. *Id*. By way of example, American Home alleges that payment of the Dwelling Award and ALE Award were delayed because of the Covid-19 pandemic. *Id*. at 6-7. The Court agrees that material facts are in dispute. Specifically, whether the pandemic was a factor outside of American Home's control that reasonably prevented prompt payment is an issue of fact for the jury to resolve. Given that there are material facts in dispute, Plaintiffs' entitlement to statutory interest is not appropriate for resolution on summary judgment. *See St. Louis Condo. Assoc., Inc. v. Rockhill Ins. Co.*, No. 18-21365, 2019 WL 2010729, at *5 (S.D. Fla. March 11, 2019) (*report and recommendation adopted by*, 2019 WL 2642747 at * 1 (S.D. Fla. April 17, 2019)) (denying plaintiff's motion for partial summary judgment where defendant

asserted that failure to deny or pay claim within period set forth in section 627.70131 was due to insured's "insufficient production of documents and a lack of inspections of the property," which insured disputed).  As such, Plaintiffs' motion for summary judgment as to statutory interest is denied.

### B. Plaintiffs Are Entitled To Summary Judgment On Defendant's Second, Fourth and Eighth Affirmative Defenses.

Plaintiffs argue that American Home's affirmative defenses of failure to mitigate, estoppel, and unclean hands are not legally cognizable defenses to a statutory bad faith action under Florida's civil remedy statute.  ECF No. [170] at 6-9, 12.  These defenses, as plead, are as follows:

> **Failure to Mitigate**.  Plaintiffs' claims against American Home are barred in whole or in part and any damages claimed by Plaintiffs should be limited because Plaintiffs failed to mitigate their claimed damages.
>
> **Estoppel**.  Plaintiffs' claims against American Home are barred in whole or in part by the doctrine of estoppel. The Newmans failed and delayed providing information to American Home, resulting in prejudice to American Home. Plaintiffs' conduct in this regard forms part of the "totality of the circumstances" relevant to Plaintiffs' claims against American Home.
>
> **Unclean Hands**.  Plaintiffs' claims are barred in whole or in part by the doctrine of unclean hands.

ECF No. [122] at 23, 24.

"In Florida, the question of whether an insurer has acted in bad faith in handling claims against the insured is determined under the 'totality of the

circumstances' standard."[6] *Pelaez v. Gov't Emps. Ins. Co.*, 13 F. 4th 1243, 1250 (11th Cir. 2021) (quoting *Berges v. Infinity Ins. Co.*, 896 So. 2d 665, 680 (Fla. 2004)).  Florida Supreme Court precedent "could not be clearer in stating that 'the focus in a bad faith case is not on the actions of the claimant but rather on those of the insurer in fulfilling its obligations to the insured'." *Harvey v. Geico General Ins. Co.*, 259 So. 3d 1, 11 (Fla. 2018) (citation omitted).  Although "there must be a causal connection between the damages claimed and the insurer's bad faith, . . .  th[e] [Florida Supreme Court] has never held or even suggested that an insured's actions can let the insurer off the hook when the evidence clearly establishes that the insurer acted in bad faith in handling the insured's claim." *Id.* at 11.

As such, the Florida Supreme Court has rejected the proposition that "so long as the insurer can put forth any evidence that the insured acted imperfectly during the claims process, the insurer could be absolved of bad faith." *Id.* at 12.  Yet that is exactly the stated purpose of the affirmative defenses at issue.  Those defenses posit that "Plaintiffs' claims against American Home are barred in whole or in part" by Plaintiffs' actions or inactions, such as allegedly "exaggerat[ing] the emergency nature of their claim [and] inflat[ing] their request for coverage," failing to timely provide necessary documentation to American Home, or failing to undertake recommended repairs. ECF No. [211] at 8, 11, 14.  Further, American Home fails to

---

[6] The "totality of the circumstances" standard has been applied in first-party bad faith actions.  *See e.g., Cadle v. Geico General Ins. Co.*, No. 6:13-cv-1591, 2014 WL 4983746, at *2 (M.D. Fla. Oct. 6, 2014); *Talat Enter., Inc. v. Aetna Casualty & Surety Co.*, 952 F. Supp. 773, 776 (M.D. Fla. June 14, 1996).

identify any cases where these defenses have been allowed in a statutory bad faith action.  To the contrary, at least one Florida district court explicitly rejected failure to mitigate as a valid defense to a bad faith claim, *MI Windows & Doors, LLC v. Liberty Mutual Fire Ins. Co.*, No. 8:14-cv-3139, 2018 WL 2288288, at * 6 (M.D. Fla. May 18, 2018), and it is well established that unclean hands "is an equitable doctrine which applies only to claims for equitable relief . . . ."  *Scott v. Paychex Ins. Agency, Inc.*, No. 22-62052, 2023 WL 5036099, at * 11 (S.D. Fla. Aug. 8, 2023) (citation omitted).

For the foregoing reasons, the Court concludes that American Home's Second Affirmative Defense (Failure to Mitigate), Fourth Affirmative Defense (Estoppel), Eighth Affirmative Defense (Unclean Hands), are not valid as a matter of law, and therefore, Plaintiffs are entitled to summary judgment on these defenses.[7]

---

[7] It should be noted that while American Home cannot assert the defenses of failure to mitigate, unclean hands, and estoppel, the factual bases of these defenses may still be relevant in the "totality of the circumstances" analysis.  This is because "[i]n a bad faith action there's a difference between <u>focusing</u> on a claimant's actions, which would be improper, and <u>factoring</u> a claimant's actions into the totality of the circumstances analysis, which is not improper."[7]  *Pelaez*, 13 F. 4th at 1254; *see also*, *Dadeland Depot, Inc. v. St. Paul Fire & Marine Ins. Co.*, 945 So. 2d 1216, 1236 (Fla. 2006) (holding that although insurer was precluded from reasserting its affirmative defenses that were previously rejected in arbitration proceedings, insurer "should not be denied the opportunity to present the factual bases for those affirmative defenses as support for its present defense" that it was not acting in bad faith, because "it is necessary for a court faced with a section 624.155 action to consider the entirety of the factual scenario underlying the plaintiff's claim when determining whether the defendant-insurer acted in bad faith and any recoverable damages related to that bad faith.").  Thus, the Court's ruling does not prevent American Home from attempting to introduce evidence of the facts underlying these defenses at trial.

