UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 1:22-cv-20979-JB

MICHAEL NEWMAN, as Personal Representative
of the ESTATE OF JOEL NEWMAN, and
EDITH NEWMAN,

    *Plaintiffs*,

v.

AMERICAN HOME ASSURANCE
COMPANY, INC.,

    *Defendant*.

_____/

## PLAINTIFFS' TRIAL BRIEF ON THE USE OF "OTHER CLAIMS" PAYMENTS

On March 11, 2024, the Court denied without prejudice American Home's motion *in limine* to preclude the Newmans from offering evidence regarding AIG's other insurance claims. ECF No. 318. Through this trial brief, the Newmans explain how they intend to use AIG's payments to other insureds, the relevance of the payment amounts to the Newmans' punitive damages case, and the law showing that Federal Rule of Evidence 408 does not bar the admissibility of this evidence.[1]

As this Court recognized in its recent summary-judgment order, the Newmans seek punitive damages under Florida Statutes § 624.155, which requires a showing of "frequency as to indicate a general business practice." ECF No. 337 at 45-46. The Court correctly noted that the Newmans rely in part "upon evidence of 'other claims' and American Home's internal practices to demonstrate entitlement to punitive damages," because the Newmans contend that AIG's handling of other claims can establish the required "frequency," or as described by the Court, "reflects 'a

---

[1] This trial brief is also relevant to the Court's review of the deposition designations for Andrew Pacholec (Pacholec 2), which the Newmans originally filed on March 15, 2024 [ECF No. 330-1] and, following conferrals with counsel for American Home, will be submitting in updated form.

strikingly similar and clear pattern of 'lowballing' and improperly shifting the burden of conducting a full and fair investigation of the claim to the insureds and their representatives.'" *Id.* at 46 (citation omitted).

Context is important here. Whether AIG ultimately resolved an insurance claim for an amount significantly higher than its initial offer is probative of whether the initial offer was a lowball offer that improperly shifted the burden of conducting a full and fair investigation of the claim to the insureds and their representatives. In other words, if AIG resolved another insurance claim for an amount close to its initial evaluation of the claim, that would not support the Newmans' claim as much as if the carrier resolved another insurance claim for an amount significantly higher than its initial evaluation. The actual amounts are a key part of this proof and an essential part of the frequency consideration elaborated by the statutory scheme.

The Newmans' punitive damages theory in this regard does not depend on AIG invoking the appraisal process. Regardless of whether AIG ultimately makes a payment before or after an appraisal, the Newmans' point is that AIG's handling of other claims "reflects 'a strikingly similar and clear pattern of 'lowballing' and improperly shifting the burden of conducting a full and fair investigation of the claim to the insureds and their representatives.'" ECF No. 337 at 46 (citation omitted). And the fact that AIG ultimately paid these other claims for amounts significantly higher than its initial evaluation on these other claims is probative of "frequency" sufficient to indicate a general business practice.

In its motion in limine, AIG argued that evidence of the payment amounts on other claims is barred by Federal Rule of Evidence 408. But that is incorrect. Rule 408 bars evidence of a settlement between one of the parties and a third party only when that settlement arose from the *same transaction* in dispute. In ***Dallis v. Aetna Life Insurance Co.*, 768 F.2d 1303 (11th Cir.**

**1985)**, the Eleventh Circuit explained that courts have applied Rule 408 to settlements between one of the parties and a third party "where such settlements have arisen out of the same transaction that is in dispute." *Id.* The *Dallis* court noted that it did not need to determine the precise reach of Rule 408, *id.* at 1307 n.2, but the court nonetheless declined to apply Rule 408 to the case before it and reasoned: "[T]o hold Rule 408 applicable to the instant case would be to extend that rule to forbid evidence of a settlement between one party and a third party when such settlement involves similar circumstances to, but does not arise out of, the transaction with which the litigation is concerned." *Id.* at 1307.

Based on *Dallis* and its rationale, district courts within this Circuit have declined to apply Rule 408 to settlements involving one of the parties and a third party where that settlement did not arise out of the same transaction in dispute. In **Ostrow v. Globecast America Inc., 825 F. Supp. 2d 1267 (S.D. Fla. 2011)**, the court cited *Dallis* and addressed "whether Rule 408 applies where evidence of settlement of a prior claim pertains to a claim different from that at issue in the case being litigation." *Id.* at 1272. The *Ostrow* court noted that "the farthest known expansion of Rule 408 occurred in *Bradbury v. Phillips Petroleum Co.*, 815 F.2d 1356 (10th Cir. 1987)," but the *Ostrow* court explained that "applying Rule 408 in the instant matter would require an extension even of *Bradbury*" because "[w]hereas the settlements and claim at issue in *Bradbury* all arose out of a single uranium-exploration project, the Togut settlement and Ostrow's breach-of-contract claim in this case stem from two distinctly separate and unrelated legal transactions." *Id.* at 1273 (citation omitted). As a result, the court concluded, "Rule 408 does not preclude use of the Togut settlement." *Id.* at 1274.

