UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 1:22-cv-20979-JB

MICHAEL NEWMAN, as Personal Representative
of the ESTATE OF JOEL NEWMAN, and
EDITH NEWMAN,

    Plaintiffs,

v.

AMERICAN HOME ASSURANCE
COMPANY, INC.,

    Defendant.
_____/

**DEFENDANT'S RESPONSE TO PLAINTIFFS' TRIAL BRIEF
ON THE USE OF "OTHER CLAIMS" PAYMENTS**

On March 29, 2024, Plaintiffs submitted a "trial brief" to "explain how they intend to use AIG's payments to other insureds, the relevance of the payment amounts to the Newmans' punitive damages case, and the law showing that Federal Rule of Evidence 408 does not bar the admissibility of this evidence." (ECF 348 at 1).

Defendant previously moved *in limine* to exclude the evidence on multiple grounds. (ECF 221 at 3-8; ECF 259 at 2-5). The Court conducted a hearing on the parties' motions *in limine* on February 1, 2024, and Plaintiffs made many of the same arguments they now repeat in their trial brief. At that time, the Court expressed skepticism regarding Plaintiffs' contention that the settlements -- now referred to simply as "payments" by Plaintiffs – were not being offered "to show liability for bad faith":

    THE COURT: So for what purpose are you bringing them in?

1

>MR. NEMEROFF: We are bringing them in to show that AIG has a general business practice of not paying -- paying much more to the policyholders only after the policyholder has incurred the cost of hiring its own engineer, hiring its own lawyers, often filing suit, often having to file a Civil Remedy Notice. This whole issue of passing the costs of conducting the actual investigation onto their consumer and shifting the burden to go through these various hurdles show that you will actually pursue it, you will actually dispute it, and that is when American Home will actually pay an amount closer to what is fair.
>
>THE COURT: Isn't that liability?

Feb. 1 Tr. 169:11-25.

The Court also questioned the relevance of the settlements since Plaintiffs' *own* claim against Defendant concerned the resolution of their coverage claim *through appraisal* – not litigation or settlement:

>MR. NEMEROFF: It is not liability. No one is seeking to hold American Home liable for coverage or contractual payments that they agreed to with these policyholders. It is a bad faith case, and I think, look, we say –
>
>THE COURT: But they also didn't settle in this case. There was an appraisal award. So it is also a little different here too, right. That is not the practice here. They didn't settle here, right? Am I wrong on that? They went to appraisal and there was an appraisal award.
>
>MR. NEMEROFF: That's right. They paid pursuant to an appraisal award, and there are some claims where they did the same thing, where the same thing happened.
>
>THE COURT: Right. So I don't see how your expert is going to testify that this is their practice, that they fight, fight, fight and then they eventually settle, when that is not what they did here.
>
>MR. NEMEROFF: I guess that is an argument they can try to make on cross. It doesn't go to their 408 argument. I don't think they dispute that -- they don't have a relevance argument just because some claims were settled in court and some claims were settled following appraisal. I didn't hear any arguments from my colleague on Rule 403, but I'm happy to walk through it if your Honor has any concerns.
>
>THE COURT: Look, I am only going to deny the motion without prejudice but tell you that I'm hearing you say that the CRNs are only being brought in for the fact that a CRN was filed, which I think was fine, nothing more. You're not bringing in the lawyers. I will wait to see how it is that you think you are going to introduce settlements, but I have not heard you articulate yet how you are going to do that

successfully. <u>I will let you try at trial, but if you're going to do what you just did right now, that is going to be denied.</u>

MR. NEMEROFF: I just want to be clear, we are not introducing settlements as such; <u>we are introducing the amount of money that American Home ultimately paid to these</u> –

THE COURT: <u>No. No, that is never going to happen.</u> I thought what you were trying to do is make the argument that they eventually settled, so the fact that cases were settled, right. That is the only issue here. <u>I am never letting you introduce the amount that they settled for at all.</u> How would that be OK?

MR. NEMEROFF: It is relevant to the general business -- it is relevant to our general business practice claim and the way that they handled these other claims.

THE COURT: The amount is not. What would be relevant is that they eventually settle, right, for an amount that was close to what the plaintiffs demanded, right. That is the practice, right, that would be relevant. The actual amounts, why would the amount exactly be relevant?

