UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
Case No. 22-cv-20979-JB

MICHAEL NEWMAN, as Personal
Representative of the ESTATE OF JOEL
NEWMAN, and EDITH NEWMAN,

    Plaintiffs,
v.

AMERICAN HOME ASSURANCE
COMPANY, INC.,

    Defendant.
_____/

## DEFENDANT'S RESPONSE TO PLAINTIFFS' TRIAL BRIEF ON THE NON-APPLICABILITY OF THE PUNITIVE DAMAGES CAP IN FLORIDA STATUTE § 768.73

Defendant, American Home Assurance Company, Inc. ("American Home"), submits its Response to Plaintiffs' Brief on the Non-Applicability of the Punitive Damages Cap at Florida Statute § 768.73 and, in support thereof, states as follows:

### INTRODUCTION

American Home maintains that it did not act in bad faith and, further, that this case does not even remotely support a demand for punitive damages. But now Plaintiffs not only seek punitive damages, but request that unbridled punitive damages be allowed against American Home by requesting the Court to eliminate the statutory limitation on punitive damages provided by Florida Statutes section 768.73. Plaintiffs advance three arguments in support of this novel request:[1]

---

[1] Each reason herein corresponds to three reasons laid out in Plaintiffs' Brief.

1

First, Plaintiffs contend that the Florida Supreme Court in *Smith v. Department of Insurance*, 507 So. 2d 1080 (Fla. 1987) held that the punitive damages cap in Chapter 768, enacted as part of the Tort Reform and Insurance Act of 1986 ("the 1986 Act"), only applies to claims for personal injury and property damage. DE 393, at 1. However, contrary to Plaintiffs' threshold contention, courts routinely impose the caps upon claims that do not involve personal injury or property damage.

Second, Plaintiffs contend that section 768.73 does not apply to section 624.155; however, as Florida courts have held, the former supplements the latter, as each concern separate aspects of a punitive damages award and therefore must be applied together.

Third, Plaintiffs argue that "there are no circumstances where a plaintiff could satisfy the standard for punitive damages under Section 624.155 and not also satisfy the 'specific intent' exception to the punitive damages cap . . . ." DE 393, at 3-4. But this is defeated by the statutory language which differentiates between a "specific intent to harm" as that phrase is used in section 768.73(1)(c) and the elements related to proving a "general business practice" and that such acts were "willful, wanton, and malicious" or "in reckless disregard for the rights of any insured." Plaintiffs have overlooked language in *Taylor v. Mentor Worldwide LLC*, 940 F.3d 582 (11th Cir. 2019), where the Eleventh Circuit explained that 'substantial certainty' "requires a belief much closer to total certainty" under section 768.73(1)(c). Notwithstanding the total lack of merit to Plaintiffs' assertion that American Home's conduct in this case was either "willful, wanton, and malicious" or done in "reckless disregard" of Plaintiffs' rights, this still does not equate to *total certainty* that the harm will occur. As explained in further detail below, if this case reaches a second phase of punitive damages, the Court should impose the statutory cap in accordance with Florida law.

**ARGUMENT**

I.  **ALTHOUGH SECTION 768.73 WAS ENACTED AS PART OF THE 1986 ACT, THE PUNITIVE DAMAGES CAP IS NOT LIMITED TO CLAIMS FOR PERSONAL INJURY OR PROPERTY DAMAGE**

Plaintiffs' first argument is contrary to established law. The United States Court of Appeals for the Eleventh Circuit has recognized that section 768.73 applies to cases brought under the Florida Consumer Collection Practices Act ("FCCPA")—which is neither a tort nor contract claim for personal injury or property damage (and is a specific basis upon which Plaintiffs are pursuing recovery). *See McDaniel v. Fifth Third Bank*, 568 F. App'x 729, 731–32 (11th Cir. 2014) (finding that the amount in controversy was met for purposes of diversity jurisdiction where the plaintiff, *inter alia*, requested "punitive damages under the FCCPA, which, in Florida, would be limited to $1,503,000—three times the compensatory award" (citing Fla. Stat. § 768.73(1)(a))).