**C. Plaintiffs Are Entitled To Summary Judgment On Defendant's Seventh, Tenth and Eleventh Affirmative Defenses.**

Plaintiffs argue that they are entitled to summary judgment on American Home's Seventh, Tenth, and Eleventh affirmative defenses because these defenses improperly seek to relitigate the L&O Award.  ECF No. [170] at 9-12, 13-17.  The Seventh Affirmative Defense alleges that "Plaintiffs were barred, in whole or in part, by the Policy and by the doctrine of collateral estoppel, from seeking Law and Ordinance damages and expenses in the subsequent Law and Ordinance appraisal." ECF No. [122] at 24.  The Tenth and Eleventh Affirmative Defenses both seek to "recoup and offset" American Home's payment of the L&O Award "against any sums that the Newmans may recover in this action."  *Id*. at 25.  The Tenth Affirmative Defense alleges that the Newmans were not entitled to a subsequent appraisal on L&O damages because those damages "were or could have been fully and finally determined by the first appraisal" and, thus, American Home's payment of the L&O Award constituted "additional monies . . . beyond what American Home was contractually obligated to pay, thereby creating an unjustified and impermissible overpayment and windfall in favor of the Newmans."  *Id*.  The Eleventh Affirmative Defense alleges that "[n]o Law and Ordinance damages and expenses were due and owing from American Home to Plaintiffs as of the date of the [L&O Award] because Law and Ordinance upgrades had not been (and, to date, still have not been) required by any building official or otherwise."  *Id*.

Eleventh Circuit precedent dictates that, under Florida law, "once an [appraisal] award has been made, the only defenses that remain for the insurer to

assert are lack of coverage for the entire claim, or violation of one of the standard policy conditions (fraud, lack of notice, failure to cooperate, etc.)." *Three Palms Pointe, Inc. v. State Farm Fire & Cas. Co.*, 362 F. 3d 1317, 1319 (11th Cir. 2004) (interpreting *State Farm Fire & Cas. Co. v. Licea*, 685 So. 2d 1285 (Fla. 1996)); *Positano Place at Naples I Condo. Assoc., Inc. v. Empire Indem. Ins. Co.*, 84 F. 4th 1241, 1253 (11th Cir. 2023) (reiterating that "while the appraisal process is binding on the parties as to the *amount* of the loss, [an insurer] can still pursue its defenses of coverage denials as a whole . . .").[8]   American Home contends that these defenses are appropriate because they "address[ ] a coverage issue based on the terms of the Policy and collateral estoppel, which is squarely within the province of the Court."  ECF No. [211] at 14. Even if the Court agreed that these defenses assert a lack of coverage, as explained in *Three Palms Pointe*, an insurer can only challenge coverage for the entire claim, not a portion of the claim, which is what American Home seeks to do here.  *See Three Palms Pointe*, 362 F. 3d at 1319 (insurer cannot challenge coverage for specific elements of an appraisal award); *Baptist College of Fla., Inc. v. Church Mutual Ins. Co., SI*, 656 F. Supp. 3d 1290, 1294 (N.D. Fla. 2023) (declining to allow insurer to move to modify appraisal award to exclude specific elements that insurer believed were not covered under the policy).  Further, American Home does not cite any legal

---

[8] The Court is aware that some Florida intermediate appellate courts have interpreted *Licea* differently than the Eleventh Circuit.  However, this Court is bound to follow the Eleventh Circuit's interpretation of the law absent an intervening decision from the Florida Supreme Court or the Eleventh Circuit.  *See Mont Claire at Pelican Marsh Condo. Assoc., Inc., v. Empire Indem. Ins. Co.*, No. 2:19-cv-601, 2022 WL 3701584, at *3 (M.D. Fla. Aug. 11, 2022); *Baptist College of Fla., Inc. v. Church Mut. Ins. Co.*, 656 F. Supp. 3d 1290, 1294-95 (N.D. Fla. Feb. 14, 2023).

authority where the defenses of recoupment or set off were recognized in a bad faith case.

The Seventh, Tenth and Eleventh Affirmative Defenses seek to claw back the L&O Award payment that American Home previously made or, at a minimum, use those monies to reduce the amount of bad faith damages it may have to pay Plaintiffs. American Home has not offered any legal authority to establish that such defenses are legally permissible in a bad faith action. Accordingly, for the foregoing reasons, the Court concludes that summary judgment in favor of Plaintiffs is warranted on American Homes' Seventh Affirmative Defense ("Plaintiffs' Law and Ordinance Damages and Expenses Are Barred By the Policy and Collateral Estoppel"), Tenth Affirmative Defense ("Recoupment/Overpayment"), and Eleventh Affirmative Defense ("Law and Ordinance Damages and Expenses Not Incurred or Required").

### D. Because Plaintiffs Obtained A Prior Determination Of Liability, American Home Is Not Entitled To Summary Judgment.

The prerequisites to file a statutory bad faith action are: "(1) [a] determination of the insurer's liability for coverage; (2) [a] determination of the extent of the insured's damages; and (3) [that] the required notice must be filed under section 624.155(3)(a)." *Landers v. State Farm Fla. Ins. Co.,* 234 So. 3d 856, 859 (Fla. 5th DCA 2018) (citation omitted); *see also, Vest v. Travelers Ins. Co.*, 753 So. 2d 1270, 1275 (Fla. 2000) ("[W]e expressly state that *Blanchard* [*v. State Farm Mutual Automobile Insurance* Company] is properly read to mean that the 'determination of the existence of liability on the part of the uninsured tortfeasor and the extent of the [insured's] damages' are elements of a cause of action for bad faith."). American Home argues

that Plaintiffs have failed to establish the first prerequisite, a determination that American Home is liable for the Claim, because the Newmans only obtained appraisal awards, not judgments.   ECF No. [172] at 3-6.   American Home contends that although the Florida Supreme Court has found the "determination of liability" prerequisite satisfied when the insured obtains an arbitration award in its favor, it has not expanded this prerequisite to include an appraisal award.   *Id.*   Plaintiffs assert that Florida courts consistently hold that an appraisal award satisfies this prerequisite, and none require that an insured's claim be determined by trial or arbitration.   ECF No. [209] at 3.