Other district courts in this Circuit agree that Rule 408 does not bar the use of settlements between one of the parties and a third party unless that settlement stems from the *same transaction*

with which the present litigation is concerned. *See* **Younger v. Experian Info. Solutions, Inc., 2019 U.S. Dist. LEXIS 46595, \*16 (N.D. Ala. Mar. 21, 2019)** ("[T]he Eleventh Circuit expressed skepticism that Rule 408 could be extended to 'settlement between one party and a third party when such settlement involves similar circumstances to, but does not arise out of the transaction with which the litigation is concerned' …. This court also declines to extend Rule 408 to the circumstances here.") (quoting *Dallis*, 768 F.2d at 1306-07); **Armstrong v. HRB Royalty, Inc., 392 F. Supp. 2d 1302, 1308 (S.D. Ala. 2005)** ("[T]he [Eleventh Circuit] also noted with apparent skepticism the insurer's argument that the 'same transaction' rule could be 'extended … to forbid evidence of a settlement between one party and a third party when such settlement involves similar circumstances to, but does not arise out of, the transaction with which the litigation is concerned.' The Eleventh Circuit's dubiousness is justified …. Applying the rule to non-contemporaneous incidents involve third parties and 'related' to the subject litigation only by the identify of the defendant and the 'similarity' of the conduct would effectively read the 'same claim' requirement out of existence.") (quoting *Dallis*, 768 F.2d at 1306-07).[2]

Under this standard, Rule 408 does not bar the Newmans' use of AIG's "other claims" payments. Payments on other claims involving different insureds do not stem from the Newmans' insurance policy, or the handling of the Newmans' Hurricane Irma claim. Those other claims involved different policies that were effectuated through different transactions. This is not, for example, a case involving a single car wreck in which the Newmans have sued multiple alleged tortfeasors and settled with all but one of those tortfeasors before trial. Rule 408 would

---

[2] Some courts have characterized these cases as standing for the broader proposition that, regardless of whether the same transaction underlies the claims, "Rule 408 does not bar the introduction of settlement agreements regarding claims other than that being litigated." *Smith v. Waverly Partners, LLC*, 2012 U.S. Dist. LEXIS 131916, \*5 (W.D.N.C. Sept. 17, 2012) (citing *Ostrow*, 825 F. Supp. 2d at 1273; and *Armstrong*, 392 F. Supp. 2d at 1304-05).

appropriately bar evidence of those settlements of claims stemming from the same transaction—the car accident. But there is no "same transaction" here. Moreover, use of the payments in this case is consistent with the policy underlying Rule 408 because the payment evidence is not being offered to prove that AIG is liable for coverage under the Newmans' policy, or even that the Newmans' claim was not handled in good faith and in accordance with Florida law. The payment evidence is being offered because the similarities in claim handling behavior are relevant here to establish "frequency" and AIG's liability for punitive damages.

American Home relies on *Lampliter Dinner Theater, Inc. v. Liberty Mutual Insurance Co.*, 792 F.2d 1036 (11th Cir. 1986) to argue that Rule 408 applies here. However, contrary to the facts of this case and the cases discussed above, *Lampliter* involved a party's settlement with a third party of a claim that involved the *same transaction* (a car accident) underlying the case being litigated. The dispute in *Lampliter* arose from a car accident during which two teenage boys (Hickman and Bass) died after imbibing alcohol at Lamplighter Dinner Theater. *Id.* at 1038. Lampliter had an insurance policy with Liberty Mutual, but Liberty Mutual denied coverage. *Id.* After a suit by the Hickman and Bass parents resulted in a verdict against Lampliter, Lampliter sued Liberty, which filed a third-party complaint against the Hickman and Bass parents seeking a declaratory judgment that the policy did not cover the jury verdicts. *Id.* Liberty then settled the Hickman and Bass claims. *Id.* at 1039-40. Lampliter argued that Liberty demonstrated bad faith by settling the Hickman and Bass suits, but the court held that the Rule 408 barred evidence of the settlement. *Id.* at 1042. Later, the court in *Armstrong* pin-pointed exactly why *Lampliter* does not govern cases like the present one:

> In *Lampliter*, … the Court applied Rule 408 to the insured's effort to introduce evidence that the insurer belatedly settled two wrongful death suits against the insured arising *from a single accident*. Because the insured's grievance against its insurer arose from the same event as that which precipitated the suits against it,

> *Lampliter* represents a defensible application of the "same transaction" rule to achieve a proper "same claim" result.

*Armstrong*, 392 F. Supp. 2d at 1308 n.16 (citation omitted; emphasis added).

Even apart from the fact that AIG's "other claims" payments do not stem from the same transaction that underlies the present dispute with the Newmans, excluding evidence of third-party payment amounts in the context of a general business practice claim—where evidence of the insurer's handling of other claims is a contemplated (if not necessary) ingredient—would be particularly inappropriate. In fact, under American Home's view of Rule 408, punitive damages would never be available under Florida Statutes § 624.155 even if the insurer has a widespread practice of failing to pay claims in good faith, because any evidence indicating that practice would be inadmissible under Rule 408 as long as the insurer ultimately "settles" the disputed claim.

| | |
|---|---|
| Dated: March 29, 2024 | Respectfully submitted,<br><br>**REED SMITH LLP**<br>200 S. Biscayne Blvd., Suite 2600<br>Miami, FL 33131<br>Telephone: (786) 747-0222<br>Facsimile: (786) 747-0299<br><br>*/s/ R. Hugh Lumpkin*<br>**R. Hugh Lumpkin**<br>Florida Bar No. 308196<br>hlumpkin@reedsmith.com<br>**Matthew B. Weaver**<br>Florida Bar No. 42858<br>mweaver@reedsmith.com<br>**Garrett S. Nemeroff**<br>Florida Bar No. 111675<br>gnemeroff@reedsmith.com<br>**Jessica Gopiao**<br>Florida Bar No. 1011789<br>jgopiao@reedsmith.com |

## **CERTIFICATE OF SERVICE**

I hereby certify that on March 29, 2024, I electronically filed the foregoing with the Clerk of Court using CM/ECF. I also certify that the foregoing is being served this day on all counsel of record via transmission of Notice of Electronic Filing generated by CM/ECF.

*/s/ R. Hugh Lumpkin*
**R. Hugh Lumpkin**