MR. NEMEROFF: Your Honor, our entire case is about the gross disparity in the amounts initially offered versus the amounts ultimately paid. The other claims show that there is a pattern of doing similar things to other insureds. It is directly relevant and entirely probative to our general business practice claim.

THE COURT: <u>Well, I don't think it is probative of the general business practice because there wasn't a settlement in this case.</u> If you have other cases where they're saying, look, what they will do is they will fight you and then, you know, they will go to appraisal. They don't have a choice but to really pay after appraisal, right. That is one thing. But I don't know that the settlement is the same business practice at issue here.

MR. NEMEROFF: It is agreeing to pay an amount that goes much more than was initially offered. It is the same thing that happened here. They could have challenged appraisal awards, and in some sense they tried to do that here. They could have raised coverage arguments in response to the appraisal awards and they didn't. So they paid the appraisal awards and that is just as much a settlement as anything else. I mean, it sets the amount –

THE COURT: I don't think you want to be quoted as saying that. I mean, a settlement is totally different than an appraisal award. There's tons of litigation about that all across the state now. So I don't think that's the issue. The practice at issue, I thought the practice that you were going to be articulating to the jury is that they don't take these claims seriously; they hire people to look at the claims that are not qualified; their people are given incentives not to pay out what they should pay

3

out. There are a lot of different practices I heard you articulate. <u>The settlement one doesn't fall in line with these facts.</u>

MR. NEMEROFF: Again, I think that the settlement is not the relevant point. The point is the amount, the final amounts paid, and that is what we see across all of these other claims. Yes, we have other theories of general business practices, but, no, it is not our only theory, and I don't think the fact -- again, they don't make an argument that these settlement payments are irrelevant; they make an argument that they are barred under Rule 408.

THE COURT: Well, for sure they are going to argue they were relevant. They just went with their stronger argument because 408 is pretty clear that you can't bring them in. So, look, I am going to deny it without prejudice. We will see how you try to introduce them. The numbers, even if I were to get over 408 and agree that there's relevance, I would probably make you discuss it as a percentage. I am not going to let you tell this jury that millions and millions, which I'm sure is the numbers that we're talking about, that they eventually pay. Is that what you are trying to do?

MR. NEMEROFF: We're trying to show that -- again, we're trying to show that American Home handled these other claims in a similar way to how they handled the Newmans' claim -- offered an amount that was much lower than the amount they eventually paid only after the policyholder had to jump through these hurdles and incur these damages. They are similar, they are relevant, and for the reasons I outlined I don't think that 408 applies for several reasons.

THE COURT: I will deny it without prejudice as a motion in limine. I'm sure I will hear it again at trial before you introduce it to the jury. <u>What you've articulated right now is straight 408.</u> So for trial come with another argument because you haven't convinced me on the 408. <u>I also have some concerns that it is not the business practice at issue here, right. I mean, the general business practice, you could find that they have 100 general business practices that are awful, but they'd have to be a business practice that played out in this case, and the one that played out in this case is not the settlement scheme, as best I can tell.</u> So, again, you will have another shot at it at trial. I will deny it without prejudice. <u>But it seems like it is 408 to me.</u>

Feb. 1 Tr. at 170:1-175:5 (emphasis added).

The Court's initial inclinations remain correct. For the reasons set forth in Defendant's Motion *in Limine* and below, the Court should exclude the evidence of the "other claims" payments.

1. **Evidence regarding the settlement of other claims is not relevant to the "general business practice" at issue in this case and is more prejudicial than probative.**

Section 624.155(5), Fla. Stat., provides:

> No punitive damages shall be awarded under this section <u>unless the acts giving rise to the violation</u> occur with such frequency as to indicate a general business practice and these acts are:
> (a) Willful, wanton, and malicious; [or]
> (b) In reckless disregard for the rights of any insured.

Thus, as the Court has previously recognized, Plaintiffs must show that "the acts giving rise to the violation" of which *they* complain occurred "with such frequency as to indicate a general business practice." Here, Plaintiffs claim against American Home is that they were forced to go through the contractual appraisal process to obtain payment of their homeowners' claim. Accordingly, Plaintiffs seek as damages their appraisal-related expenses, including appraiser, expert, and attorneys' fees.