And on this authority, the United States District Court for the Middle District of Florida in *Goodin v. Bank of America, N.A.*, 114 F. Supp. 3d 1197 (M.D. Fla. 2015), found that a different section in Chapter 768 applied to a FCCPA case. There, the court rejected an argument similar to the one that Plaintiffs advance here—namely, that section 768.72 "an integral part of Florida's Tort Reform and Insurance Act of 1986," *Citron v. Armstrong World Indus., Inc.*, 721 F. Supp. 1259, 1260 n.1 (S.D. Fla. 1989)—did not apply because it was found "in the 'Torts' section of the Florida code rather than the . . . section where the FCCPA is," *Good*, 114 F. Supp. 3d at 1214; *see also Nunez v. J.P. Morgan Chase Bank, N.A.*, 614CV1485ORL31GJK, 2017 WL 735391, at *3 (M.D. Fla. Feb. 24, 2017) (denying the defendant's motion for judgment on the pleadings under section 768.72 because there was a "plausible claim" for punitive damages within the plaintiff's claim that did not consist of personal injury or property damage).

Moreover, Florida courts routinely apply section 768.72(1) to bad-faith actions like this case. *See, e.g., Progressive Select Ins. Co. v. Ober*, 353 So. 3d 1190, 1192–93 (Fla. 4th DCA

2023) (explaining how an "insured must also provide a reasonable basis for recovery of [punitive] damages" as required in section 768.72(1) in order for the court "to allow a punitive damage claim to be pled"); *Cook v. Fla. Peninsula Ins. Co.*, 371 So. 3d 958, 961–62 (Fla. 5th DCA 2023) (explaining how the question under section 768.72(1) in a bad-faith claim is "whether the plaintiff made a sufficient showing by evidence in the record or proffer to establish a reasonable basis for it to ultimately be found that the defendant engaged in the wrongful conduct as a business practice").[2] There is no reason for this Court to treat section 768.73 differently.

Lastly, section 768.73 hardly resembles its original form, which was in place when the Florida Supreme Court decided *Smith* in 1987. Indeed, the Florida Legislature extensively revised section 768.73 over the years, especially with the advent of the Florida Tort Reform Act of 1999. *See Coates v. R.J. Reynolds Tobacco Co.*, 375 So. 3d 168, 171 n.3 (Fla. 2023) ("Since 1997, . . . section 768.73[] has been substantially amended."). This is significant because when *Smith* was decided, section 768.73 explicitly identified the civil actions to which statutory caps did and did not apply. *See* Fla. Stat. § 768.73(1)(a) (1986) (limiting the amount of punitive damages at "three times the amount of compensatory damages" but only in "civil action[s] based on negligence, strict liability, products liability, professional liability, or breach of warranty that involves willful, wanton, or gross misconduct," except for "class action[s]"). But under the current iteration of section 768.73, the Legislature eliminated such narrowing language that would limit the caps to only a subset of delineated cases. *See generally* Fla. Stat. § 768.73 (2023).[3]

---

[2] Similarly, section 768.74, which addresses additur and remittitur and is also part of the 1986 Act, has been applied to cases not involving personal injury or property damage. *McNider Marine, LLC v. Cain & Daniels, Inc.*, 2019 WL 1376710, at *2 (M.D. Fla. Mar. 27, 2019) (applying remittitur to FDUTPA claim); *Silverman v. Gockman*, 714 So. 2d 671 (Fla. 4th DCA 1998) (applying additur to legal malpractice claim).

[3] Section 768.73 has not been amended since 1999.

4

For all these reasons, the Court should reject Plaintiffs' first argument.

## II. SECTION 768.73 DOES NOT CONFLICT WITH SECTION 624.155'S PUNITIVE-DAMAGES PROVISIONS

Plaintiffs' second argument is also without merit. As Plaintiffs recognize, section 768.71(3) provides, "If a provision of this part is in conflict with any other provision of the Florida Statutes, such other provision shall apply." But there *is no conflict* between sections 768.73 and 624.155. To the contrary, the former works in conjunction with the latter. *State Capital Ins. Co. v. Mattey*, 689 So. 2d 1295, 1297 (Fla. 3d DCA 1997) ("Reviewing [sections 624.155 and 768.73], we find no clear-cut reason why the two should not be read in harmony. Section 624.155 does not delineate the *procedure* by which a claim for punitive damages is to be plead, section 768.72 provides that procedure." (emphasis in original) (internal citations omitted)).