In order to evaluate American Home's argument, we begin with the Florida Supreme Court's holding in *Blanchard v. State Farm Mutual Auto Insurance Company*, where the Supreme Court set out the first two prerequisites to a bad faith suit finding that "[a]bsent a determination of the existence of liability on the part of the uninsured tortfeasor and the extent of the plaintiff's damages, a cause of action cannot exist for a bad faith failure to settle." *Blanchard*, 575 So. 2d 1289, 1291 (Fla. 1991).   Three years later, in *Imhof v. Nationwide Mutual Insurance Company*, the Florida Supreme Court recognized than an arbitration award satisfies the "determination of liability" prerequisite to a bad faith action. 643 So. 2d 617, 619 (Fla. 1994) (receded from in part on other grounds by *State Farm Mut. Auto. Ins. Co. v. Laforet*, 658 So. 2d 55 (Fla. 1995)); *Dadeland Depot*, 945 So. 2d at 1234 ("Subsequent to *Imhof,* it is clear that an arbitration award establishing the validity of an insured's claim satisfies the condition precedent set forth in *Blanchard*.").   Thereafter, in *Vest*

*v. Travelers Insurance Company*, the Florida Supreme Court recognized that a settlement satisfied the "determination of liability" requirement to bring a bad faith claim. *Vest*, 753 So. 2d 1270, 1275-76 (Fla. 2000) (finding that "upon th[e] settlement," insured's bad faith claim "ripened because at that time the final element of the cause of action occurred.").

Although the Florida Supreme Court has not addressed the specific issue at hand—whether an appraisal award is a determination of liability—every Florida District Court of Appeal to have considered the issue has found that an appraisal award constitutes a determination of liability necessary to file a statutory bad faith action. *See Fortune v. First Protective Ins. Co.*, 302 So. 3d 485, 489 (Fla. 2d DCA 2020) ("An appraisal award satisfies the first two requirements [to filing a statutory bad faith action].") (citing *Hunt v. State Farm Fla. Ins. Co.*, 112 So. 3d 547, 549 (Fla. 2d DCA 2013); *Landers v. State Farm Fla. Ins. Co.*, 234 So. 3d 856, 859 (Fla. 5th DCA 2018) (settlement of claim "via the appraisal process is sufficient to satisfy the first two requirements [to filing a statutory bad-faith claim].") (citing *Cammarata v. State Farm Fla. Ins. Co.*, 152 So. 3d 606, 612 (Fla. 4th DCA 2014)); *Lugassy v. United Prop. & Cas. Ins. Co.*, 351 So. 3d 23, 25 (Fla. 4th DCA 2022) ("[T]he Homeowners' appraisal award satisfied the first two requirements to filing the bad faith claim."); *Trafalgar at Greenacres, Ltd. v. Zurich Am. Ins. Co.*, 100 So. 3d 1155, 1158 (Fla. 4th DCA 2012) ("[W]e hold that the appraisal award constitutes a 'favorable resolution' of an action for insurance benefits, so that [insured] has satisfied the necessary prerequisite to filing a bad faith claim.").

26

This Court is bound by the precedents set forth by the state court decisions above.  Indeed, it is well-settled and undisputed that when applying state law, "a federal court must 'adhere to decisions of the state's intermediate appellate courts absent some persuasive indication that the state's highest court would decide the issue otherwise'." *Ins. Co. of North Am. v. Lexow*, 937 F.2d 569, 571 (11th Cir. 1991) (citation omitted); *see also Peoples Gas Sys. v. Posen Constr., Inc.*, 931 F.3d 1337, 1339 (11th Cir. 2019) ("When we lack guidance from the Florida Supreme Court, we must adhere to the decisions of Florida's state's intermediate appellate courts absent some persuasive indication that the state's highest court would decide the issue otherwise.") (quotation marks and citations omitted).  "A federal court is bound by this rule whether or not the court agrees with the reasoning on which the state court's decision is based or the outcome which the decision dictates." *Silverberg v. Paine Webber, Jackson & Curtis, Inc.*, 710 F.2d 678, 690 (11th Cir. 1983); *CodeVentures, LLC v. Vital Motion Inc.*, No. 22-11288, 2023 WL 2644173, at *3 (11th Cir. March 27, 2023) (same).

American Home argues that there is persuasive indication the Florida Supreme Court would decide the issue differently because the Florida District Court of Appeal decisions "mistakenly equate arbitration with appraisal" and are "contrary to Florida Supreme Court precedent."  ECF No. [172] at 4.  Specifically, American Home asserts that the Fourth District Court of Appeal's decision in *Trafalgar at Greenacres, Ltd. v. Zurich American Insurance Company*[9] was incorrect.  *Id.*

---

[9] 100 So. 3d 1155 (Fla. 4th DCA 2012).

*Trafalgar* was the first time that a court held an appraisal award can satisfy the "determination of liability" prerequisite. In particular, the court found that an appraisal award entered in favor of the insured "was tantamount to a 'favorable resolution' necessary to proceed with a bad faith action." *Trafalgar*, 100 So. 3d at 1157-58. American Home contends that *Trafalgar* was wrongly decided because it "reasoned there was no difference between an appraisal and arbitration awards" which is incorrect because "under Florida law, appraisals and arbitration are entirely distinct processes, procedurally and substantively, that serve different purposes." ECF No. [172] at 5. According to American Home, "[o]nce *Trafalgar* was decided, Florida courts did not re-evaluate the flawed reasoning of that decision." *Id.*

American Home may disagree with the *Trafalgar* court, but the language and reasoning of the decision itself does not support American Home's critique. Indeed, the *Trafalgar* court found that there was "no meaningful distinction between an arbitration award and the appraisal award in this case *for the purpose of deciding whether the underlying action was resolved favorably to the insured.*" 100 So. 3d at 1158 (emphasis supplied). It based this conclusion on the Florida Supreme Court decisions in *Imhof* and *Vest*. In particular, the *Trafalgar* court explained that:

> [w]hile it is necessary that there be a determination of the insured's damages, there is no requirement that the insured's underlying claim be by a trial or arbitration. *See Imhof v. Nationwide Mut. Ins. Co.,* 643 So.2d 617 (Fla.1994). Rather, all that is required is "a resolution of some kind in favor of the insured." *Vest,* 753 So.2d at 1274 (citation omitted).