For this reason, evidence of the "other claims" settlements is not even relevant to Plaintiffs' "general business practice" claim. Here, Plaintiffs' claim is that American Home *failed* to settle with them – not that it forced Plaintiffs to "fight, fight, fight" before "eventually settl[ing]." Therefore, if the Court is inclined to allow Plaintiffs to offer any "other claims" evidence – and it should not – the Court should limit the "other claims" evidence to claims – like the Newmans' – that were resolved through the contractual appraisal process.

2. **Evidence regarding the settlement of other claims is inadmissible under Rule 408.**

Federal Rule of Evidence 408 provides:

> Evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount.

5

In support of their argument that evidence regarding the "other claims" payments is not barred by Federal Rule of Evidence 408, Plaintiffs again cite *Dallis v. Aetna Life Ins. Co.,* 768 F.2d 1303 (11th Cir. 1985). However, the *Dallis* Court expressly declined to reach that question, stating: "<u>We do not reach the question of whether Rule 408 bars evidence of a settlement between one of the parties and a third party when such settlement involves similar circumstances to, but does not arise out of, the transaction with which the litigation is concerned.</u>" *Id.* at 1307 n.2 (emphasis added). For this reason, the language quoted by Plaintiffs is dicta only. Instead, the *Dallis* Court declined to apply Rule 408 because there was "no evidence that the [insurance] company ever disputed the claim" so "the payment by [the insurance company] of the prior claim was not a 'compromise' within the meaning of Rule 408." *Id.* at 1307.

Further, none of the cases cited by Plaintiffs concern the issue presented by this case, namely, whether Plaintiffs may offer evidence regarding an insurance company's settlement of other claims – including the amounts of those settlements – to prove that the insurance company engaged in a proscribed "general business practice." As Plaintiffs have admitted, their sole purpose in offering evidence of the settlements and their amounts is to show that AIG "lowballed" insureds by initially offering them less than they were entitled to receive, as evidenced by the amount that AIG ultimately agreed to pay to settle the claims -- which, as this Court previously noted, is exactly what Rule 408 prohibits.

The cases on which Plaintiffs rely stand in sharp contrast to the circumstances presented by this case:

- In *Dallis,* the plaintiff offered evidence that the insurance company had paid a similar claim, and the Court held Rule 408 did not apply because the insurance company had not disputed the claim.

- In *Ostrow v. GlobeCast America, Inc.,* 825 F.Supp.2d 1267 (S.D. Fla. 2011), the court held that Rule 408 did not bar admission of evidence regarding the defendant employer's settlement with another employee, but deferred ruling on defendant's motion *in limine* on other grounds equally applicable here. *Id.* at 1275 (holding that "to the extent that the Togut settlement evidence might reveal only that Globecast settled Togut's claim without shedding light on any of the reasons why – or even while expressly disclaiming liability, such evidence would not appear to be relevant, as claims may be settled for any number of reasons, some of which may not relate to the merit of the claim").

- In *Younger v. Experian Info. Solutions, Inc.,* 2019 WL 1296256, *5 (N.D. Ala. Mar. 21, 2019), the plaintiff elicited testimony regarding a settlement between the three national credit reporting agencies and multiple state attorneys general and Experian failed to timely object. Moreover, <u>*Younger* was reversed in part by the Eleventh Circuit</u> (which Plaintiffs' citation fails to disclose). *Younger v. Experian Info. Solutions, Inc.,* 817 Fed. Appx. 862 (11th Cir. 2020). As a consequence, the Court denied the point on appeal. *Id.*

- In *Armstrong v. HRB Royalty, Inc.,* 392 F.Supp.2d 1302 (S.D. Ala. 2005), the plaintiff franchisees sought to enforce a contract provision requiring the defendant franchisor to pay a "fair and equitable" price and the court held that "the calculation of a fair and equitable price was not an issue and was not a 'claim that was disputed'" for purposes of Rule 408. *Id.* at 1306.