The Third District in *Mattey* explained the harmony between the two statutes: Section 624.155 establishes how a plaintiff must prove entitlement to punitive damages, while section 768.73 concerns only the *amount* of damages if a factfinder imposes entitlement to punitive damages. *Id.*; *see also compare Victor v. Scottsdale Ins. Co.*, 22-CV-62166, 2023 WL 3003804, at *2 (S.D. Fla. Apr. 18, 2023) ("[I]n order to obtain an award of punitive damages, in addition to satisfying subsection (a), (b), or (c) [of section 624.155(8)], Plaintiffs will be required to prove that 'the acts giving rise to the violation[s] [in this case] occur with such frequency as to indicate a general business practice' of Defendant."); *Lord v. FedNat Ins. Co.*, 363 So. 3d 1160, 1162 (Fla. 5th DCA 2023) ("Appellant only claims entitlement to punitive damages under section 624.155(5)(b). Accordingly, he must make a reasonable showing by evidence in the record or by proffer that the alleged violations constitute a general business practice and that the acts are in reckless disregard for his rights as an insured."), *with Taylor*, 940 F.3d at 597 ("Florida imposes [] various statutory caps on punitive damages."). This is not a conflict. *See, e.g., Caruso v.*

*Baumle*, 880 So. 2d 540, 543–44 (Fla. 2004) (identifying a conflict between section 768.76(1), which provides that "the court offsets the collateral source amount," and section 627.736(3), which holds that the "trier of fact—whether judge *or* jury—is to offset the amount" (emphasis in original)).

Therefore, the Court should reject Plaintiffs' second argument, as there is no conflict pursuant to section 768.71(3).

### III. PUNITIVE DAMAGES UNDER SECTION 624.155(8) ARE EASILY RECONCIILED WITH SECTION 768.73

Finally, the Court should reject the Plaintiffs' third argument. Without even attempting to define the terms used in section 624.155(8)—namely, "willful, wanton, and malicious" or "reckless disregard"—Plaintiffs assert that "there are no circumstances where a plaintiff could satisfy the standard for punitive damages under [s]ection 624.155 and not also satisfy the 'specific intent' exception" in section 768.73(1)(c). DE 393, at 4. Plaintiffs rely on the Eleventh Circuit's decision in *Taylor* for the proposition that "specific intent to harm" means that a defendant knew the harm was "substantially certain to result" from its actions, which Plaintiffs contend also constitutes willful, wanton, and malicious conduct and/or a reckless disregard to the rights of any insured. DE 393, at 4–5. The Court should reject this conclusory assertion. The *Taylor* court cautioned that it was not adopting the 'substantial certainty' definition for "specific intent to harm" as used in section 768.73(1)(c). *See* 940 F.3d at 600 ("We assume without deciding that the district court articulated the proper standard—that is, that a defendant acts with 'specific intent to harm' if the defendant acts . . . 'knowing that the consequence is substantially certain to result.'").

Additionally, while American Home maintains that Plaintiffs have not presented sufficient evidence to reach a jury (much less the clear and convincing evidence to prove punitive damage liability), acts that are "willful, wanton, and malicious" or are done with "reckless disregard for

any insured's rights" do not *ipse dixit* mean a defendant knew that harm was "substantially certain to result" from its actions. In *Taylor*, *supra,* the Eleventh Circuit made clear that "[t]o be substantially certain . . . requires a belief *much closer* to total certainty . . . ." *Id.* at 601 (emphasis added). That is because section 768.73 "distinguishes between situations" in which the defendant knew that there was a "*high likelihood of injury*" because of the conduct versus "those situations in which . . . 'the defendant had a *specific intent to harm* the claimant . . . .'" *Id.* at 601 (emphasis in original).[4] Thus, each case must be evaluated on its merits. Even the *Taylor* court found that the evidence was insufficient to find "specific intent to harm." *See id.* at 601.