*Id.* at 1157. Indeed, there is no language in *Blanchard, Imhof,* or *Vest* that provides that a judgment or arbitration are the exclusive methods by which an insured can

obtain a determination of liability.  To the contrary, the *Vest* court discussed with approval the Fourth District Court of Appeal's decision in *Brookins v. Goodson*, 640 So. 2d 110 (Fla. 4th DCA 1994) (disapproved on other grounds by *State Farm Mut. Auto. Ins. Co. v. Laforet*, 658 So. 2d 55 (Fla. 1995)):

> Neither in *Blanchard* nor more recently in *Imhof* does the supreme court suggest that the required resolution of the insured's underlying claim must be by trial or arbitration.... However, as noted in *Blanchard,* a resolution of some kind in favor of the insured is a prerequisite.

*Vest*, 753 So. 2d at 1274.  The fact that these courts found arbitration and appraisal sufficient for purposes of this prerequisite does not mean they found them to be the same process or equated them for purposes otherwise disguisable.

In short, the language of these decisions themselves do not support American Home's conclusion that the *Trafalgar* court improperly conflated arbitration and appraisal; rather, they concluded that they were both a determination of liability because both are a "favorable resolution" of the insured's claim.[10]  It is a conclusion that American Home may disagree with, but there is nothing in those decisions that provide a persuasive indication that the Florida Supreme Court would reach a different result.  This is especially true here where American Home disputes what

---

[10] For this reason, American Home's reliance on *Citizens Property Insurance Corporation v. Mango Hill #6 Condominium Association Inc.* is misplaced.  The *Mango Hill* court stated that "[t]he differences between arbitration and appraisal are well defined in this state."  *Mango Hill*, 117 So. 3d 1226, 1229 (Fla. 3d DCA 2013). This proposition does not undermine the *Trafalgar* court's conclusion because *Trafalgar* is not based upon purported similarities between arbitration and appraisal. Rather, as mentioned, it is based on the proposition that both an arbitration award and appraisal award constitute a favorable resolution of the insured's claim, which satisfies the "determination of liability" prerequisite to a bad faith claim.

has been Florida law for more than a decade without any successful challenge. Indeed, this Court must apply the decisions of Florida's intermediate appellate courts even if this Court were to disagree with the reasoning or outcome of those rulings. *See Silverberg*, 710 F.2d at 690.

Next, American Home argues that Florida Statutes § 624.1551, which <u>now</u> requires an adjudication by a court of law to satisfy the first bad faith prerequisite, is a persuasive indication that the Florida Supreme Court would decline to find that an appraisal award satisfies the "determination of liability" prerequisite because it "codified Florida Supreme Court precedent that requires a finding of a breach of contract before an insured may seek extra-contractual damages . . . ." ECF No. [172] at 5. As a preliminary matter, American Home does not cite any "Florida Supreme Court precedent" to support its characterization. *Id*. The only citation it provides is to section 624.1551 itself. *Id*.

Section 624.1551 states that "[n]otwithstanding any provision of s. 624.155 to the contrary, in any claim for extracontractual damages under s. 624.155(1)(b), no action shall lie until a named or omnibus insured or a named beneficiary has established through an *adverse adjudication by a court of law* that the property insurer breached the insurance contract *and a final judgment or decree* has been rendered against the insurer." FLA. STAT. § 624.1551 (emphasis supplied). Section § 624.1551 was enacted in May 2022, after the Appraisal Awards were entered in this case. American Home's reading of the statute for the proposition that it codified existing law is not correct. There is no language in the statute—and American Home

points to none—which indicates that the statute codified or clarified existing law.[11]
FLA. STAT. § 624.1551 (2022).  Instead, American Home summarily asserts, without
any support, that "[t]he enactment merely reaffirmed the state of the law as it has
existed since *Blanchard*."  ECF No. [172] at 6.  The Court declines to conclude that
the enactment of section 624.155 by itself demonstrates that an appraisal award
could not constitute a "determination of liability" under existing Florida Supreme
Court precedent.

American Home alternatively argues that the Court should apply the May
2022 version of section 624.1551, which appears to exclude appraisal from the
"determination of liability" prerequisite, retroactively to bar Count I of the Amended
Complaint.  American Home contends that there is clear evidence of legislative intent
to apply the statute retroactively, which is permissible because it does not impact any
substantive rights.  ECF No. [172] at 6-7.  Plaintiffs argue that American Home fails
to cite any express evidence of legislative intent, and the statute constitutes a
substantive change in the law.  ECF No. [209] at 6.  In particular, Plaintiffs argue
that the statute is substantive because it (i) added a new element to a bad faith claim,
namely that the insured establish that the insurer breached the policy, and (ii) the

---

[11] It appears from the legislative history of section 624.1551 that the statute changes
existing law, rather than merely clarifying it.  In particular, the House of
Representatives Staff Analysis states that "the bill has the effect of <u>receding from</u> the
[*Cammarata v. State Farm Florida Insurance Company*] decision to the extent that
it requires that a breach of contract be established in order to prevail in such a
lawsuit."  House of Representatives Staff Final Bill Analysis, CS/HB 1D Property
Insurance, available at https://www.flsenate.gov/Session/Bill/2022D/1D/Analyses/h0
001Dz.APC.PDF (emphasis supplied).