Unlike the cases cited by Plaintiffs, *Lampliter Dinner Theater, Inc. v. Liberty Mut. Ins. Co.*, 792 F.2d 1036, 1042 (11th Cir. 1986), previously cited by American Home, is on point. In

7

*Lampliter,* the Eleventh Circuit specifically called out the impropriety of relying on settlement offers as evidence of bad faith:

> Finally, Lampliter's argument that Liberty demonstrated its bad faith by eventually settling the Hickman and Bass suits is wholly improper. Well established case law and the Federal Rules of Evidence prohibit the introduction of settlements or settlement negotiations into evidence to prove liability. Fed. R. Evid. 408; *see Dallis v. Aetna Life Insurance Co.*, 768 F.2d 1303 (11th Cir.1985). Lampliter attempts to do exactly what Fed. R. Evid. 408 proscribes by arguing that the settlement indicates that Liberty realized it was liable for the claims upon which Lampliter asserted coverage. Even if it were not against public policy to consider a settlement offer as evidence of liability, an eventual settlement does not indicate that an initial denial of coverage was in bad faith.

*Id.* (emphasis added). *See also Reeder v. American Economy Ins. Co.,* 88 F.3d 892, 894 (10th Cir. 1996) (applying Rule 408 in bad faith case and rejecting as "specious" argument that "'evaluation' would be admitted for a purpose other than to prove the amount of [the insured's] claim").

The point made by the Eleventh Circuit in *Lampliter* is controlling here. An "eventual settlement … does not indicate … bad faith."  To the contrary, insurance companies have a good faith *obligation* to settle claims. Using evidence of settlements against an insurance company to prove that an insurance company has not acted in good faith would turn the standard on its head and, contrary to the policy underlying Rule 408, *disincentivize* settlement. Moreover, as more than one court has noted – including *Ostrow*, on which Plaintiffs rely – cases (and claims) settle for many reasons, including reasons unrelated to the merits. By way of example, an insurance company might settle and pay more than its original estimate of a loss to preserve an ongoing business relationship or avoid the cost and expense of potential litigation with an insured even though, on the merits, the insurer's estimate of loss was correct (and not, as plaintiffs would have the jury conclude here, a "low ball" estimate). In that event, the fact that a particular case (or claim) settled for an amount greater than the amount originally offered would not even be relevant and would, on the contrary, be both misleading and unfairly prejudicial to the insurer. Yet, as Plaintiffs'

8

counsel has previously admitted, Plaintiffs intend to argue to the jury that the amounts, standing alone, demonstrate bad faith: "The point is the amount, the final amounts paid. That is exactly what this case is about. It is about how much did you initially offer versus how much were you ultimately paying to those policyholders."  Feb. 1 Tr. at 173:11-14. The Court should not allow Plaintiffs to offer the evidence of the "other claims" settlements and their amounts. It violates Rule 401 (because the evidence is not relevant) and Rule 403 (because it is unfairly prejudicial), as well as Rule 408.

Respectfully submitted,

**CLYDE & CO US LLP**
1221 Brickell Avenue, Suite 1600
Miami, Florida 33131
Tel: (305) 446-2646
Fax: (305) 441-2374

By: */s/ Laura Besvinick*
 **Laura Besvinick**
 Florida Bar No. 391158
 **Julie Nevins**
 Florida Bar No. 182206
 Email: laura.besvinick@clydeco.us
 Email: julie.nevins@clydeco.us
 Sec.: paul.kalandiak@clydeco.us

**DENTONS US LLP**
**Angel A. Cortiñas**
Florida Bar No. 797529
**Jonathan Kaskel**
Florida Bar No. 52718
1 Alhambra Plaza, Penthouse
Coral Gables, Florida 33134
Telephone: (305) 537-0009
Angel.cortinas@dentons.com
Nancy.salazar@dentons.com

**GRAY ROBINSON, P.A.**
**Jack R. Reiter**
Florida Bar No. 28304

333 SE 2nd Ave, Suite 3200
Miami, Florida 33131
Telephone: (305) 416-6880
Jack.reiter@grey-robinson.com

*Counsel for Defendant American Home Assurance Company*

### CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on April 2, 2024, I electronically filed the foregoing document with the Clerk of Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notice of Electronic Filing generated by CM/ECF.

                        */s/ Laura Besvinick*
                          Laura Besvinick, Esq.