Moreover, those cases where the evidence proved a "specific intent to harm the claimant" include egregious misconduct aimed precisely at the plaintiff, and no evidence—or even allegations—of this nature are levied at American Home. *See Flying Fish Bikes, Inc. v. Giant Bicycle, Inc.*, 181 F. Supp. 3d 957, 974–75 (M.D. Fla. 2016) (in a contract case where the defendant intentionally hid information from the plaintiff for business gain, the court found that the evidence supported the jury's finding that the defendant "'had a specific intent to harm'" the plaintiff, citing *inter alia* an email where the defendant's employee stated that "[he] didn't feel it was the right thing to do," to which another employee responded, "I have three kids to feed, I need the order," and another responded, "I'm here to sell bikes and we need to hit numbers . . . , so we need to do

---

[4] The *Taylor* court was referring to section 768.73(1)(b), which caps punitive damages at the greater of "[f]our times the amount of compensatory damages" or the "sum of $2 million" where "the fact finder determines that the wrongful conduct proven under this section was motivated solely by unreasonable financial gain and determines that the unreasonably dangerous nature of the conduct, *together with the high likelihood of injury resulting from the conduct*, was actually known by the managing agent, director, officer, or other person responsible for making policy decisions on behalf of the defendant . . . ." Fla. Stat. § 768.73(1)(b)(1)–(2) (emphasis added). Meanwhile, section 768.73(1)(c) removes all caps on punitive damages where "the fact finder determines that at the time of injury the defendant had *a specific intent to harm the claimant* and determines that the defendant's conduct did in fact harm the claimant . . . ." Fla. Stat. § 768.73(1)(c) (emphasis added).

what we can to sell bikes"); *Lustig v. Stone*, No. 15-20150-CIV, 2015 WL 13326350, at *6 (S.D. Fla. Aug. 18, 2015) (a defendant's conduct that "set out to destroy [the plaintiff's] legal and business careers by branding him as a criminal actor, racketeer, thief, and murderer, among many other things [and] . . . aimed to destroy [the plaintiff's] personal life by involving his wife and daughter in her vendetta against [the plaintiff]" was found to qualify as 'specific intent to harm' and, therefore, was "not subject to the statutory cap"), *R&R adopted,* No. 15-20150-CIV, 2015 WL 13326383 (S.D. Fla. Dec. 7, 2015), *aff'd,* 679 F. App'x 743 (11th Cir. 2017); *Peer v. Lewis*, No. 06-60146-CIV, 2008 WL 2047978, at *13 (S.D. Fla. May 13, 2008) (finding that there was "competent and substantial evidence in the record" to support the jury's finding of 'specific intent to harm' on the plaintiff's counterclaim of abuse of where the evidence showed that the defendant "intentionally filed [a] lawsuit to taint the election for mayor"—in which both parties were opponents), *aff'd,* No. 08-13465, 2009 WL 323104 (11th Cir. Feb. 10, 2009).  The Court should reject Plaintiffs' attempt to equate section 624.155(8)'s language to section 768.73(1)(c)'s "specific intent to harm the claimant" language.

## CONCLUSION

American Home respectfully requests that the Court find that section 768.73's cap on punitive damages applies to bad-faith actions and, accordingly, should the jury conclude that punitive damages are warranted, the Court should limit punitive damages in accordance with Florida law.

Respectfully submitted,

/s/ Jack R. Reiter
Jack R. Reiter
Florida Bar No. 28304
jack.reiter@gray-robinson.com
Gray Robinson, P.A.
333 SE 2ndAve, Suite 3200
Miami, Florida 33131
Telephone: 305-416-6880

Angel A. Cortiñas
Florida Bar No. 797529
angel.cortinas@dentons.com
DENTONS US LLP
1 Alhambra Plaza, Penthouse
Coral Gables, Florida 33134
Telephone: 305-537-0009

Laura Besvinick
Florida Bar No. 391158
laura.besvinick@clydeco.us
Clyde & Co US LLP
1221 Brickell Avenue, Suite 1600
Miami, Florida 33131
Telephone: 305-446-2646

*Counsel for Defendant American Home Assurance Company*

9

## **CERTIFICATE OF SERVICE**

I hereby certify that on April 19, 2024, the foregoing was filed using the Court's CM/ECF system and served via email or transmission of Notices of Electronic Filing generated by CM/ECF to all counsel of record by the Court's CM/ECF system.

/s/ Jack R. Reiter