31

legislative history states that it "may eliminate" an insured's ability to bring a bad faith suit. *Id.*

It is well-settled that the "[t]he question of whether a statutory change in the law should be applied retroactively is governed by state law." *Rivera v. Wal-Mart Stores E., LP*, No. 3:10-cv-956-J-20TEM, 2011 WL 7575393, at *2 (M.D. Fla. Jan. 12, 2011) (citing *Turner v. United States*, 514 F.3d 1194, 1199 n.3 (11th Cir. 2008)). The Florida Supreme Court requires courts to utilize a "two-pronged test" to determine whether a statute can apply retroactively. *Menendez v. Progressive Exp. Ins. Co.*, 35 So.3d 873, 877 (Fla. 2010). "First, the Court must ascertain whether the Legislature intended for the statute to apply retroactively. Second, if such an intent is clearly expressed, the Court must determine whether retroactive application would violate any constitutional principles." *Id.* (citation omitted). As for the second prong, "even where the Legislature has expressly stated that a statute will have retroactive application, th[e] Court will reject such an application if the statute impairs a vested right, creates a new obligation, or imposes a new penalty." *Id.* at 877 (citation omitted). "The general rule is that a substantive statute will not operate retrospectively absent clear legislative intent to the contrary, but that a procedural or remedial statute is to operate retrospectively." *Laforet*, 658 So. 2d at 61 (citations omitted).

American Home argues that the Legislature evidenced a clear intent that section 624.1551 operate retroactively because the enacting legislation states that "[e]xcept as otherwise expressly provided in this act, this act shall take effect upon

becoming law." ECF No. [172] at 7. That language does not express a clear intent for the statute to apply retroactively. The statute does not state that it applies to causes of action accruing before its effective date, or to civil actions commenced before it took effect. *See American Optical Corp. v. Spiewak*, 73 So. 3d 120, 131 (Fla. 2011) (concluding that "express language in the chapter law creating the Act," which stated that it applies to "any civil action asserting an asbestos claim in which trial has not commended as of the effective date of this act," demonstrated that "the Legislature intended that the Act apply retroactively.").[12] In short, the Florida Supreme Court requires *clear* evidence of legislative intent that a statute apply retroactively, which is simply not present here. *See St. Lucia Condo. Assoc. Inc., v. Lexington Ins. Co.*, No. 2:20-cv-125, 2023 WL 6882807, at *2 (M.D. Fla. Jan. 9, 2023) (declining to apply section 624.1551 retroactively because it "contained no express language directing courts to apply the [statute] retroactively.").

American Home's argument also fails as to the second prong because section 624.1551 is a substantive statute, not a procedural or remedial statute. American Home argues that section 624.1551 is a procedural law because "Plaintiffs' rights and obligations are unchanged by § 624.1551, which simply provides the 'course, form, manner, means, method, mode, order, process or steps by which a party enforces substantive rights or obtains redress for their invasion'." ECF No. [172] at 7 (citation omitted). It also argues that "[t]he condition precedent imposed by § 624.1551

---

[12] American Home then relies upon the House of Representatives Staff Final Bill Analysis as evidence of legislative intent but fails to identify any statements that explicitly address retroactive application of the statute.

constitutes 'remedies or modes of procedure, which … operate in furtherance of the remedy or confirmation of rights already existing'." *Id*. (citation omitted).  American Home offers no meaningful analysis in support of its conclusions, instead providing only isolated quotations from case law.

Further, the legislative history that American Home relies upon actually contradicts its argument that section 624.1551 is a procedural or remedial statute. The House of Representatives Staff Analysis states that "the bill may *eliminate* the ability of a claimant to bring a statutory bad faith lawsuit where the parties have settled through . . . appraisal processes because a breach of contract would not likely have been determined during those processes."  House of Representatives Staff Final Bill      Analysis,      CS/HB      1D      Property      Insurance,      available      at https://www.flsenate.gov/Session/Bill/2022D/1D/Analyses/h0001Dz.APC.PDF (emphasis supplied).  The Florida Supreme Court "has held that statutes that operate to abolish or abrogate a preexisting right, defense, or cause of action cannot be applied retroactively." *American Optical Corp*., 73 So. 3d at 133; *see also Alamo Rent-A-Car, Inc. v. Mancusi*, 632 So. 2d 1352, 1358 (Fla. 1994) ("The establishment or elimination of . . . a claim is clearly a substantive, rather than procedural, decision of the legislature because such a decision does, in fact, grant or eliminate a right or entitlement.").

Moreover, as another district court recently found, section 624.1551 "added an element to bad-faith claims—that the insured establish the insurer's breach of the

insurance policy." *St. Lucia Condo. Assoc. Inc.*, 2023 WL 6882807 at *2.[13]  Under

Florida law, "a statute that achieves a 'remedial purpose by creating substantive new

rights or *imposing new legal burdens*' is treated as a substantive change in the law."

*Smiley v. State*, 966 So. 2d 330, 334 (Fla. 2007) (citing *Arrow Air, Inc. v. Walsh,* 645

So.2d 422, 424 (Fla.1994) ("[W]e have never classified a statute that accomplishes a

remedial purpose by creating substantive new rights or imposing new legal burdens

as the type of 'remedial' legislation that should be presumptively applied in pending

cases.")). Accordingly, section 624.1551 cannot be applied retroactively to Count I of

the Amended Complaint.

For the foregoing reasons, the Court concludes that as a matter of law, the

Appraisal Awards constitute a determination of liability that satisfies the necessary

prerequisite to filing a statutory bad faith claim. Therefore, American Home is not

entitled to summary judgment on the Amended Complaint.

### E. American Home Is Entitled To Summary Judgment In Part On Plaintiffs' Claim For ALE-Related Damages.

The Amended Complaint seeks three categories of ALE-related damages: (i)

ALE that the Newmans incurred, less the amount that American Home paid

pursuant to the ALE Award; (ii) the amount "which should have been paid by

American Home as ALE had it located a comparable alternative dwelling;" and (iii)

the "reasonable rental value of the Property either as an alternative to ALE or in

---

[13] American Home attempts to distinguish *St. Lucia Condominium Association* by arguing that the decision was made without "consideration of § 624.1551's legislative history."  ECF No. [235] at 4.  However, as discussed above, the legislative history supports the conclusion that section 624.1551 is a substantive statute.

addition to it as may be permitted under applicable law." ECF No. [42] at ¶ 120. American Home argues that these damages are barred for three reasons. First, American Home argues that Plaintiffs are bound by the ALE Award and cannot recover any additional monies for ALE-related damages. ECF No. [172] at 9-10. Second, American Home argues that the Policy's language limits the recovery to ALE damages that were actually incurred, and the Newmans did not incur the damages in the second or third categories above. ECF No. [172] at 11. And finally, American Home argues that Florida law bars recovery of the second and third categories because Plaintiffs did not suffer these damages, nor were they caused by American Home's alleged bad faith conduct. *Id.* at 12; ECF No. [235] at 6-8.

Plaintiffs do not address American Home's argument with respect to the first category of ALE-related damages requested. However, as to their claim for the second and third categories of damages, they contend that the remaining ALE-damages sought are not barred by the ALE Award because the appraisal panel did not consider or determine whether Plaintiffs are entitled to any extracontractual damages that were a "reasonably foreseeable result" of American Home's alleged bad faith conduct. ECF No. [209] at 20-21. Plaintiffs further argue that these damages are extracontractual and, as such, the Policy does not prevent recovery. *Id.* at 22. Finally, Plaintiffs argue that the issue of causation is a fact-specific inquiry which should be left to the jury to decide, and in any event, the record contains sufficient evidence to support causation irrespective of whether Plaintiffs incurred these

damages because a reasonable jury could find that the damages requested were a "completely foreseeable result of [American Home's] conduct." *Id*. at 23-24.

In support of its first argument, American Home primarily relies on the Eleventh Circuit's unpublished decision in *Kaplan v. Nautilus Ins. Co.*, 861 F. App'x 798 (11th Cir. 2021). In *Kaplan*, insureds filed a bad faith action against their insurer for failure to defend them in an underlying lawsuit. *Id*. Prior to instituting the bad faith action, the insureds obtained an arbitration award on their breach of contract claim against their insurer. *Id*. In the bad faith action, the plaintiffs sought fees and costs that were requested but not recovered during the arbitration, as well as lost profits and lost return on investment. *Id*. at 800. The district court found that collateral estoppel barred the insureds' claim for the unrecovered damages they previously sought in arbitration but did not bar their claims for lost profits and lost return on investment. *Id*. at 801. The Eleventh Circuit affirmed, holding that "[i]t would violate the principles of collateral estoppel to allow [the insureds] to relitigate this issue [of unrecovered fees and costs] simply because they recharacterized their claim as one of bad faith rather than breach of contract." *Id*. at 803. Central to the Court's conclusion was the fact that the insureds were "asking for the exact same fees that they requested but did not recover in the Underlying Arbitration." *Id*.

American Home also relies upon two decisions in this district, *Kafie v. Northwestern Mutual Insurance Company* and *Magaldi v. Safeco Insurance Company of America*. ECF No. [172] at 11. In *Kafie*, the court stated that the insured "may *not* seek any contractual damages under the Policies in this bad-faith action" and, in light

of earlier litigation between the insurer and insured, "the doctrine of *res judicata* also prevents the Court from revisiting or awarding damages available to [the insured] within the scope of the Policies." *Kafie*, No. 11-21251-Civ, 2011 WL 4499051, at * 8 (S.D. Fla. Sept. 27, 2011). Nonetheless, the *Kafie* court recognized that "extra-contractual damages are precisely the remedy envisioned" for a bad faith claim and held that the compensatory damages alleged in the complaint, namely damages for the insured's lost income, lost home, repossessed vehicle, and future unaccrued benefits under the policy, were not a basis to dismiss his claim. *Id*. at *9.

Similarly, in *Magaldi*, the court held that *res judicata* and collateral estoppel barred the insured's bad faith suit "to the extent it seeks to set aside the appraisers' award or recover additional benefits allegedly due under the policy by virtue of mistake in the damage and repair figures calculated by the appraisers . . . ." *Magaldi*, No. 10-80280-Civ, 2010 WL 2542011, at * 5 (S.D. Fla. June 22, 2010). However, the court also held that the "prior appraisal proceedings [and subsequent litigation confirming the appraisal award] do *not* preclude [the insured's] bad faith claims to the extent premised on allegations of unreasonable delay in the adjustment of the loss, appraisal of claim, or payment of claim . . . ."). *Id*. (emphasis supplied).

The Court is persuaded that the first category of ALE-related damages is barred by the ALE Award. These damages are comprised of ALE damages that the Newmans incurred but were not awarded in appraisal. ECF No. [42] at ¶ 121. The Newmans assert that the ALE Award only "cover[ed] a portion of their ALE losses" and now seek an additional $92,238.01 for incurred ALE expenses, including storage

costs, internet, cable, housekeeping, and renters insurance.  ECF Nos. [42] at ¶ 91; [173-20] at 11(b).  By their very nature, however, these additional, incurred ALE expenses are part of the costs that the Newmans requested (or should have requested) as part of the ALE appraisal.  Plaintiffs cannot use this bad faith action to recover damages that were within the scope of the ALE appraisal but not awarded.  *See Kaplan*, 861 F. App'x at 803; *Magaldi*, 2010 WL 2542011, at * 5.  Tellingly, Plaintiffs have seemingly abandoned their request for these damages, as they make no attempt in their Response to demonstrate that an award of the additional ALE expenses at issue in the first category of damages is permissible.

However, as to the remaining two categories of alleged ALE-related damages, namely "fair rental value" damages and lost rental opportunities, the undersigned concludes that the ALE Award itself is not a bar to Plaintiffs' recovery.  Unlike the Newmans' additional ALE expenses, these types of damages were not and could not have been requested during the ALE appraisal.  As such, they cannot be described as "the exact same" damages that were requested during appraisal but not awarded as in *Kaplan*, nor does their recovery require the court to revisit the ALE Award as in *Magaldi*.  Rather, as both *Magaldi* and *Kafie* recognized, these damages are extracontractual damages which are available in a bad faith action.  *See also*, *Dadeland Depot,* 945 So. 2d at 1223 ("The problem with the view expressed by the dissent is that it fails to acknowledge that the arbitration addressed only the construction contract, not a bad faith claim, and that [insured] has claimed

*consequential bad faith damages* in this bad faith action which are *in addition to the damages asserted and awarded at the arbitration.*").

The Court now turns to American Home's next argument that the Policy bars recovery for the second and third category of damages because Plaintiffs did not incur those damages as the Policy requires.  ECF No. [172] at 11.  The Court is not persuaded that the Policy limitation bars this recovery.  As the Florida Supreme Court explained, "section 624.155 expressly provides for the award of *extra-contractual* damages for bad faith conduct in connection with the insurance contract clearly beyond those that may have been awarded under the . . . contract." *Dadeland Depot,* 945 So. 2d at 1222 (underline emphasis added); *see also Kafie*, 2011 WL 4499051 at * 8 (explaining that if insurer does not pay contractual damages within 60-day window after CRN is filed, "it runs the risk of bad-faith litigation and being found liable for additional damages not specified by the policy agreement.").  Indeed, "the only limitation on the measure of damages for a violation of Florida's statute against bad faith is the reasonable foreseeability of the damages." *B-L Cypress Log Homes, Inc. v. Auto-Owners Ins. Co.*, No. 1:09-cv-211, 2012 WL 13018751, at * 3 (N.D. Fla. May 31, 2012) (citing *Dadeland*, 945 So. 2d at 1222-23)); FLA. STAT. § 624.155(11) ("The damages recoverable pursuant to this section shall include those damages which are a reasonably foreseeable result of a specified violation of this section by the authorized insurer and may include an award or judgment in an amount that exceeds the policy limits.").

The Court now considers American Home's final argument, that Florida law bars the second and third category of ALE damages because the Newmans cannot show that they suffered these damages, nor that they were caused by American Home's alleged bad faith claims-handling. ECF No. [172] at 13; ECF No. [235] at 6-8. These are distinct yet interrelated principles because, as discussed below, an insured must suffer the bad faith damages requested in order to recover them, and "the claimed damages must be caused by the [insurer's] bad faith." *Perera v. U.S. Fid. & Guar. Co.*, 35 So. 3d 893, 901 (Fla. 2010). For the reasons explained below, the Court agrees that Plaintiffs have not put forth sufficient evidence as to the second category of ALE-related damages, but have done so as to the third category.

The law is clear that bad-faith damages are extra-contractual and must be reasonably foreseeable. *Talat Enters., Inc. v. Aetna Cas. & Sur. Co.*, 753 So. 2d 1278, 1281 (Fla. 2000) (explaining that adoption of section 624.155 permitted an insured to recover extra-contractual damages); FLA. STAT. § 624.155(11) (damages recoverable are those "which are a reasonably foreseeable result" of bad faith conduct). Here, Plaintiffs seek these damages as compensatory damages, ECF No. [42] at ¶ 121, which "are intended to remedy a *concrete loss suffered* by the plaintiff due the defendant's wrongful conduct and to make the plaintiff whole." *Williams v. First Advantage LNS Screening Solutions, Inc.*, 947 F. 3d 735, 746 (11th Cir. 2020) (citing *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408 (2003)) (emphasis supplied). That loss may take the form of damages the insured already incurred or would have incurred, as prospective damages such as "loss of business opportunities, "loss of use

41

of monies," "lost profits," or "lost return on investment" have been allowed in insurance bad faith actions. *See e.g.*, *Dadeland Depot,* 945 So. 2d at 1223; *Kaplan*, 861 F. App'x at 801. At bottom, Plaintiffs must show that that they suffered, or would have suffered, the damages requested. *See e.g., Levesque v. Government Employees Ins. Co.*, No. 21-12257, 2022 WL 1423477, at *6 (11th Cir. May 5, 2022) (limiting amount of attorney's fees awarded as damages in bad faith action to the amount of fees insureds "were obligated to pay their attorneys"); *Milling v. Travelers Home & Marine Ins. Co.*, 311 So. 3d 289, 294 (Fla. 2d DCA 2020) ("[U]nless [insured] was obligated to pay her UM attorneys for their legal services, she wasn't damaged at all, and any fees for such services are therefore not awardable as damages even if she was the prevailing party in the bad faith action."); *Dadeland Depot*, 945 So. 2d at 1222 (stating that whether insured was entitled to bad faith damages "can only be properly determined as this case proceeds to trial and [insured] is afforded the opportunity to develop and prove damages, if any, suffered as a result of the alleged bad faith conduct of [insurer]."); *Jablonski v. St. Paul Fire & Marine Ins. Co.*, No. 2:07-cv-00386, 2009 WL 1066934, at *1 (M.D. Fla. April 21, 2009) (denying plaintiff's motion for partial summary judgment as to liability for bad faith claim because "there is a disputed issue of fact as to whether he suffered damages resulting from [insurer's] apparent misrepresentation . . ."). Such a showing is necessary because "[c]ompensatory damages should not bestow a windfall on plaintiffs." *Levesque*, 2022 WL 1423477 at * 5 (quotation marks omitted).

Here, Plaintiffs concede that they did not incur the "fair rental value" damages sought in the second category of ALE-related damages. ECF No. [209] at 24. As noted above, that is not fatal to their claim. What is fatal is that Plaintiffs have failed to show that they suffered damages as a result of American Home's failure to disclose the extent of the coverage at issue. To make such a showing, Plaintiffs need to provide some competent evidence that they would have rented a more expensive alternative dwelling than the apartment they chose, or otherwise suffered some harm by living in the condominium that they selected. Plaintiffs do not identify *any* such evidence. Rather, Mrs. Newman testified that when looking for an alternative home to rent, "there wasn't much at the time to look at that was a little comparable to our home and yet be close." ECF No. [173] at ¶ 24. She further testified that she and her husband looked at "a few" that "were really not nice" and chose the apartment that they ultimately rented (and later purchased) because "it was barely used," "it was on the ocean," and "[i]t was close to the house." *Id.* Indeed, the record evidence reflects that the Newmans were concerned with being close to their home and close to the water, and chose their alternative dwelling based on those considerations. There is no evidence that their choice was *at all* impacted by the amount that they believed American Home would pay for an alternative dwelling, nor that they considered another property but chose not to live there because of the cost. Therefore, no reasonable jury could conclude that Plaintiffs suffered the second category of ALE-related damages because there is no evidence in this record upon which a rational trier of fact could make that finding.

Finally, as to the third category of ALE-related damages for lost rental opportunities, Plaintiffs have made a sufficient showing, for purposes of summary judgment, that they would have incurred these damages. Plaintiffs point to testimony of Michael Newman that the Newmans' home had been rented for commercial purposes at least four to six times a year on average for $10,000.00 per day. ECF No. [209] at 25. American Home dismisses this testimony because Plaintiffs did not cite to any documentary evidence. However, the Court finds that the testimony of Mr. Newman is sufficient to raise a genuine issue of material fact that precludes summary judgment.

The Court thus turns to American Home's other argument, that Plaintiffs have failed to show a causal connection between American Home's alleged bad faith conduct and their damages. ECF No. [172] at 12; ECF No. [235] at 8. American Home provides no analysis of the causation issue with respect to Plaintiffs' alleged damages for lost rental opportunities. *Id*. Instead, American Home argues that these damages are unsupported by the record. *Id*. As explained in the preceding paragraph, the Court does not agree.

Accordingly, for the foregoing reasons, American Home is entitled to summary judgment as to the first category of ALE-related damages, namely "[t]he Newmans' incurred alternative living expenses less the amount already paid by American Home," and the second category of ALE-related damages, namely "[t]he amount which should have been paid by American Home as ALE had it located a comparable dwelling." ECF No. [42] at ¶ 121 b., c. However, American Home is not entitled to

summary judgment as to the third category of ALE-related damages for lost rental opportunities.

### F. American Home Is Entitled To Summary Judgment On Plaintiffs' Claim For L&O Damages.

Plaintiffs seek to recover as bad faith damages "[t]he difference between the L&O appraisal award and the American Home Policy's coverage limit for that award." *Id*. at ¶ 121 a.  As mentioned, the Newmans obtained an appraisal award in their favor for L&O benefits totaling $5,827,300.84.  ECF No. [173-13] at 2.  American Home paid a portion of the L&O Award, $4,617,632.40, which was up to the Policy limits.  ECF No. [173] at ¶ 23.  Plaintiffs now seek to recover the unpaid balance of the L&O Award.

However, Plaintiffs have not identified *any* evidence that they incurred costs to obey the relevant building codes, or that they plan to do so.  As discussed above, such evidence is necessary because compensatory damages "are intended to remedy a concrete loss."  *Williams*, 947 F. 3d at 746.  Accordingly, Plaintiffs are not entitled to recover the excess portion of the L&O Award as bad faith damages because there is no evidence from which a reasonably jury could conclude that they suffered those damages.  *See e.g.*, *Levesque*, 2022 WL 1423477 at * 6; *Milling*, 311 So. 3d at 294.

### G. American Home Is Not Entitled To Summary Judgment On Punitive Damages Because There Are Disputed Issues Of Material Fact.

Plaintiffs seek punitive damages pursuant to Florida Statutes § 624.155, which provides that:

> Punitive damages may not be awarded under this section unless the acts giving rise to the violation occur with such

> frequency as to indicate a general business practice and
> these acts are:
>
> (a) Willful, wanton, and malicious;
>
> (b) In reckless disregard for the rights of any insured; or
>
> (c) In reckless disregard for the rights of a beneficiary
> under a life insurance contract.

Fla. Stat. § 624.155(8). American Home argues that the evidence is insufficient to satisfy this standard. ECF No. [172] at 19-26. At this stage of the proceedings, the Court does not agree. Plaintiffs rely upon evidence of "other claims" and American Home's internal practices to demonstrate entitlement to punitive damages, which the Court must view in the light most favorable to Plaintiffs.

For example, in addition to their own Claim, Plaintiffs refer to claim notes and testimony of American Home's corporate representative with respect to nearly a dozen other claims, many of which involved the same vendors and claims personnel that handled the Newmans' Claim. Plaintiffs contend this reflects "a strikingly similar and clear pattern of 'lowballing' and improperly shifting the burden of conducting a full and fair investigation of the claim to the insureds and their representatives." ECF No. [209] at 10. Under Florida law, an insured who relies upon "other claims" evidence for purposes of punitive damages must provide evidence of at least three other claims in addition to his own to survive summary judgment. *Howell-Demarest v. State Farm Mut. Auto. Ins. Co.*, 673 So. 2d 526, 529 (Fla. 4th DCA 1996). Plaintiffs have done so here.

Plaintiffs also rely upon evidence of American Home's allegedly inadequate staffing practices, which purportedly led to an increased reliance on unqualified

outside adjusters, and its internal financial goals used to evaluate employees, which allegedly incentive claims-handlers to "lowball" claims and utilize panel vendors. ECF No. [209] at 16-19.  The Court has carefully reviewed the legal authority that American Homes relies upon.  However, those decisions are sufficiently distinguishable because Plaintiffs have offered more detailed and varied evidence, including expert testimony, to support their request for punitive damages.  *See B-K Cypress Log Homes, Inc.*, 2012 WL 13018751 at *5 (holding that "as a matter for summary judgment, [insurer] has failed to establish the nonexistence of a triable issue of fact" where insured "has come forward with evidence in the record that supports its punitive damages claim, including the opinion of its expert.").

In light of the foregoing, and given that the Court must draw all reasonable inferences in favor of Plaintiffs, American Home has not met its burden to establish the non-existence of a genuine issue of material fact as to punitive damages.  Under the circumstances of this case, the Court concludes that American Home's liability for punitive damages is a factual determination best suited for the jury.[14]

---

[14] Of course, the Court's ruling does not prevent American Home from challenging Plaintiffs' entitlement to punitive damages through a motion for directed verdict, or a motion for judgment notwithstanding the verdict, based upon the evidence (or lack thereof) admitted at trial.

## III.    CONCLUSION

For the foregoing reasons, it is hereby **ORDERED AND ADJUDGED** that Plaintiffs' Motion for Partial Summary Judgment, ECF No. [170], is **GRANTED IN PART AND DENIED IN PART** as specified herein. It is **FURTHER ORDERED AND ADJUDGED** that Defendant's Motion for Summary Judgment, ECF No. [172], is **GRANTED IN PART AND DENIED IN PART** as set forth above.

**DONE AND ORDERED** in Chambers in Miami, Florida on March 20, 2024.

_____
**JACQUELINE BECERRA**
**UNITED STATES DISTRICT JUDGE**